| | |
|---|---|
| 1 | MARC A. LEVINSON (STATE BAR NO. 57613) |
|   | malevinson@orrick.com |
| 2 | NORMAN C. HILE (STATE BAR NO. 57299) |
|   | nhile@orrick.com |
| 3 | JOHN W. KILLEEN (STATE BAR NO. 258395) |
|   | jkilleen@orrick.com |
| 4 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|   | 400 Capitol Mall, Suite 3000 |
| 5 | Sacramento, California 95814-4497 |
|   | Telephone: (916) 447-9200 |
| 6 | Facsimile: (916) 329-4900 |

Attorneys for Debtor
City of Stockton

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Case No. 2012-32118 |
| CITY OF STOCKTON, CALIFORNIA, | D.C. No. OHS-1 |
| Debtor. | Chapter 9 |
| | **DECLARATION OF ANN GOODRICH IN SUPPORT OF CITY OF STOCKTON'S STATEMENT OF QUALIFICATIONS UNDER SECTION 109(C) OF THE UNITED STATES BANKRUPTCY CODE** |

I, Ann Goodrich, hereby declare:

1. I am a consultant and labor relations project manager retained by the City of Stockton, California ("the City") since January 9, 2011. I am affiliated with the firm of Renne Sloan Holtzman Sakai LLP as a Managing Consultant. In my capacity as the City's labor project manager, I coordinate the City's labor negotiations with all of its employee groups and prepare recommendations for the City regarding its negotiations. I make this declaration in support of the City's Statement Of Qualifications Under Section 109(c).

2. I have been an independent human resources and labor relations consultant since July 2010. Prior to that, I served for 29 years as a Human Resources Director in the counties of El Dorado, Sonoma, and Santa Barbara.

3. Most City employees are represented by one of nine labor associations, each of which is a party with the City in a collective-bargaining agreement (collectively, "CBAs"). Among other things, the CBAs provide the terms that determine the compensation represented employees receive, including base pay, overtime, health and medical benefits, pension and retiree health benefits, and other compensation components, such as sick leave and vacation accruals. True and correct copies of the current CBAs between the City and its nine employee groups may be found at http://www.stocktongov.com/government/departments/humanResources/labMem.html (last accessed June 27, 2012). Absent a fiscal emergency, California law does not permit the City to unilaterally modify its CBAs that have not expired.

4. During the better economic times of the 1990s and the 2000s, the City approved labor contracts that became unsustainable in the current economic environment.[1] Automatic salary increases were tied to other cities that were not reasonable comparisons to Stockton's labor market. The base salary used for comparison excluded many "additional pays" for longevity, education and specialty assignments, so that while base pay might not have appeared unreasonable, total compensation grew higher than the labor market. And as explained in the Declaration of Teresia Haase being filed concurrently, the City promised life-time retiree health

---

[1] My analysis is based on my review of and familiarity with the City's prior labor contracts.

benefits for a City retiree and one dependent at a level much higher than was commonly paid by other similar employers, even though the City was not able to pay for this benefit.

5. As described in the declaration of Laurie Montes being filed concurrently, in 2008 the City experienced a significant economic reversal that left its budget with a structural imbalance. Every fiscal year since then, to balance its budget the City has looked to reduce employee compensation and benefits, either through consensual renegotiation or through unilateral imposition of terms.

6. Thus, beginning in 2008, the City began to reduce pay and benefits costs and imposed furloughs. In the following years, the City offered early retirement incentives, and as the fiscal situation grew more desperate, furlough hours grew. In 2008, 2009, and 2010, it negotiated voluntary reductions in employee compensation and benefits (including by eliminating cost-of-living increases), imposed a hiring freeze, and reduced City operational hours in many departments. It also laid off employees, including police officers.

7. As described in the Montes Declaration, despite these efforts, by May 2010, the City still faced a projected $23 million budget deficit in fiscal year 2010-11. On May 26, 2010, City Council declared a state of fiscal emergency. A month later, acting under the fiscal emergency, the City Council unilaterally imposed terms that diverged from the terms of the existing CBAs between the City and Stockton Firefighters Local 456 ("Fire Union") and between the City and the Stockton Police Officers' Association ("SPOA"). In particular, among other things the emergency measures temporarily suspended scheduled pay increases from taking effect during fiscal year 2010-11, restricted time off, and closed a fire truck company.

8. Also as described in the Montes Declaration, in spring 2011, facing a $37 million deficit in fiscal year 2011-12, the City Council continued the fiscal emergency and obtained $25 million in employee compensation reductions. It also negotiated changes in staffing requirements that allowed it to reduce staffing by $12 million, including by elimination of 50 firefighter positions and additional non-safety employees in the Police Department.

9. Between the reductions imposed in 2010, the reductions imposed in 2011, and voluntary concessions obtained for employee groups, the City saved approximately $52 million

over the last three years. The effect on total employee compensation was correspondingly significant. Just as part of the City's efforts to balance its fiscal year 2011-12, for example, some police officers sustained as much as a 22% reduction in their compensation, consisting of, among other things, furlough pay losses, insurance premium increases, benefit changes, an increase in PERS contribution, and reductions in additional pays. The same employees had already had cost-of-living increases deferred and subsequently have had medical premiums increased. Attached as Exhibit A hereto is a chart summarizing some of the changes either negotiated or imposed over the past four fiscal years for all of the City's largest employee groups.

10. As the financial picture worsened, many labor groups were willing to renegotiate closed contracts to reduce those compensation and benefits that exceeded the relevant labor market. The City achieved significant savings through voluntary reductions. However, the SPOA and the Stockton City Employees Association ("SCEA"), two of the City's largest labor groups (which combined represent the majority of Stockton employees), were not willing to renegotiate their CBAs.

11. In 2010, SPOA sued and in 2011 both SPOA and SCEA brought administrative actions against the City for unilaterally modifying the terms of closed CBAs. *See Stockton Police Officers Ass'n v. City of Stockton*, No. 39-2010-00245197 (San Joaquin Sup. Ct. July 14, 2010); *Stockton City Emps. Ass'n v. City of Stockton*, No. 774-M (grievance filed Dec. 20, 2011); *Stockton Police Officers Ass'n v. City of Stockton*, No. 04-11 (grievance filed July 13, 2011). Fire Department employees also sued the City, *see IAFF Local 456 v. City of Stockton*, No. 39-2010-00244326 (San Joaquin Super. Ct. 2010), but later dismissed their complaint.

12. The SPOA and SCEA actions remain pending. If the labor groups ultimately succeed, the City may owe them at least $12.5 million from the General Fund for savings imposed between 2010 and now—a sum that I am informed the City would be unable to pay.

13. Seven of the City's nine CBAs, including those with the police and fire unions, will expire on June 30, 2012. The only CBAs not expiring then are those between the City and SCEA and the City and the Mid-Management/Supervisory Level union. As reflected in the Pendency Plan adopted by the City Council on June 26, 2012, the City intends to obtain

significant savings both through the continued exercise of its fiscal emergency powers and through the imposition of new terms and conditions of employment, for all employee groups including unrepresented employees, should the parties be unable to reach agreement.

Executed this ___ day of June 2012, at _____, California. I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Ann Goodrich

# Exhibit A

# DECLARATION OF ANN GOODRICH IN SUPPORT OF STATEMENT OF QUALIFICATIONS UNDER SECTION 109(C)

## EXHIBIT A

The following highlights some of the changes either negotiated or imposed over the past four fiscal years for three of the largest employee groups:

**Stockton City Employees Association:** 2011 changes imposed via temporary imposed actions and subject to litigation challenges

- Furlough starting at 80 hours in FY08-09, increased to 96 hours in FY09-10, FY10-11 and FY11-12
- Forfeited COLAs of 2.5% at 7/1/10 and 2.5% at 7/1/11
- Employees pay Employee Share of CalPERS contribution, or 7% starting 8/1/11
- Modifications to medical plan over past two years, including higher deductibles, medical design changes from 100% to 80%, and City share of premium capped at fixed dollar amount in 2011.
- Temporary elimination of longevity 2.5% Add pay and 3% education incentive pay (2011)

**Firefighters Union and Fire Management**

- Elimination of COLAs: 3.68% for 7/1/08, 8.5% for 7/1/09, no COLAs through 6/30/12 (4.5-8.5%)
- Creation of second PERS tier for new hires (3%@55 in 2011)
- Employees pay PERS share of 9% starting 8/1/11
- Limits on numbers of staff qualifying for paramedic pay if not operationally required to act in that capacity (FY09-10)
- Eliminated minimum staffing requirements (FY11-12)
- Uniform allowance suspended in 2009, 50% reduction for 2010
- Modifications to medical plan over past two years, including higher deductibles, medical design changes from 100% to 80%, and City share of premium capped at fixed dollar amount
- Reduction of sick days from 15 to 12, reduction in vacation leave accruals, change in sick leave cash out at retirement, change in leave practice to reduce overtime in 2011
- Eliminate longevity vacation benefits 2011
- Eliminate tiller pay and unassigned paramedic pay for future employees 2011

- Eliminated longevity pay and grandfathered in current incumbents with a 2.5% reduction in longevity pay in 2011
- Eliminated educational incentive benefit of 3% effective August 2011
- Agreed to waive all back pay damages from 2010 emergency actions

**Stockton Police Officers Association:** 2010 and 2011 changes imposed via Emergency temporary imposed actions and subject to litigation challenge

- 6.5% total furlough deduction for FY09-10, reduced to 3% starting FY10-11, FY11-12
- Waive 2.5% COLA for 7/1/09, suspended 3% COLA in 2010
- Reduce uniform allowance by 50% (FY09-10); COLA's in 2010 and 2011 temporarily suspended
- Suspension of 2% City deferred comp contribution and 2% City retiree medical savings plan contribution (FY10-11 and FY11-12)
- Temporary suspension of master officer 5% pay and 3% education incentive pay 2011
- Temporary suspension of longevity pay for new hires, temporary 5% reduction in Longevity Pay for incumbent employees 2011
- Modifications to medical plan over past two years, including higher deductibles, medical design changes from 100% to 80%, and City share of premium capped at fixed dollar amount
- Employees pay PERS share of 9% starting 8/1/11

**Operating Engineers Local 3 (Water Supervisors, Trades unit and Operations and Maintenance units:**

- 4.62% total furlough deduction for FY09-10, FY11-12
- Elimination of Retiree medical for new hires and new pension tier for new hires at 2@60 formula with 3 year final salary average
- Reduction in sick leave accruals, reduction in sick leave cash outs, reduction in vacation accruals, suspended vacation sell back
- Elimination of 3% education incentive pay 8/1/2011
- Longevity Pay eliminated for employees as of 7/2011 and existing employees grandfathered in at current levels
- Modifications to medical plan over past two years, including higher deductibles, medical design changes from 100% to 80%, and City share of premium capped at fixed dollar amount

- Elimination of extra compensation for employees on Workers Compensation
- Employees pay PERS share of 7% starting 8/1/11(Trades 5.5% in 2010, 1.5% in 2011)

***Unrepresented Employees:***

- 3.85% furlough in FY 08/09,4.62% furlough for FY09-10, FY 10/11 and FY11-12

- Elimination of 2.5% COLAs in 2010 and 2011

- Elimination of Retiree medical for new hires and new pension tier for new hires at 2@60 formula with 3 year final salary average
- Reduction in sick leave accruals, reduction in sick leave cash outs, reduction in vacation accruals, suspended vacation sell back
- Elimination of 3% education incentive pay 8/1/2011
- 2.5% Longevity Pay eliminated for employees as of 7/2011 and existing employees grandfathered in at current levels
- Modifications to medical plan over past two years, including higher deductibles, medical design changes from 100% to 80%, and City share of premium capped at fixed dollar amount
- Elimination of extra compensation for employees on Workers Compensation
- Employees pay PERS share of 7% starting 8/1/11

***Stockton Mid level Managers and Supervisory Level Employees (B and C):***

- 3.85% furlough in FY 08/09,4.62% furlough for FY09-10, FY 10/11 and FY11-12

- Elimination of COLAs in FY 10/11,FY 11/12

- Elimination of Retiree medical for new hires and new pension tier for new hires at 2@60 formula with 3 year final salary average
- Elimination of 3% education incentive pay 8/1/2011
- 2.5% Longevity Pay eliminated for employees as of 7/2011 and existing employees grandfathered in at current levels

- Modifications to medical plan over past two years, including higher deductibles, medical design changes from 100% to 80%, and City share of premium capped at fixed dollar amount
- Employees pay PERS share of 7% starting 8/1/11

**Stockton Police Managers Association:**

- 5.5% furlough in FY 08/09, FY09-10, 4.62% FY 10/11 and FY11-12
- Elimination of 2.5% COLAs in FY 09/10 and 2.5% FY 10/11
- Elimination of Retiree medical for new hires and new pension tier for new hires at 2@60 formula with 3 year final salary average
- Elimination of 3% education incentive pay 8/1/2011
- Longevity Pay eliminated for employees as of 7/2011 and existing employees grandfathered in at with a 2.5% reduction in current Longevity pay levels
- Modifications to medical plan over past two years, including higher deductibles, medical design changes from 100% to 80%, and City share of premium capped at fixed dollar amount
- Employees pay PERS share of 9% starting (4.5% in FY 10/11, 4.5% effective 8/1/11)
- Elimination of 2% city payment to Retiree Medical Trust 8/2011