**FOR PUBLICATION**

FILED

JUL 13 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-32118-C-9 |
| | ) | |
| CITY OF STOCKTON, CALIFORNIA, | ) | DC No. OHS-4 |
| | ) | |
| | ) | |
| Debtor(s). | ) | |
| | ) | |

**OPINION
ON MOTION FOR LEAVE TO INTRODUCE EVIDENCE
RELATING TO NEUTRAL EVALUATION PROCESS UNDER
CALIFORNIA GOVERNMENT CODE § 53760.3(q)**

Marc A. Levinson (argued), Norman C. Hile, John W. Killeen,
Orrick, Herrington & Sutcliffe LLP, Sacramento, California, for
debtor

CHRISTOPHER M. KLEIN, Chief Bankruptcy Judge:

This case of first impression involves the boundaries, the interplay, and the common ground between federal law and state law in the context of the confidentiality requirement in California's new statute channeling a municipality through a neutral evaluation process before filing a chapter 9 case to adjust debts under the U.S. Bankruptcy Code.

Upon filing this chapter 9 case, the City of Stockton filed the instant motion invoking the part of California Government Code § 53760.3(q) that authorizes a bankruptcy judge to lift the shroud of confidentiality from the pre-filing neutral evaluation

for the limited purpose of establishing the City's eligibility
for chapter 9 relief.   This court accepts the invitation only
with respect to the one chapter 9 eligibility element for which
state law provides the rule of decision and otherwise declines
because state evidence law does not govern evidence in federal
court on issues when federal law provides the rule of decision.

Nevertheless, federal policy encouraging settlement also
favors preserving confidentiality of compromise discussions and
permits federal trial judges to ration the disclosure of
confidential settlement discussions on their own authority.
Hence, this court will impose a confidentiality protective order
and take an incremental approach to disclosure as there is no
indication in the case as yet that detailed evidence of
confidential discussions will be needed in order to determine
chapter 9 eligibility.


Facts

The City of Stockton, California, filed this chapter 9 case
on June 28, 2012, following the conclusion of the newly-enacted
pre-filing neutral evaluation required by California Government
Code § 53760 as a precondition for permitting a California
municipality to file a chapter 9 case.

The next day, the City filed this Emergency Motion For Leave
To Introduce Evidence Relating To Neutral Evaluation Process
Under Government Code § 53760.3(q) seeking permission to
introduce evidence as to: (1) the number and length of meetings

1   between the City and its creditors; (2) the identity of the

2   participants at such meetings; (3) the types of issues discussed;

3   (4) the financial and other information shared; (5) the offers

4   exchanged and the discussions between the parties; and (6) the

5   status of negotiations between the City and each interested party

6   as of the petition date.

7       Oral argument was entertained in open court on July 6, 2012.

8   This decision memorializes the ruling made from the bench at the

9   end of that hearing.

10

11                              Analysis

12      Context matters.  Here, what is going on is the process of

13  determining whether to enter an order for relief, which is the

14  initial judicial task in every chapter 9 case.  We begin with an

15  inventory of the essential elements for chapter 9 eligibility and

16  how one goes about determining them, before assessing the effect

17  of Government Code § 53760 on this chapter 9 case.

18

19                                 I

20      Chapter 9 is peculiar in that the filing of a voluntary

21  petition does not constitute an order for relief.  11 U.S.C.

22  § 921(d).  Rather, the municipality must be prepared to litigate

23  its way to an order for relief in its voluntary case by

24  demonstrating its eligibility to be a chapter 9 debtor and

25  establishing that it filed the petition in good faith.  11 U.S.C.

26  §§ 109(c) & 921(c).

27

28                              - 3 -

A

Five essential elements for eligibility to be a chapter 9 debtor are set forth at 11 U.S.C. § 109(c), to which is appended a good faith filing requirement by 11 U.S.C. § 921(c).  2 COLLIER ON BANKRUPTCY ¶ 109.04 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2011) ("COLLIER").

First, there must be a "municipality," which is defined as a "political subdivision or public agency or instrumentality of a State."  11 U.S.C. §§ 101(40) & 109(c)(1); 2 COLLIER ¶ 109.04[3][a].

Second, the municipality must be specifically authorized, in its capacity as a municipality or by name, to be a debtor under chapter 9 by state law, or by a governmental officer or organization empowered by state law to authorize such entity to be a debtor under such chapter.  11 U.S.C. § 109(c)(2); 2 COLLIER ¶ 109.04[3][b].

Third, the municipality must be "insolvent," which is specially defined for chapter 9 purposes as "(i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due."  11 U.S.C. §§ 101(32)(C) & 109(c)(3); 2 COLLIER ¶ 109.04[3][c].

Fourth, the municipality must desire to effect a plan to adjust the debts it is generally not paying or unable to pay.  11 U.S.C. § 109(c)(4); 2 COLLIER ¶ 109.04[3][d].

Fifth, a creditor negotiation requirement may be satisfied

by one of four alternatives.  The municipality must have: (A)
obtained the agreement of creditors holding at least a majority
in amount of the claims of each class that it intends to impair
under a chapter 9 plan; or (B) negotiated in good faith with
creditors and have failed to obtain the agreement of creditors
holding at least a majority in amount of the claims of each class
that it intends to impair under a chapter 9 plan; or (C) be
unable to negotiate with creditors because such negotiation is
impracticable; or (D) reasonably believe that a creditor may
attempt to obtain a transfer that is avoidable as a preference.
11 U.S.C. § 109(c)(5); 2 COLLIER ¶ 109.04[3][e].

Here, the City relies on the good-faith negotiation prong at
§ 109(c)(5)(B) of the creditor negotiation requirement.

If the five essential elements are satisfied, then the court
must order relief unless the debtor did not file the petition in
good faith.  Thus, this latter "good faith filing" element can be
regarded as a sixth essential element for chapter 9 relief in the
sense that relief will not be ordered if the case was not filed
in good faith.  Compare 11 U.S.C. § 921(c), with id. § 921(d).


B

The burden of proof, at least as to the five § 109(c)
elements, is on the municipality as the proponent of voluntary
relief.[1]  Int'l Assn. of Firefighters, Local 1186 v. City of

───────────────

[1]Given that the City is relying in this instance on the
good-faith negotiation prong of § 109(c)(5)(B), debate about who
has the good-faith filing burden under § 921(c) can safely be

- 5 -

1  Vallejo (In re City of Vallejo), 406 B.R. 280, 289 (9th Cir. BAP

2  2009) ("Vallejo"); In re Valley Health Sys., 383 B.R. 156, 161

3  (Bankr. C.D. Cal. 2008) ("Valley Health"); In re County of

4  Orange, 183 B.R. 594, 599 (Bankr. C.D. Cal. 1995) ("Orange

5  County"); 2 COLLIER ¶ 109.04[2].

6      The quantum of proof, there being no contrary indication in

7  statute or in controlling decisional law, is the familiar

8  preponderance-of-evidence standard of basic civil litigation.

9  Nothing suggests there should be a higher burden.  This

10 conclusion comports with the argument by the authors of the

11 Collier treatise that the burden should be liberally applied in

12 favor of granting relief.  2 COLLIER ¶ 109.04[3].

13     Clarifying that the quantum of the burden is preponderance

14 of evidence matters in the present instance because the logic

15 behind the breadth of the City's request to dispense with

16 confidentiality of the pre-filing neutral evaluation appears to

17 rest on the incorrect premise that the City will be subjected to

18 some higher standard of proof than preponderance of evidence.

19

20                                C

21     The procedure for resolving the eligibility question

22 resembles ordinary federal civil litigation.  The petition and

23 supporting materials function as the equivalent of a complaint

24 and objections to the petition as the answer.  Material factual

25 ───────────────

26 left to another day as it seems improbable (but not impossible)
   that good-faith negotiations would precede a filing that is made
27 not in good faith.

28                              - 6 -

1  disputes will be resolved by way of trial.

2      Once the petition is filed, notice of commencement of the

3  case must be published for three consecutive weeks in a newspaper

4  of general circulation within the district and a newspaper of

5  general circulation among bond dealers and bondholders.    11

6  U.S.C. § 923.   One purpose of such notice is to alert parties in

7  interest to the opportunity to "object" to the petition.

8      The court resolves objections to the petition by following a

9  notice and hearing procedure.   11 U.S.C. §§ 921(c)-(d).

10     By process of elimination, the relevant procedure is the

11 Rule 9014 "contested matter." Fed. R. Bankr. P. 9014.   Although

12 the notice-and-hearing requirement of § 921(c) puts the question

13 of the order for relief into a litigation context, the Federal

14 Rules of Civil Procedure do not directly specify a procedure for

15 chapter 9 cases.   Neither the contested petition provisions of

16 Rules 1011 and 1018 nor the adversary proceeding rule apply in

17 chapter 9.   What remains is the Rule 9014 "contested matter"

18 procedure.

19     Under Rule 9014, aside from the absence of formal pleadings,

20 most of the adversary proceeding rules apply.  Fed. R. Bankr. P.

21 9014(c).   Testimony of witnesses in any disputed material factual

22 issue in a contested matter must be taken in the same manner as

23 testimony in an adversary proceeding  - in other words, a fact-

24 based contest in a contested matter is to be resolved by way of

25 trial.   Fed. R. Bankr. P. 9014(d).

26     As the petition and supporting documents function as a

27

28                            - 7 -

complaint to place before the court the allegations and factual basis for relief, it is appropriate that facts be alleged with respect to each essential element sufficient to make plausible the proposition that the City is entitled to an order for relief. In other words, at least a prima facie case needs to be stated.

Indeed, the City urges that its need to assert a plausible case as to each essential element for eligibility justifies dispensing with all of the confidentiality protecting the pre-filing neutral evaluation discussions. As will be explained, however, a more incremental approach is appropriate.

The actual nature and extent of the litigation and the increments of disclosure will depend upon the issues that are actually joined by way of objection to the petition. If there are no objections, then the court will be entitled (but not required) to rely on the prima facie case as a basis for ordering relief. If there are objections, a trial will ensue, the complexion of which will depend upon the nature of the dispute and may trigger broader disclosure of pre-filing discussions.


II

The state is the chapter 9 gatekeeper by virtue of § 109(c)(2). But that gatekeeping function ends once the gate is opened and a chapter 9 case is filed.

- 8 -

A

The gate is the requirement that a municipality is eligible to be a debtor in a chapter 9 case only if it is specifically authorized by state law, or by a governmental officer or organization empowered by state law to authorize the municipality to be a debtor under chapter 9.  11 U.S.C. § 109(c)(2).

California has engineered the parameters of its gate in California Government Code § 53760, which authorizes any county, city, district, public authority, public agency, or entity that qualifies as a municipality under the Federal Bankruptcy Code, other than a school district,[2] to be a debtor under chapter 9 but recently imposed preconditions for which this case functions as the maiden voyage.  The municipality must either engage in a neutral evaluation process for a specified period or its governing board must declare a fiscal emergency pursuant to specified procedures.  CAL. GOVT. CODE § 53760.[3]

---

[2]The statute applies to any "local public entity," which is defined as:

(f) "Local public entity" means any county, city, district, public authority, public agency, or other entity, without limitation, that is a municipality as defined in Section 101(40) of Title 11 of the United States Code (bankruptcy), or that qualifies as a debtor under any other federal bankruptcy law applicable to local public entities. For purposes of this article, "local public entity" does not include a school district.

CAL. GOVT. CODE § 53760.1(g).

[3]The basic authorization is:

A local public entity in this state may file a petition and exercise powers pursuant to applicable federal

- 9 -

B

If the neutral evaluation process concludes without having resolved all pending disputes with creditors, the municipality may file a chapter 9 petition.   CAL. GOVT. CODE § 53760.3(u).[4]

The municipality and all interested parties participating in the neutral evaluation process have a duty to negotiate in good faith.   CAL. GOVT. CODE § 53760.3(o).

The parties must maintain the confidentiality of the neutral evaluation process and "not disclose statements made, information disclosed, or documents prepared or produced, during the neutral evaluation process, at the conclusion of the neutral evaluation process," or during any bankruptcy proceeding except upon

---

bankruptcy law if either of the following apply:
    (a) The local public entity has participated in a neutral evaluation process pursuant to Section 53760.3.
    (b) The local public entity declares a fiscal emergency and adopts a resolution by a majority vote of the governing board pursuant to Section 53760.5.

CAL. GOVT. CODE § 53760, as amended by Assembly Bill 506, approved by Governor, October 9, 2011, effective January 1, 2012.

[4]The statute provides:

    (u) If the 60-day time period for neutral evaluation has expired, including any extension of the neutral evaluation past the initial 60-day time period pursuant to subdivision (r), and the neutral evaluation is complete with differences resolved, the neutral evaluation shall be concluded.  If the neutral evaluation process does not resolve all pending disputes with creditors the local public entity may file a petition and exercise powers pursuant to applicable federal bankruptcy law if, in the opinion of the governing board of the local public entity, a bankruptcy filing is necessary.

CAL. GOVT. CODE § 53760.3(u).

- 10 -

agreement of all parties or, for the limited purpose of determining chapter 9 eligibility under § 109(c), upon permission of the bankruptcy judge.   CAL. GOVT. CODE § 53760.3(q).[5]

### III

The question becomes the extent to which the California confidentiality provision applies in the conduct of this chapter 9 case and, to the extent it does not apply, how to deal with matters warranting confidentiality.

### A

A chapter 9 case is, by definition, a federal proceeding in a federal court.   One particular consequence is that the Federal Rules of Evidence apply to this bankruptcy case.   E.g., Fed. R. Evid. 1101(b).

---

[5]The precise statutory language is:

(q) The parties shall maintain the confidentiality of the neutral evaluation process and shall not disclose statements made, information disclosed, or documents prepared or produced during the neutral evaluation process, at the conclusion of the neutral evaluation process or during any bankruptcy proceeding unless either of the following occur:
    (1) All persons that conduct or otherwise participate in the neutral evaluation expressly agree in writing, or orally in accordance with Section 1118 of the Evidence Code, to disclosure of the communication, document, or writing.
    (2) The information is deemed necessary by a judge presiding over a bankruptcy proceeding pursuant to Chapter 9 of Title 11 of the United States Code to determine eligibility of a municipality to proceed with a bankruptcy proceeding pursuant to Section 109(c) of Title 11 of the United States Code.

CAL. GOVT. CODE § 53760.3(q).

With respect to privileges — and California's confidentiality requirement arguably in the nature of a privilege under California Evidence Code § 1119[6] —  the controlling federal provision is Federal Rule of Evidence 501:

> **Rule 501. Privilege in General**
> The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.

The rules on privilege apply to all stages of this chapter 9 case.  Fed. R. Evid. 1101(c).

It follows that the confidentiality provision of California Government Code § 53760.3(q) apply only to the extent that this bankruptcy court confronts a question governed by a state rule of decision.

In the context of chapter 9 eligibility, state law provides the rule of decision only for § 109(c)(2):  whether the entity "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter; [.]"

Indeed, § 109(c)(2) presents a question of pure state law. Under that provision, it has been determined as a matter of New

---

[6] <u>Cf</u>. Government Code § 53760.3(q) (specifically incorporating Cal. Evid. Code § 1118).

- 12 -

York State constitutional law that the Governor of New York had
the authority to authorize an entity to file a chapter 9 case.
In re N.Y.C. Off-Track Betting Corp., 427 B.R. 256, 264 (Bankr.
S.D.N.Y. 2010).  By the same token, nothing in New York law
empowered the Suffolk County (N.Y.) Legislature to authorize a
chapter 9 filing.   In re Suffolk Regional Off-Track Betting
Corp., 462 B.R. 397, 414-21 (Bankr. E.D.N.Y. 2011).

Here, California constructed its own gate at the entrance to
the chapter 9 arena and is entitled to have it construed as a
matter of state law.

All other eligibility questions under § 109(c) — § 109(c)(1)
municipality; § 109(c)(3) insolvent; § 109(c)(4) desire to effect
plan of adjustment; and § 109(c)(5) creditor negotiation — and
the good faith question under § 921(c) are federal questions
based on, and created by, the federal Bankruptcy Code and subject
to a federal rule of decision as to which the California
confidentiality provision does not control.

In short, the only portion of California Government Code
§ 53760.3(q) that applies to the chapter 9 eligibility analysis
in this instance is the question whether the City complied with
the neutral evaluation requirement.


B

Having concluded that the California statutory
confidentiality requirement applies to § 109(c)(2), but only to
§ 109(c)(2), the focus shifts to what the City wants permission

1    to disclose, which begins with a focus on the precise terms and

2    meaning of the confidentiality statute in order to ascertain what

3    is and is not protected.

4        The terms of California Government Code § 53760.3(q) provide

5    (with the critical terms emphasized):

6            (q) The parties shall <u>maintain the confidentiality of the
         neutral evaluation process</u> and shall <u>not disclose statements

7        made</u>, <u>information disclosed</u>, or <u>documents prepared or
         produced</u> during the neutral evaluation process, at the

8        conclusion of the neutral evaluation process or during any
         bankruptcy proceeding unless either of the following occur:

9            (1) All persons that conduct or otherwise
         participate in the neutral evaluation expressly agree

10       in writing, or orally in accordance with Section 1118
         of the Evidence Code, to disclosure of the

11       <u>communication</u>, <u>document</u>, or <u>writing</u>.
             (2) The information is deemed necessary by a judge

12       presiding over a bankruptcy proceeding pursuant to
         Chapter 9 of Title 11 of the United States Code to

13       determine eligibility of a municipality to proceed with
         a bankruptcy proceeding pursuant to Section 109(c) of

14       Title 11 of the United States Code.

15   CAL. GOVT. CODE § 53760.3(q) (emphases supplied).

16       The important question relates to the meaning of the phrase

17   "maintain the confidentiality of the neutral evaluation process."

18   It is noteworthy that the remainder of the section refers only to

19   specific categories of statements, communications, information,

20   and documents and is followed by a temporal clause extending the

21   protection beyond the conclusion of the neutral evaluation

22   process.  Further, the part that provides that all parties can

23   agree to disclosure of communications, documents, or writings

24   says nothing about the process itself.  CAL. GOVT. CODE

25   § 53760.3(q)(1).

26       The analysis is informed by two findings made by the

27

28                              - 14 -

California legislature in Assembly Bill 506 ("AB 506"), which enacted the amendments to Government Code § 53760 creating the neutral evaluation process.  First, it found that "allowing the interested parties to exchange information in a confidential environment with the assistance and supervision of a neutral evaluator" assists in determining whether obligations can be renegotiated on a consensual basis.[7]  Second, it made findings designed to excuse the neutral evaluation process from open meeting laws, which findings focused on the need for "secure documents."

The statute is not ambiguous on what remains confidential after the neutral evaluation process is completed.  What remains protected are the more specific items listed in Government Code § 53760.3(q): "statements made," "information disclosed," and "documents prepared or produced" or, as listed later in the provision, "communication," "document," and "writing."  This is generally consistent with the "secure document" finding of § 7 of AB 506.

---

[7]The precise finding in AB 506 on this point is:

> (g) Through the neutral evaluation process, the neutral evaluator, a specially trained, neutral third party, can assist the municipality and its creditors and stakeholders to fully explore alternatives, while allowing the interested parties to exchange information in a confidential environment with the assistance and supervision of a neutral evaluator to determine whether the municipality's contractual and financial obligations can be renegotiated on a consensual basis.

Cal. Assembly Bill 506, § 1(g), enacted and approved by Governor, Oct. 9, 2011.

- 15 -

But the statute is ambiguous about the temporal aspect of the meaning of the phrase "maintain the confidentiality of the neutral evaluation process" in Government Code § 53760.3(q).  In context, the court concludes that it is a reference to the entire process that functions to impose a shroud of secrecy only during the pendency of the process.  During the pendency of the process, it is not permissible to reveal the number and length of meetings, the identity of the participants, the types of issues discussed, and the status of negotiations because that information is part of the "confidentiality of the neutral evaluation process."  While there may be good reason to continue to protect "statements made," "information disclosed," and "documents prepared or produced" even after the neutral evaluation process concludes, the justification is weaker for protecting the number and length of meetings, identity of participants, types of issues discussed, and status of negotiations when the process concludes.

This brings into focus the City's request that this court grant permission under the authority conferred on a bankruptcy judge by Government Code § 53760.3(q)(2) to reveal: (1) the number and length of meetings between the City and its various creditors; (2) the identity of the participants at such meetings; (3) the types of issues discussed; and (4) the status of negotiations between the City and each interested party as of the petition date.

While this information was appropriately embargoed during

- 16 -

the conduct of the neutral evaluation process by virtue of the "maintain the confidentiality" clause, that confidentiality protection ceased, as a matter of California law, once that process ended. Accordingly, there is no present impediment of California law to revelation of that information in and during the chapter 9 case.

The remainder of the City's request — to reveal "financial and other information shared, the offers exchanged and the discussions between the parties" — does remain protected by § 53760.3(q) because those categories fit within the statutory categories "statements made, information disclosed, or documents prepared or produced" for which protection unambiguously survives after completion of the neutral evaluation process.

This court is not presently persuaded that any of the statements made, information disclosed, or documents prepared or produced during the neutral evaluation process, all of which remain protected under the California confidentiality requirement, are "necessary ... to determine eligibility" under § 109(c)(2). CAL. GOVT. CODE § 53760.3(q)(2). As to eligibility issues under §§ 109(c)(1) and (c)(3), (c)(4), and (c)(5), those are federal issues that will be addressed in the next section.

As to the state law issue under § 109(c)(2), the information that either is not, or is no longer, protected (i.e. number and length of meetings, identity of participants, types of issues discussed, and status of negotiations as of petition date) is eligible to be used without restriction and ought to suffice to

1   establish at least a prima facie case that § 109(c)(2) has been

2   satisfied and that, as a matter of California law, the City is

3   permitted to file a chapter 9 case.  Indeed, as to status of

4   negotiations, counsel for the City announced during the hearing

5   on the motion that agreements had been reached with two unions to

6   amend collective bargaining agreements.

7       Accordingly, the City's request under California Government

8   Code § 53760.3(q)(1) will be denied, without prejudice to being

9   revisited in the event a subsequent contest over § 109(c)(2)

10  arises.

11

12                              C

13      The analysis now shifts to the federal law facet of the

14  confidentiality issue.  All chapter 9 eligibility issues except

15  § 109(c)(2) are creatures of federal law, and federal law

16  provides the rule of decision.

17      Federal policy is as encouraging of settlements as is state

18  law, but it takes the different tack of preferring such tools as

19  limiting admissibility in evidence and the protective order as

20  being able to be fashioned to particular situations with more

21  precision than a blanket privilege.

22

23                              1

24      We begin by dispensing with the issue of privilege.  Federal

25  Rule of Evidence 501 controls privileges in federal litigation

26  and, as relevant to settlement and mediation discussions, relies

27

28                           - 18 -

1  on federal common law.

2      As no settlement discussion privilege or mediation privilege

3  is recognized in either the U.S. Constitution, or a federal

4  statute, or rules prescribed by the Supreme Court, the question

5  becomes whether there is a common-law privilege that has been

6  judicially recognized "in the light of reason and experience."

7  Fed. R. Evid. 501.

8      There is an ongoing debate over whether there should be a

9  federal common law settlement negotiation privilege.  In re MSTG,

10  Inc., 675 F.3d 1337, 1342 (Fed. Cir. 2012) ("MSTG").  The

11  circuits that have addressed the question are divided.  The Sixth

12  Circuit recognizes such a privilege; the Seventh Circuit and the

13  Federal Circuit do not.  Goodyear Tire & Rubber Co. v. Chiles

14  Power Supply, Inc., 332 F.3d 976, 979-83 (6th Cir. 2003)

15  (privilege recognized); In re Gen. Motors Corp. Engine

16  Interchange Litigation, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979)

17  (no privilege); MSTG, 675 F.3d at 1343-48 (no privilege).

18  Although the Ninth Circuit does not appear to have taken a

19  position, district courts within the Ninth Circuit are divided on

20  the question.  Matsushita Elec. Indus. Co. v. Mediatek, Inc.,

21  2007 WL 963975 (N.D. Cal. 2007) (no privilege); California v.

22  Kinder Morgan Energy Partners, L.P., 2010 WL 3988448 (privilege

23  recognized).

24      For purposes of the present situation, this court is

25  persuaded by the Federal Circuit's comprehensive analysis that a

26  settlement negotiation privilege is not necessary.  In

27

28                              - 19 -

1   particular, other tools in the toolbox — especially the

2   protective order — are adequate to protect confidentiality of

3   settlement discussions where necessary to promote settlement.

4   See MSTG, 675 F.3d at 1346-47.  Since neither the Ninth Circuit

5   nor the Supreme Court has recognized a settlement negotiation

6   privilege as a matter of federal common law, this court holds

7   that the California neutral evaluation process is not protected

8   by a privilege.

9

10                              2

11      The lack of privilege is not the end of the matter.  Federal

12  policy favors settlement and disfavors undermining settlement

13  discussions in a manner that could chill the productivity of such

14  discussions in future situations.

15

16                              a

17      Federal Rule of Evidence 408 prohibits admission into

18  evidence in civil litigation of compromise offers and statements

19  made in negotiations to prove or disprove the validity or amount

20  of a disputed claim or to impeach by prior inconsistent statement

21  or contradiction.  Fed. R. Evid. 408.

22      An objection to the proffer of any evidence in this case of

23  statements made, information disclosed, or documents prepared or

24  produced during the pre-filing neutral evaluation process, either

25  during a hearing or in motion papers and declarations, will have

26  a sympathetic reception in the eyes of the court.

27

28                           - 20 -

b

A protective order issued under the court's inherent authority is also appropriate to preserve confidentiality in this chapter 9 proceeding of the statements made, information disclosed, or documents prepared or produced during the pre-filing neutral evaluation process.

Although those pre-filing discussions concluded, the settlement discussions are not finished.  Experience of cases such as <u>Vallejo</u> in this judicial district teaches that fashioning a successful plan of adjustment is more of an exercise in negotiation and compromise than a litigation exercise.

Accordingly, a sitting bankruptcy judge from another district has been appointed as Judicial Mediator to be available to serve the needs of this case, without prejudice to the ability of the parties also to employ private persons to facilitate discussions.  This measure is consistent with the policy inherent in the alternative dispute resolution provisions in the Federal Judicial Code.  28 U.S.C. §§ 651-53.  Confidentiality is expressly contemplated.  28 U.S.C. § 652(d).

Whatever goodwill, confidence, and lines of communication that may have been established during the pre-filing neutral evaluation process deserve to be fostered with the certainty that will be useful in the discussions during this case.  Such discussions will be vital to the formulation of a successful plan of arrangement.

In issuing such a protective order, this court is taking an

- 21 -

incremental approach.  As the case develops, it may become
appropriate to relax the protective order in various respects so
that the rights of all parties can be fully examined.

As a first increment of disclosure, it is appropriate (and
"necessary" if an appellate court were to hold that the
California statute applies to all eligibility questions) to
authorize the City to release its "790-page 'ask' created by the
City that details the City's current situation and lays out a
proposed plan — equivalent to a chapter 9 plan — to address the
City's financial shortfall."

This limited disclosure is necessary in light of the ruling
by the Bankruptcy Appellate Panel of the Ninth Circuit in <u>Vallejo</u>
that § 109(c)(5)(B), upon which the City relies for eligibility,
"requires negotiations with creditors revolving around a proposed
plan, at least in concept."  <u>Vallejo</u>, 408 B.R. at 297.
Disclosure of the proposed plan that formed the basis for
discussions during the pre-filing early neutral evaluation is
part of the City's prima facie case on the issue of eligibility.

As noted, if objections to the petition are made that place
various elements of eligibility in actual dispute, then further
relaxations of the protective order will be appropriate.

<u>Conclusion</u>

With respect to the question of eligibility under 11 U.S.C.
§ 109(c)(2), the City's motion will be denied as unnecessary to
the extent that it seeks permission to dispense with

- 22 -

1  confidentiality of the California pre-filing neutral evaluation

2  process with respect to the number and length of meetings between

3  the City and its creditors, the identity of the participants at

4  such meetings, the types of issues discussed, and the status of

5  negotiations between the City and each interested party as of the

6  petition date.  Those matters are no longer confidential under

7  California law.  The remainder of the motion, insofar as it is

8  based on California Government Code § 53760.3(q), is denied,

9  without prejudice.

10      With respect to statements made, information disclosed, or

11  documents prepared or produced during the pre-filing neutral

12  evaluation process, they are not privileged but shall be

13  protected from disclosure by a protective order issued by this

14  court forbidding disclosure, which protective order may be

15  adjusted from time to time.  The protective order shall not apply

16  to the "790-page 'ask' created by the City that details the

17  City's current situation and lays out a proposed plan —

18  equivalent to a chapter 9 plan — to address the City's financial

19  shortfall."

20      A separate order will issue.

21      Dated:  July 13, 2012.

22

23      _____

24              UNITED STATES BANKRUPTCY JUDGE

25

26

27

28                          - 23 -

1

**CERTIFICATE OF SERVICE**

2          On the date indicated below, I served a true and correct
copy(ies) of the attached document by placing said copy(ies) in a
3    postage paid envelope addressed to the person(s) hereinafter
listed and by depositing said envelope in the United States mail
4    or by placing said copy(ies) into an interoffice delivery
receptacle located in the Clerk's Office.

5

6    Marc A. Levinson
400 Capitol Mall #3000
7    Sacramento CA 95814-4407

8    Office of the U.S. Trustee
Robert T Matsui United States Courthouse
9    501 I Street, Room 7-500
Sacramento CA 95814
10

11    Jerrold E. Abeles
555 W 5th St 48th Fl
12    Los Angeles CA 90013

13

14    Steven H. Felderstein
400 Capitol Mall #1450
15    Sacramento CA 95814-4434

16    Christina M. Craige
555 W 5th St #4000
17    Los Angeles CA 90013

18
19    Alan C. Geolot
1501 K St NW
20    Washington DC 20005

21    Guy S. Neal
1501 K St NW
22    Washington DC 20005

23    Michael M. Lauter
4 Embarcadero Ctr 17th Fl
24    San Francisco CA 94111-4109

25
26    Robert S. McWhorter
621 Capitol Mall, 25th Floor
27    Sacramento CA 95814

28                        -  24  -

Allan H. Ickowitz
777 S. Figueroa Street, 34th Floor
Los Angeles CA 90017

Roberto J. Kampfner
633 West Fifth Street Suite 1900
Los Angeles CA 90071

James O. Johnston
555 S Flower St 50th Fl
Los Angeles CA 90071

Scott H. Olson
560 Mission Street, Suite 3100
San Francisco CA 94105

William A. Van Roo
13863 Quaterhorse Dr.
Grass Valley CA 95949

Richard A. Lapping
101 California Street, Ste. 3900
San Francisco CA 94111

Lawrence A. Larose
200 Park Ave
New York NY 10166-4193

Sarah L. Trum
1111 Louisiana 25th Fl
Houston TX 77002

Donna T. Parkinson
400 Capitol Mall Suite 2560
Sacramento CA 95814

David E. Mastagni
1912 I St
Sacramento CA 95811

Robert B. Kaplan
2 Embarcadero Center 5th Fl
San Francisco CA 94111-3824

1

2  Nicholas DeLancie
   Two Embarcadero Center, 5th Floor
3  San Francisco CA 94111

4

   John A. Vos
5  1430 Lincoln Ave
   San Rafael CA 94901

6

7  Jeffry A. Davis
   44 Montgomery St 36th Fl
8  San Francisco CA 94104

9

   Abigail V. O'Brient
10 3580 Carmel Mountain Rd #300
   San Diego CA 92130

11

   William W. Kannel
12 1 Financial Center
   Boston MA 02111

13

14 George S. Emblidge
   220 Montgomery St #2100
15 San Francisco CA 94104

16

17 Dated: 7|16|12

18

19                          DEPUTY CLERK
                            BARBARA REYNOLDS
20

21

22

23

24

25

26

27

28
                          -  26  -