**10**

Jeffrey E. Bjork (Cal. Bar No. 197930)
Christina M. Craige (Cal. Bar No. 251103)
**SIDLEY AUSTIN LLP**
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600
Email: jbjork@sidley.com
           ccraige@sidley.com

Guy S. Neal (Admitted *Pro Hac Vice*)
Alan C. Geolot (Admitted *Pro Hac Vice*)
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 736-8000
Facsimile:  (202) 736-8711
Email: gneal@sidley.com
           ageolot@sidley.com

Attorneys for Assured Guaranty Corp.
and Assured Guaranty Municipal Corp.

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | ) Case No. 12-32118 |
| | ) |
| CITY OF STOCKTON, CALIFORNIA, | ) D.C. No.     SA-1 |
| | ) |
| Debtor. | ) Chapter 9 |
| | ) |
| | ) |
| | ) |
| | ) Date:    May 21, 2013 |
| | ) Time:   9:30 a.m. |
| | ) Dept:   C, Courtroom 35 |
| | ) Judge: Hon. Christopher M. Klein |

**MOTION OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. PURSUANT TO RULE 52(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE, AS INCORPORATED BY RULE 7052 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, TO ALTER OR AMEND THE COURT'S FINDINGS OF FACT MADE ORALLY ON THE RECORD ON APRIL 1, 2013**

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured") hereby move pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, as incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure[1], to alter or amend the Court's findings of fact (the "Findings of Fact") made orally on the record on April 1, 2013 [Dkt. No. 848]. This Motion is directed to the Court's findings that Assured (1) "voted with [its] feet" and acted as a "stone wall" during the negotiations with the City and (2) "did not negotiate in good faith within the meaning of section 53760.3" of the California Government Code. See Trial Tr. Vol. 4, 579:18-20, 589:14-21, April 1, 2013 (hereinafter "FOF at ___"). For the reasons set forth below, Assured respectfully requests that the Court correct these two related findings, which are part of the Court's eligibility determination, and amend its judgment accordingly.

**BACKGROUND**

On June 28, 2012, the City of Stockton, California (the "City") filed its chapter 9 petition under title 11 of the United States Code (the "Bankruptcy Code"). On April 1, 2013, following a 3-day evidentiary hearing held March 25-27, 2013, the Court presented its findings of fact orally on the record and determined that the City was eligible for relief under chapter 9. On that date, the Court entered the Order for Relief. [Dkt. No. 843].

In its Findings of Fact, the Court found that the City demonstrated by a preponderance of the evidence that (i) it is a municipality; (ii) it is authorized under state law to file for chapter 9; (iii) it was insolvent (as of the petition date); (iv) it desired to effectuate a plan to adjust its debts; and (v) it negotiated in good faith with relevant creditors. See 11 U.S.C. § 109(c)(1)-(5); Cal. Gov't Code § 53760.3(o). The Court also found that the City filed its petition in "good faith" under 11 U.S.C. § 921(c).

The Court found that the second requirement of section 109(c) (authorization) could not be contested by the Capital Markets Creditors[2] because the state authorizing statute (Cal. Gov't Code §

---

[1] Assured is not seeking a new trial or seeking to re-open the evidentiary record under Rule 59 of the Federal Rules of Civil Procedure.

[2] "Capital Markets Creditors" refers to the following entities: (i) Assured, (ii) National Public Finance Guarantee Corporation ("NPFG"), (iii) Franklin High Yield Tax-Free Income Fund and Franklin California High Yield Municipal Fund, and (iv) Wells Fargo Bank, National Association, in

2

53760(o)) requires both the City and "interested parties" to negotiate in good faith, and the Capital Markets Creditors' failure to pay a portion of the costs of the AB 506 process meant they could not object to how the process was conducted.  FOF at 579:9-580:15.  In its Findings of Fact, the Court concluded: "Neither National Public Finance Guarantee Corporation, nor Assured Guaranty, nor Franklin Advisers, nor Wells Fargo, paid any of the costs or expenses allocated to them by Government Code section 53760.3(s).  The City did not agree to pay their share." Id. at 568:21-26.

With respect to the fifth requirement of section 109(c) (negotiation with creditors), the Court rejected the argument that the City negotiated in bad faith with the Capital Markets Creditors.  FOF at 585:16-586:14.  Relying on a declaration submitted by the City's counsel, the Court found instead that:

> ***during the neutral evaluation process, National Public Finance Guarantee Corporation and Assured Guaranty each took the position that there was nothing to talk about unless and until the City proposed to add a plan provision that would impair its obligation to CalPERS regarding pensions.  Translated, if you don't . . . impair CalPERS, we're not going to talk to you***.  When the City indicated that it did not intend to impair CalPERS -- and that was after the second neutral evaluation meeting attended by bondholders -- ***they absented themselves from all further discussions***, ***and I conclude that Judge Mabey regarded them as having voted with their feet and there was no point in talking to them further***.

Id. at 572:14 - 573:1 (emphasis added).

For the reasons set forth below, the Court's findings as to the lack of good faith by Assured are not supported by the evidentiary record and directly contradicted by uncontroverted evidence.

## ARGUMENT

**A.     The Legal Standard**

Rule 52(b) of the Federal Rules of Civil Procedure, as incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure, provides that in cases tried without a jury, "the court may amend its findings – or make additional findings – and may amend the judgment accordingly." Fed. R. Civ. P. 52(b).  Rule 52(b) applies where a litigant believes the court's findings or conclusions of

---

its capacity as indenture trustee.

1 law "are erroneous in any respect," and thus seeks to amend or alter them.  Jackson v. United States,
2 156 F.3d 230, 234 (1st Cir. 1998).  Motions under Rule 52(b) are "designed to correct findings of
3 fact which are central to the ultimate decision; the Rule is not intended to serve as a vehicle for a
4 rehearing."  R.C. Fischer and Co. v. Cartwright, 2011 WL 6025659, *4 (N.D. Cal. Dec. 5, 2011)
5 (citing Davis v. Mathews, 450 F. Supp. 308, 318 (E.D. Cal. 1978)).  Rule 52 is also designed to
6 create a record upon which the appellate court may obtain the necessary understanding of the issues
7 to be determined on appeal.  See 9C Wright & Miller, Federal Practice and Procedure: Civil 3d §
8 2582, at 352-53 (3d ed. 2008); Clark v. Nix, 578 F. Supp. 1515, 1516 (S.D. Iowa 1984).  The
9 decision of whether to grant or deny a motion to amend or enlarge the findings is within the
10 discretion of the trial court.  Foster Poultry Farms, Inc. v. SunTrust Bank, 2008 WL 1970823, *2
11 (E.D. Cal. May 5, 2008).[3]

**B. The Court Should Correct Its Finding that Assured Did Not Negotiate in Good Faith By Having "Voted With [Its] Feet" and Acting as a "Stone Wall" During Negotiations With The City.**

Regarding section 109(c)(5)(B)'s requirement that the City negotiate in good faith with creditors, the Court stated four different times that the Capital Markets Creditors (including Assured) took the position of "a stone wall" in their negotiations with the City:

- "[The City] already had a bid out there, and there was nothing but a stone wall from the other side."  FOF at 573:12-13.

- "And this [section 109(c)(5)(B)] has been the major focus with the Capital Markets Creditors and the major focus of their challenge and their objection to an order for relief.  They contend that the City has not negotiated in good faith with them.  They contend that the City gave them a take-it-or-leave-it proposition and that that is not negotiation. . . .  Negotiation is, by definition, a two-way street.  You cannot negotiate with a stone wall.  You cannot do it.  It cannot be done.  It is a contradiction in terms."  FOF at 585:16-586:7.

- "Now, the question is whether the omission of CalPERS justifies another group of creditors [who] would be impaired from voting with their feet and choosing to act as

---

[3] See National Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 124-129 (1st Cir. 1990) (upholding trial court's withdrawal of initial ruling and amendment of findings of fact and conclusions of law pursuant to Rule 52(b)); Sun Pacific Marketing Co-op., Inc. v. DiMare Fresh, Inc., 2012 WL 4482013, *7 (E.D. Cal. Sept. 28, 2012) (granting Rule 52(b) motion to amend findings of fact and conclusions of law to adjust contract damages, attorneys' fees and costs); R.C. Fischer, 2011 WL 6025659, at *5, 9-11, 13 (amending under Rule 52(b) findings of fact and conclusions of law regarding causation and damages).

the stone wall.  And my answer to that question is, no, it does not justify a creditor in taking the position that it need not negotiate in good faith on the basis that somebody else is not being taken care of or being treated similarly in the plan."  FOF at 589:14-21.

- "And it was the choice of the Capital Market Creditors to take a position as a stone wall, [word missing] is not sufficient to defeat the City's negotiation in good faith requirement.  As I indicated at the outset, the proposition that the City is required to negotiate in good faith and the Creditor is not required to negotiate in good faith makes no sense to me because it's a reciprocal obligation."  FOF at 592:5-11.

Assured respectfully submits that the Court's findings are not supported by the record.

Assured submitted a declaration into evidence from Mr. Bjork.  See Assured Offer of Proof; Bjork Decl.[4]  The Bjork Decl. demonstrates that Assured negotiated in good faith with the City throughout the pre-bankruptcy process, including prior to and *after* the formal mediation sessions between the City and Assured had concluded.  As Assured set forth in the Bjork Decl.:

> 5.     Following receipt of the Ask, and on numerous occasions throughout the AB 506 Process, I initiated discussions with counsel for the City in an effort to explore other repayment options or alternatives with respect to the Assured Obligations (in contrast to the proposed treatment set forth in the Ask), as well as potential budget efficiencies and sources of revenue the City might wish to consider to free up additional funds to repay its obligations.  These discussions principally occurred through phone calls and e-mails during the months of May and June [after the mediation sessions of May 15-16 had concluded].
>
> 6.     I was consistently informed that the City's position was that the Ask represented its best offer in respect of the Assured Obligations, and that the City could not and/or would not make any general funds available to repay the POBs or alter the proposed treatment of the 400 E. Main Bonds set forth in the Ask, as doing so would divert funds away from other priorities or obligations of the City.  The City was not willing to negotiate.  For that reason, Assured elected not to extend a formal counter-offer.

In a responsive declaration, Marc Levinson, the City's bankruptcy counsel, acknowledged that the Bjork Decl. was "largely accurate."  See Supplemental Declaration of Marc A. Levinson in Support of City of Stockton's Statement of Qualifications under Section 109(c) of the United States Bankruptcy Code [Dkt. No. 824; Tr. Ex. 1398] ¶ 3 (the "Levinson Supp. Decl.").  Mr. Levinson does

---

[4] Offer of Proof in Support of Supplemental Objection of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. to Debtor's Chapter 9 Petition and Statement of Qualifications [Dkt. No. 787; Tr. Ex. 708] (the "Assured Offer of Proof"); Declaration of Jeffrey E. Bjork in Support of Supplemental Objection of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. to Debtors' Chapter 9 Petition and Statement of Qualifications [Dkt. No. 788; Tr. Ex. 756] (the "Bjork Decl.").

not rebut paragraph 5 or the first sentence of paragraph 6 of the Bjork Decl.  Nor does Mr. Levinson dispute that Assured initiated the settlement discussions described in the Bjork Decl. or claim that such discussions differed in scope or content.

The City at several points acknowledged and submitted its own evidence of the Capital Markets Creditors' good faith in negotiations.  See, e.g., City of Stockton's Memorandum of Fact and Law in Support of its Statement of Qualifications Under Section 109(c) of the United States Bankruptcy Code [Dkt. No. 19; Tr. Ex. 13] at 19:1-3 (the "Eligibility Brief") ("Despite good faith efforts by the City and the interested parties, when the AB 506 process concluded on June 25, 2012, the City had not 'resolved all pending disputes with creditors.'"); Declaration of Laurie Montes in Support of City of Stockton's Statement of Qualifications Under Section 109(c) of the United States Bankruptcy Code [Dkt. No. 23; Tr. Ex. 1054] ¶ 46 (same); Declaration of Marc A. Levinson in Support Of Emergency Motion For Leave To Introduce Evidence Relating To Neutral Evaluation Process Under Government Code 53760.3(q) [Dkt. No. 17; Tr. Ex. 728] ¶ 7 (the "Levinson Decl.") (same); Eligibility Brief at 22:19-25 (representing that it could, among other things, "prove that it (and others) participated in the AB 506 process in 'good faith.'  Cal. Gov't Code § 53760.3(o). . . . It will show that the City and the Participants engaged in serious discussions—through many meetings and communications—aimed at reaching a consensual restructuring of the City's dramatically unbalanced finances.").

In addition to the City's representations and Mr. Levinson's acknowledgement of the ongoing nature of the negotiations between the City and Assured, the nature of those discussions similarly demonstrates Assured's good faith negotiation.  The City had presented an offer with respect to the POBs framed in terms that dramatically reduced principal and permitted only minimal repayment from certain special funds (and nothing from the City's General Fund).  See Tr. Ex. 50 at 768-773 (the "Ask").  The impairment of principal has rarely, if ever, occurred in municipal finance.  The "frame" established by the City – seeking impairment of 83% of the principal on the POBs which constitute 75% of Assured's exposure to Stockton – was not acceptable to Assured, and in response, Assured's counsel explored a variety of alternatives all in an effort to "reframe" the issue

1   with "the intent to negotiate toward a resolution of the issues that are the subject of the neutral
2   evaluation process." Cal. Gov't Code § 53760.1(d);  Bjork Decl. at 5-6.

3         Assured, by and through its counsel, engaged in settlement discussions in good faith with the
4   City, upon its receipt of the Ask through the bankruptcy filing.  Such discussions are the essence of
5   negotiation and demonstrate that a party is interested in fashioning a resolution that serves all
6   parties' interests.  They stand as uncontroverted evidence that Assured negotiated in good faith.

7         Assured's decision not to provide a formal written counteroffer does not demonstrate a lack
8   of good faith.  Rather, the evidence demonstrates that, in its ongoing discussions with the City,
9   Assured sought to negotiate the City off its Ask and to consider alternatives to the Ask that would
10  take into account various alternative funding sources, economic trends relating to the City, and
11  potential shared resources over the thirty-plus year relationship between the City and Assured, all
12  points that are not present in the Ask.  Assured was one of the majority of the interested parties who
13  voted to extend the mediation by 30 days beyond the 60-day period required by statute, see Levinson
14  Decl. ¶ 6; and Assured has continued these efforts post-petition in connection with the court-ordered
15  mediation in this case.  Such consistent efforts are totally inconsistent with the concept of a "stone
16  wall" in negotiations and cannot be viewed as failing to act in good faith.

17        The Bjork Decl. makes clear that Assured never disengaged, or "absented" itself, from the
18  negotiation process or at any point acted like a "stone wall" after being informed of the City's
19  decision not to engage with CalPERS.  Mr. Levinson conjectures in his supplemental declaration
20  "that Assured did not disagree" that the mediation was concluded when the City announced it would
21  not seek concessions from CalPERS.  Levinson Supp. Decl. ¶ 5.  However, the Bjork Decl.– which
22  Mr. Levinson concedes was "largely accurate," id. ¶ 3 – makes clear that Assured continued to
23  *initiate* conversations with the City's counsel in an effort to advance the negotiations between the
24  parties during the months of May and June, until the conclusion of the AB 506 process.  See Bjork
25  Decl. ¶ 5.

26        Assured's efforts after the conclusion of the formal mediation sessions also involved an all-
27  day meeting on June 6, 2012 between the City's financial advisors and Assured's financial
28

1 representatives to discuss the "City's finances, including model assumptions, restricted funds analysis, asset inventory and other issues [and] [s]pecific City restructuring proposals on" the POBs and 2007 Series A and Taxable Series B, Variable Rate Demand Lease Revenue Bonds. See Supplemental Declaration of Ann Goodrich in Support of City of Stockton's Statement of Qualifications under Section 109(c) of the United States Bankruptcy Code [Dkt. No. 451; Tr. Ex. 1373], Ex. A at 3. This all-day meeting occurred between the City and Assured three weeks *after* the conclusion of the May 15 mediation session.

Assured respectfully seeks correction of the record with respect to the Court's finding that "Judge Mabey regarded [the Capital Markets] as having voted with their feet and there was no point in talking to them further." FOF at 572:24-573:1. Having participated in meetings with Judge Mabey (as well as subsequent meetings and communications with Judge Perris), Assured is well positioned to address this issue, but did not present any such evidence to the Court because the Court's order regarding the AB 506 mediation process arguably prohibits disclosure of relevant statements made to or by Judge Mabey in the AB 506 mediation process. See Order on Motion for Leave to Introduce Evidence Relating to Neutral Evaluation Process Under California Government Code § 53760.3(q) [Dkt. No. 429]; see also Order Modifying Order on Motion for Leave to Introduce Evidence Relating to Neutral Evaluation Process Under California Government Code § 53760.3(q) [Dkt. No. 598]; Order Granting Joint Motion to Modify Order on Motion for Leave to Introduce Evidence Relating to Neutral Evaluation Process Under California Government Code § 53760.3(q) [Dkt. No. 608]. Assured would be in a position to provide evidence directly addressing the inference taken by the Court, if so permitted.

### C. The Court Should Correct its Finding that Assured Did Not Negotiate in Good Faith By Failing to Pay a Portion of the Neutral Evaluation Fees.

Regarding section 109(c)(2)'s requirement that the City be specifically authorized to be a debtor under chapter 9, the Court concluded the Capital Markets Creditors "do not have the ability to complain about eligibility under section 109(c)(2)" because "a creditor who does not pay the appropriate share of the costs of the neutral evaluation . . . allocated to the creditor by California Government Code section 53760.3(s) is in no position to complain about whether the California

procedure has been complied with because they have, in effect, created their own self-inflicted harm." FOF at 579:18-580:7.

First, Assured negotiated in good faith within the meaning of California Government Code section 53760.1(d), which explicitly defines "good faith" for purposes of the authorizing statute:

> (d) "Good faith" means participation by a party in the neutral evaluation process with the intent to negotiate toward a resolution of the issues that are the subject of the neutral evaluation process, including the timely provision of complete and accurate information to provide the relevant parties through the neutral evaluation process with sufficient information, in a confidential manner, to negotiate the readjustment of the municipality's debt.

Cal. Gov't Code § 53760.1(d). Assured participated in the neutral evaluation process with the intent to negotiate toward a resolution with the City. See, e.g., Assured Offer of Proof; Bjork Decl. This evidence is uncontroverted.

Second, as explained above, the City has conceded and put into the record its own evidence that Assured and the other Capital Markets Creditors negotiated in good faith during the AB 506 process. See, supra, at 6:4-18.

Finally, the City raised the nonpayment of the neutral evaluator fees as a potentially relevant issue for the first time in its reply brief on February 15, 2013.[5] As support for its statements, the City cites to the Reply Declaration of Norman C. Hile, which attaches a letter dated March 15, 2012 from NPFG to the City Attorney.[6] Mr. Hile did not refer to or append the reply of Assured in which Assured identified pre-existing agreements of the City to pay, or reimburse Assured for, any post-default costs of Assured, including specifically the costs of neutral evaluation. Nor did the City

---

[5] See City of Stockton's Reply to Objections to its Statement of Qualification Under Section 109(c) of the United States Bankruptcy Code [Dkt. No. 707; Tr. Ex. 730] at 3:24-26 (the "City's Reply") ("But what does reflect on the City's good faith is that it not only made a thoughtful Ask of its creditors, but it also funded 100% of the costs of the AB 506 process because the Capital Markets Creditors refused to pay their share."). Later, the City states that "[t]he Capital Markets Creditors refused to pay for their share of the mediation, leaving the City either to shoulder the complete burden or to shove half of it on its unions and retirees." Id. at 45:7-9.

[6] See Declaration of Norman C. Hile in Support of City of Stockton's Reply to Its Statement of Qualifications under Section 109(c) of the United States Bankruptcy Code [Dkt. No. 717; Tr. Ex. 1385], Ex. P at 2.

1  provide any evidence of the amount of the mediator's fee, how much the City paid, or when it made

2  the payment, likely because the amount is small in comparison to the issues presented in this case.

3        Section 53760.3(s) provides: "The local public entity shall pay 50 percent of the costs of

4  neutral evaluation, including, but not limited to, the fees of the evaluator, and the creditors shall pay

5  the balance, <u>unless otherwise agreed to by the parties</u>." Cal. Gov't Code § 53760.3(s)  (emphasis

6  added).  All the Court has before it is the City's statement in its reply (unsupported by any evidence)

7  that the City "funded 100% of the costs of the AB 506 process" (City's Reply at 3:24-26) and that an

8  issue was raised by NPFG.  Based on the City's assertion, it appears that the City did not invoice

9  CalPERS, judgment creditors, retirees, labor groups, or any other interested party for the costs of the

10  neutral evaluation process, or raise the fee issue with any party after the close of the mediation.  As

11  Assured never received an invoice from the City, it assumed that the City agreed with its position

12  regarding the neutral evaluation costs.  As a result, the only conclusion to be drawn is that "[t]he

13  City chose to bear the entire burden itself."  City Reply at 45:10-11.

14        WHEREFORE, Assured respectfully requests that this Court (i) alter or amend its findings

15  that Assured did not negotiate in good faith; (ii) amend its judgment accordingly; and (iii) grant such

16  other and further relief as is just and proper under the circumstances.

17

18  DATED:  April 11, 2013                     Respectfully Submitted,

19                                                         SIDLEY AUSTIN LLP

20                                                         By: <u>*/s/ Jeffrey E. Bjork*</u>

21                                                         Jeffrey E. Bjork (Cal. Bar No. 197930)
                                                       Christina M. Craige (Cal. Bar No. 251103)
22                                                         Guy S. Neal (Admitted *Pro Hac Vice*)
                                                       Alan C. Geolot (Admitted *Pro Hac Vice*)

23                                                         Attorneys for Assured Guaranty Corp.
                                                       and Assured Guaranty Municipal Corp.
24

25

26

27

28