# EXHIBIT A

# CONSTRUCTION CONTRACT

THIS CONTRACT is made and entered into on _____AUG 2 5 2009_____, by and between PRESTON PIPELINES, INC., with a business address at 133 Bothelo Avenue, Milpitas, CA 95035, hereinafter called "CONTRACTOR," and CITY OF STOCKTON, a municipal corporation, hereinafter called "CITY."

W I T N E S S E T H:

WHEREAS, plans and specifications for the construction of DELTA WATER SUPPLY PROJECT INTAKE AND PUMP STATION FACILITY (Project No. M09110), hereinafter called "PROJECT," were regularly adopted by Council Resolution No. 09-0293 on August 25, 2009; and

WHEREAS, the contract for said work was regularly awarded to PRESTON PIPELINES, INC., by Council Resolution No. 09-0293, on August 25, 2009.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the parties hereto expressly agree as follows:

1.    CONTRACTOR agrees:

(a)    To do the work and furnish all the labor, materials, tools, equipment and insurance required for the DELTA WATER SUPPLY PROJECT INTAKE AND PUMP STATION FACILITY (Project No. M09110) in accordance with the plans and specifications therefore regularly adopted on August 25, 2009, by Council Resolution No. 09-0293. Said Plans and Specifications are incorporated herein by this reference to the same extent as if fully set forth.

(b)    To do and perform the work contemplated hereby in a good and professional manner and to furnish all labor, materials, tools and equipment necessary therefore at the prices specified in Exhibit "A," attached hereto and by reference made a part hereof, under the direction of and to the complete satisfaction of the Municipal Utilities Director (Director) of the City of Stockton.

(c)    CONTRACTOR shall provide insurance and indemnification as provided in the "contract documents", Section 00820 of the Specifications.

Before permitting any subcontractors to perform work under the contract, CONTRACTOR shall require subcontractors to furnish satisfactory proof that insurance has been issued and is maintained similar to that provided by CONTRACTOR as may be applied to each subcontractor's work.

(d)      The performance of said work and the furnishing of said materials shall be executed in accordance with Section 8-1.03 of the City of Stockton Standard Specifications and Plans as adopted on November 25, 2003, by Council Resolution No. 03-0707, effective December 1, 2003, and the provisions of the issued project specifications.

The Director will furnish CONTRACTOR a weekly statement showing the number of days charged to the contract for the preceding week, the number of days specified for completion of the contract, and the number of days remaining to complete the contract. CONTRACTOR will be allowed one (1) week in which to file a written protest setting forth in what respects said weekly statement is incorrect, otherwise the statement shall be deemed to have been accepted by CONTRACTOR as correct.

It is agreed by the parties to the contract that in case all the work called for under the contract in all parts and requirements, is not finished or completed within the number of days as set forth, damage will be sustained by the CITY, and that it is and will be impracticable and extremely difficult to ascertain the actual damage which CITY will sustain in the event of and by reason of such delay; and it is therefore agreed that CONTRACTOR will pay to CITY the sum of **FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00)** per day for each and every calendar day's delay in finishing the work in excess of the number of days prescribed; and CONTRACTOR agrees to pay said liquidated damages as herein provided, and in case the same are not paid, agrees that CITY, may deduct the amount thereof from any monies due or that may become due CONTRACTOR under the contract.

It is further agreed that in case the work called for under the contract is not finished and completed in all parts and requirements within the number of  days as specified, the CITY shall have the right to increase the number of  days or not, as may seem best to serve the interest of CITY, and if the CITY decides to increase the said number of days, the CITY shall further have the right to charge to CONTRACTOR, CONTRACTOR's heirs, assigns or sureties, and to deduct from the final payment for the work, all or any part, as may be deemed proper, the liquidated damages as specified or the actual cost of engineering, inspection, superintendence, and other overhead expenses which are directly chargeable to the contract, and which accrue during the period of such extension, whichever is greater, except the cost of final surveys and preparation of final estimate shall not be included in such charges.

A working day shall not include, nor shall CONTRACTOR be assessed with liquidated damages nor the additional cost of engineering and inspection during any delay beyond the time named for the completion of the work caused by acts of God or of the public enemy, acts of CITY, fire, floods, epidemics, quarantine restrictions, strikes, and freight embargoes and subject to approval by the Director, inability to get materials ordered by CONTRACTOR or subcontractor due to such causes provided that CONTRACTOR shall notify

the Director in writing of the causes of delay within five (5) working days from the beginning of any such delay, and the Director shall ascertain the facts and the extent of the delay, and Director's findings of the facts thereon shall be final and conclusive.

If CONTRACTOR is delayed by reason of alterations made in these specifications, or by any act of the Director or of the CITY, not contemplated by the contract, the time of completion shall be extended proportionately and CONTRACTOR shall be relieved during the period of such extension of any claim for liquidated damages, engineering or inspection charges or other penalties.   CONTRACTOR shall have no claim for any other compensation for any such delay.

(e)     To conform strictly to the provisions of Division 2, Part 7, Chapter 1, Article 2, of the Labor Code of the State of California.

To forfeit as a penalty to CITY the sum of TWENTY-FIVE AND NO/100 DOLLARS ($25.00) for each laborer, worker, or mechanic employed by CONTRACTOR, or by any subcontractor under CONTRACTOR, in the execution of this contract, for each calendar day during which any laborer, worker, or mechanic is required or permitted to work more than eight (8) hours and who is not paid the general prevailing rate of per diem wages for holiday and overtime work in violation of the provisions of Sections 1770 to 1781 of the Labor Code of the State of California.

(f)     That all sums forfeited under the provisions of the foregoing sections shall be deducted from the payments to be made under the terms of this contract.

(g)     CONTRACTOR and any subcontractor shall pay each employee engaged in the trade or occupation not less than the prevailing hourly wage rate.  In accordance with the provisions of Section 1770 of the Labor Code, the Director of Department of Industrial Relations of the State of California has determined the general prevailing rates of wages and employer payments for health and welfare, pension, vacation, travel time, and subsistence pay as provided for in Section 1773.1, apprenticeship or other training programs authorized by Section 3093 and similar purposes applicable to the work to be done.  CONTRACTOR performing the work under this contract shall obtain a copy of the wage rate determination and shall distribute copies to each subcontractor.  As the wage determination for each craft reflects an expiration date, it shall be the prime CONTRACTOR and each subcontractor's responsibility to insure that the prevailing wage rates of concern is current and paid to the employee.

2.     CITY agrees:

(a)     To pay CONTRACTOR for the work herein contemplated in the following manner:  Progress payments will be made on or about the first day of each calendar month, in such sum as shall make the aggregate of payment up to such day equal to ninety percent (90%) of the proportional contract price, upon the basis of the progress certificate of the Director of

Municipal Utilities as to the amount of work done and the proportional amount of the contract price represented therefore; and all of the remaining part of the contract price not as aforesaid paid, shall be paid at the expiration of thirty-five (35) days from the completion of said work of construction and the certification by the Director of Municipal Utilities of such completion.

Pursuant to Section 22300 of the Public Contract Code, the contractor will be permitted, at its request and sole expense, to substitute securities for any monies withheld by the CITY to ensure performance under the contract. Said securities will be deposited either with the CITY or with a state or federally chartered bank as escrow agent. Securities eligible for this substitution are those listed in Section 16430 of the California Government Code or bank or savings and loan certificates of deposit. The CONTRACTOR shall be the beneficial owner of any securities substituted for monies withheld and shall receive any interest thereon.

3.    CHANGE ORDERS:

CITY reserves the right to make such alterations, deviations, additions to or omissions from the plans and specifications, including the right to increase or decrease the quantity of any item or portion of the work, as may be deemed by the Engineer to be necessary or advisable and to require such extra work as may be determined by the Engineer to be required for the proper completion or construction of the whole work contemplated.

Any such changes will be set forth in a contract change order which will specify, in addition to the work done in connection with the change made, adjustment of contract time, if any, and the basis of compensation for such work. A contract change order will not become effective until approved by the City Manager and/or the City Council.

Processing of change orders shall be in accordance with Section 4-1.03 of the City of Stockton Standard Specifications and Plans as adopted by Council on November 25, 2003, by Resolution No. 03-0707, effective December 1, 2003, except that the $23,578 limit shown in Section 4-1.03 shall be increased to $30,014. When the compensation for an item of work is subject to adjustment under the provisions of Standard Specifications and Plans, Section 4-1.03, CONTRACTOR shall, upon request, promptly furnish the Engineer with adequate detailed cost data for such item of work.

4.    AUDITS:

(a)    CITY reserves the right to periodically audit all charges made by CONTRACTOR to CITY for services under the contract. Upon request, CONTRACTOR agrees to furnish CITY, or a designated representative, with necessary information and assistance.

(b)    CONTRACTOR agrees that CITY or its delegate will have the right to review, obtain and copy all records pertaining to performance of the contract. CONTRACTOR agrees to provide CITY or its delegate with any relevant information requested and shall permit CITY or its delegate access to its premises, upon reasonable notice, during normal business

hours for the purpose of interviewing employees and inspecting and copying such books, records, accounts, and other material that may be relevant to a matter under investigation for the purpose of determining compliance with this requirement. CONTRACTOR further agrees to maintain such records for a period of three (3) years after final payment under the contract.

     5.    It is expressly understood and agreed by and between the parties hereto that a waiver of any of the conditions of this contract shall not be considered a waiver of any of the other conditions thereof.

     6.    It is further understood and agreed by and between the parties hereto that time is of the essence of this contract in all respects.

IN WITNESS WHEREOF, the parties hereto have hereunto affixed their hands and seals the day and year first above written.

ATTEST:
KATHERINE GONG MEISSNER
CITY CLERK

By _____

CITY OF STOCKTON, a municipal corporation

_____
J. GORDON PALMER, JR.
CITY MANAGER
"CITY"

APPROVED AS TO FORM & CONTENT:

RICHARD E. NOSKY, JR.
CITY ATTORNEY

PRESTON PIPELINES, INC.
133 Bothelo Avenue
Milpitas, CA 95035

By _____
"CONTRACTOR"
Gary Menges-Secretary

_____
Print Name and Title

By: _____
City Attorney

Corporation
(Indicate status: corporation, partnership or sole proprietorship)
Fed ID 94-2508467

_____
Tax Identification No.

::odma\grpwise\cos.mud.mud_library:135038.1

**EXHIBIT A**
DELTA WATER SUPPLY PROJECT INTAKE AND PUMP STATION FACILITY
**PROJECT No.** M09110

| Item # | Description | Est. Quantity | Unit Price | Total Price |
|--------|-------------|---------------|------------|-------------|
| 1. | Mobilization, Demobilization, Bonds, Permits, and Insurance on all work. | 1 | Lump Sum | 250,000 |
| 2. | Prepare SWPP Plan | 1 | Allowance | 11,000 |
| 3. | Implement SWPP Plan | 1 | Allowance | 56,000 |
| 4. | Sheeting, Shoring and Bracing | 1 | Lump Sum | 50,000 |
| 5. | Temporary Cofferdam Sheet Piling | 1 | Lump Sum | 75,000 |
| 6. | Permanent Sheet Piling | 1 | Lump Sum | 2,500,000 |
| 7. | Driven Steel Piles | 1 | Lump Sum | 3,000,000 |
| 8. | Setback Levee and Access Road | 1 | Lump Sum | 2,500,000 |
| 9. | Intake Facility, and Related Equipment, Site Work, Piping, and Appurtenances | 1 | Lump Sum | 7,655,000 |
| 10. | Instruction of City personnel on all work | 1 | Lump Sum | 38,000 |
| 11. | Instruction (O&M) Manuals on all work | 1 | Lump Sum | 11,000 |
| 12. | Contractor's Record Drawings on all work | 1 | Lump Sum | 10,000 |
| | TOTAL BID: The sum of Items 1 through 12 | | | 16,156,000 |

Bond No. 6635035
Premium Amount: $110,669.00

---

### BOND FOR FAITHFUL PERFORMANCE

KNOW ALL MEN BY THESE PRESENTS:

That we, PRESTON PIPELINES, INC., a corporation, as Principal and Safeco Insurance Company of America, a corporation, organized and existing under the laws of the State of WA and duly authorized to transact business under the laws of the State of California, as Surety, are held and firmly bound unto the City of Stockton, a municipal corporation, duly created and existing under and by virtue of the laws of the State of California, as obligee, in the just and full sum of SIXTEEN MILLION ONE HUNDRED FIFTYSIX THOUSAND AND NO/100 DOLLARS ($16,156,000), in lawful money of the United States of America (being 100% of the contract price) for the payment whereof well and truly to be made to the said CITY, the said Principal and Surety bind themselves, their successors and assigns, jointly and severally, firmly by these presents.

The condition of the foregoing obligation is such that the above bounded Principal has simultaneously entered into a contract with the CITY, to do and perform the following work, to wit:

DELTA WATER SUPPLY PROJECT INTAKE AND PUMP STATION FACILITY
(PROJECT NO. M09110)

NOW, THEREFORE, if the above bounded Principal, CONTRACTOR, Company or Corporation or its subcontractor, shall well and truly perform the work contracted to be done under said contract, then this obligation to be null and void; otherwise to remain in full force and effect.

No prepayment or delay in payment and no change, extension, addition or alteration of any provision of said contract, or in said plans or specifications agreed to between the said CONTRACTOR and the said CITY, and no forbearance on the part of the said CITY shall operate to relieve any Surety or Sureties from liability on this bond, and consent by said Surety is hereby given, and the said Surety hereby waives the provisions of Sections 2819 and 2845 of the Civil Code of the State of California.

SIGNED AND SEALED on September 3, 2009

APPROVED AS TO SURETY:

APPROVED AS TO FORM:

RICHARD E. NOSKY, JR.
OFFICE OF THE CITY ATTORNEY

By_____
    CITY ATTORNEY

PRESTON PIPELINES, INC.
a corporation

By_____
"PRINCIPAL"
Gary Menges-Secretary

Safeco Insurance Company of America
SURETY

By_____
ATTORNEY-IN-FACT: Jeanette Santana

::odma\grpwise\cos.mud.mud_library:135038.1



| | | Safeco Insurance Company of America |
|---|---|---|
| **Liberty Mutual.** | POWER OF ATTORNEY | General Insurance Company of America |
| | | 1001 4th Avenue |
| | | Suite 1700 |
| | | Seattle, WA 98154 |

KNOW ALL BY THESE PRESENTS:                                         No.  10947

That SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA, each a Washington corporation, does each hereby appoint

**********GEOFFREY R. GREEN; MATTHEW KELLY; IAN MCCORMICK; MICHAEL E. SHEAHAN; JAMES W. UNTIEDT; JULIA GRIMES; JEANETTE SANTANA; Fremont, CA*************************************************

its true and lawful attorney(s)-in-fact, with full authority to execute on its behalf fidelity and surety bonds or undertakings and other documents of a similar character issued in the course of its business, and to bind the respective company thereby.

IN WITNESS WHEREOF, SAFECO INSURANCE COMPANY OF AMERICA and GENERAL INSURANCE COMPANY OF AMERICA have each executed and attested these presents

this    21st    day of    March    , 2009

*Dexter R. Legg*                                  *T A Mikolajewski*

Dexter R. Legg, Secretary                    Timothy A. Mikolajewski, Vice President

**CERTIFICATE**

Extract from the By-Laws of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA:

"Article V, Section 13. - FIDELITY AND SURETY BONDS ... the President, any Vice President, the Secretary, and any Assistant Vice President appointed for that purpose by the officer in charge of surety operations, shall each have authority to appoint individuals as attorneys-in-fact or under other appropriate titles with authority to execute on behalf of the company fidelity and surety bonds and other documents of similar character issued by the company in the course of its business... On any instrument making or evidencing such appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the company, the seal, or a facsimile thereof, may be impressed or affixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

Extract from a Resolution of the Board of Directors of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA adopted July 28, 1970.

"On any certificate executed by the Secretary or an assistant secretary of the Company setting out,
   (i)   The provisions of Article V, Section 13 of the By-Laws, and
  (ii)  A copy of the power-of-attorney appointment, executed pursuant thereto, and
  (iii) Certifying that said power-of-attorney appointment is in full force and effect,
the signature of the certifying officer may be by facsimile, and the seal of the Company may be a facsimile thereof."

I, Dexter R. Legg   , Secretary of SAFECO INSURANCE COMPANY OF AMERICA and of GENERAL INSURANCE COMPANY OF AMERICA, do hereby certify that the foregoing extracts of the By-Laws and of a Resolution of the Board of Directors of these corporations, and of a Power of Attorney issued pursuant thereto, are true and correct, and that both the By-Laws, the Resolution and the Power of Attorney are still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the facsimile seal of said corporation

this    3rd    day of    September    , 2009

  

*Dexter R. Legg*

Dexter R. Legg, Secretary

S-0974/DS 3/09                                                                WEB PDF

STATE OF CALIFORNIA     }
                                }     ss.

COUNTY OF ALAMEDA     }

On September 3, 2009, before me, Julia Grimes, Notary Public, personally appeared Jeanette Santana, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



JULIA GRIMES
Commission # 1713129
Notary Public - California
Alameda County
My Comm. Expires Dec 30, 2010

(Seal)

Julia Grimes, Notary Public - California

Description of Attached Document:

Preston Pipelines, Inc.
City of Stockton
Delta Water Supply Project Intake and Pump Station Facility; Project No. M09110
Performance Bond

State of California
County of Santa Clara

On      September 4, 2009  before me, Jeanette J. Chavez, Notary Public,
personally appeared         Gary A. Menges

| X | who proved to me on the basis of satisfactory evidence to be the person(s) whose names(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authoized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. |

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JEANETTE J. CHAVEZ
Commission # 1649910
Notary Public - California
Santa Clara County
My Comm. Expires Mar 7, 2010

_Jeanette Chavez_
SIGNATURE OF NOTARY

My Commission Expires:  March 7, 2010

*OPTIONAL*

Bond No. 6635035

## BOND FOR LABOR AND MATERIAL

KNOW ALL MEN BY THESE PRESENTS:

That we, PRESTON PIPELINES, INC., a corporation, as Principal and Safeco Insurance Company of America, corporation, organized and existing under the laws of the State of __WA__ and duly authorized to transact business under the laws of the State of California, as Surety, are held and firmly bound unto the City of Stockton, a municipal corporation, duly created and existing under and by virtue of the laws of the State of California, and unto any and all material suppliers, persons, companies, or corporations furnishing materials, provisions, provender or other supplies used in, upon, for or about the performance of the work contemplated to be executed or performed under the contract hereinafter mentioned, and all persons, companies, or corporations renting or hiring teams, or implements of machinery, for or contributing to said work and all persons who perform work or labor upon the same, and all persons who supply both work and materials, and whose claims have not been paid by the contractor, company or corporation in the just and full sum of SIXTEEN MILLION ONE HUNDRED FIFTYSIX THOUSAND AND NO/100 DOLLARS ($16,156,000), in lawful money of the United States of America (being 100% of the contract price) for the payment whereof well and truly to be made to said City of Stockton and to said persons jointly and severally, the said principal and Surety bind themselves, their successors and assigns, jointly and severally, firmly by these presents.

The condition of the foregoing obligations is such that the above bounden Principal has simultaneously entered into a contract of even date herewith, with the CITY, to do and perform the following work, to-wit:

DELTA WATER SUPPLY PROJECT INTAKE AND PUMP STATION FACILITY
(PROJECT No. M09110)

NOW, THEREFORE, if the above bounden Principal, CONTRACTOR, Company or Corporation or its subcontractor, fail to pay for all materials, provisions, provender, or other supplies, or teams, used in, upon, for or about the performance of the work contracted to be done, or for any work or labor done thereon of any kind, the Surety on this bond will pay the same, in an amount not exceeding the sum specified in this bond, provided that any and all claims hereunder shall be filed and proceedings had in connection therewith as required by the provisions of Division 3, Part 4, Title 15, Chapter 5, Article 1 of the Civil Code of California,

provided that in case suit is brought upon this bond, a reasonable attorney's fee shall be awarded by the Court to the prevailing party in said suit; said attorney's fee to be fixed as costs in said suit, and to be included in the judgment therein rendered.

No prepayment or delay in payment and no change, extension, addition or alteration of any provision of said contract or in said plans or specifications agreed to between the said CONTRACTOR and the said CITY and no forbearance on the part of the said CITY shall operate to relieve any surety or sureties from liability on this bond, and consent to make such alterations without further notice to or consent by any such surety is hereby given, and the said sureties hereby waive the provisions of Sections 2819 and 2845 of the Civil Code of the State of California.

SIGNED AND SEALED on _September 3, 2009_

APPROVED AS TO SURETY:

APPROVED AS TO FORM & CONTENT:

RICHARD E. NOSKY, JR.
OFFICE OF THE CITY ATTORNEY

By _____
CITY ATTORNEY

PRESTON PIPELINES, INC.
a corporation

By _____
"PRINCIPAL"
Gary Menges-Secretary

Safeco Insurance Company of America
SURETY

By _____
ATTORNEY-IN-FACT: Jeanette Santana

::odma\grpwise\cos.mud.mud_library:135038.1

 **Liberty Mutual.**

**POWER OF ATTORNEY**

Safeco Insurance Company of America
General Insurance Company of America
1001 4th Avenue
Suite 1700
Seattle, WA 98154

No.   10947

**KNOW ALL BY THESE PRESENTS:**

That **SAFECO INSURANCE COMPANY OF AMERICA** and **GENERAL INSURANCE COMPANY OF AMERICA**, each a Washington corporation, does each hereby appoint

**\*\*\*\*\*\*\*\*\*\*GEOFFREY R. GREEN; MATTHEW KELLY; IAN MCCORMICK; MICHAEL E. SHEAHAN; JAMES W. UNTIEDT; JULIA GRIMES; JEANETTE SANTANA; Fremont, CA\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

its true and lawful attorney(s)-in-fact, with full authority to execute on its behalf fidelity and surety bonds or undertakings and other documents of a similar character issued in the course of its business, and to bind the respective company thereby.

**IN WITNESS WHEREOF, SAFECO INSURANCE COMPANY OF AMERICA** and **GENERAL INSURANCE COMPANY OF AMERICA** have each executed and attested these presents

this   21st   day of   March   2009

*Dexter R. Legg*

**Dexter R. Legg, Secretary**

*T A Mikolajewski*

**Timothy A. Mikolajewski, Vice President**

**CERTIFICATE**

Extract from the By-Laws of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA:

"Article V, Section 13. - FIDELITY AND SURETY BONDS ... the President, any Vice President, the Secretary, and any Assistant Vice President appointed for that purpose by the officer in charge of surety operations, shall each have authority to appoint individuals as attorneys-in-fact or under other appropriate titles with authority to execute on behalf of the company fidelity and surety bonds and other documents of similar character issued by the company in the course of its business... On any instrument making or evidencing such appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the company, the seal, or a facsimile thereof, may be impressed or affixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

Extract from a Resolution of the Board of Directors of SAFECO INSURANCE COMPANY OF AMERICA
and of GENERAL INSURANCE COMPANY OF AMERICA adopted July 28, 1970.

"On any certificate executed by the Secretary or an assistant secretary of the Company setting out,
  (i)   The provisions of Article V, Section 13 of the By-Laws, and
  (ii)  A copy of the power-of-attorney appointment, executed pursuant thereto, and
  (iii) Certifying that said power-of-attorney appointment is in full force and effect,
the signature of the certifying officer may be by facsimile, and the seal of the Company may be a facsimile thereof."

I, Dexter R. Legg    , Secretary of SAFECO INSURANCE COMPANY OF AMERICA and of GENERAL INSURANCE COMPANY OF AMERICA, do hereby certify that the foregoing extracts of the By-Laws and of a Resolution of the Board of Directors of these corporations, and of a Power of Attorney issued pursuant thereto, are true and correct, and that both the By-Laws, the Resolution and the Power of Attorney are still in full force and effect.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the facsimile seal of said corporation

this   3rd   day of   September   2009

*Dexter R. Legg*

**Dexter R. Legg, Secretary**

S-0974/DS 3/09

WEB PDF

State of California
County of Santa Clara

On       September 4, 2009   before me, Jeanette J. Chavez, Notary Public,
personally appeared         Gary A. Menges

| X | who proved to me on the basis of satisfactory evidence to be the person(s) whose names(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. |

I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

JEANETTE J. CHAVEZ
Commission # 1649910
Notary Public - California
Santa Clara County
My Comm. Expires Mar 7, 2010

_____
SIGNATURE OF NOTARY

My Commission Expires:  March 7, 2010

*OPTIONAL*

# EXHIBIT B

DRAFT

1

LEONIDOU & ROSIN
Professional Corporation
Janette G. Leonidou (No. 155257)
777 Cuesta Drive, Suite 200
Mountain View, CA 94040
Telephone: (650) 691-2888
Facsimile:  (650) 691-2889

2

3

4

5

6

Attorneys for Plaintiff
PRESTON PIPELINES, INC.

7

8

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

IN AND FOR THE COUNTY OF SAN JOAQUIN

10

11

PRESTON PIPELINES, INC. a California
corporation,

12

13

Plaintiff,

14

vs.

15

CITY OF STOCKTON, a public entity,
CAROLLO ENGINEERS, INC., a Delaware
corporation; and DOES 1 through 50,
inclusive,

16

17

18

Defendants.

Case No.:

COMPLAINT FOR BREACH OF
CONTRACT, DECLARATORY RELIEF,
INTERFERENCE WITH CONTRACT,
INDEMNITY AND CONTRIBUTION

19

For its complaint, Plaintiff Preston Pipelines, Inc. ("Plaintiff") alleges:

20

1.      At all relevant times, Plaintiff is and has been a corporation duly organized and

21

existing under California law, licensed by the Contractors State License Board to perform the

22

work referred to herein.

23

2.      At all relevant times, Defendant City of Stockton ("Stockton") is and has been a

24

public agency and the owner of the project that is the subject of this action.

25

3.      On _____, Stockton filed for U.S. Bankruptcy Court protection

26

pursuant to USC Chapter _____.  On _____, Preston obtained relief from stay to pursue

27

this complaint in state court.

28

1

Complaint for Breach of Contract, Declaratory Relief, Interference with Contract,  Indemnity and Contribution

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

4.      Plaintiff is informed and believes and thereon alleges that at all relevant times, Carollo Engineers, Inc. ("Carollo") is and has been a purported Delaware corporation acting as a construction manager on behalf of Stockton.

5.      Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 50, inclusive.  Plaintiff therefore sues these Defendants by fictitious names and will amend this complaint when such Defendants' true names and capacities are ascertained.

6.      Plaintiff is informed and believes and thereon alleges that each of the Defendants was the agent and employee of each of the remaining Defendants, acting within the purpose and scope of its agency and employment.

7.      Plaintiff has submitted written claims pursuant to Government Code Sections 900, et seq. for all of the matters referred to herein.  On or after _____ , 2013, Stockton formally denied the claims.  Within the six months following the denial of the claims, Plaintiff filed this action.  Accordingly, Plaintiff has satisfied all conditions for filing and prosecution of this suit.

## FIRST CAUSE OF ACTION

**(Breach of Written Contract – Including Statutory and Legal Obligations Inherent in Written Contract – Stockton Defendants and Does 1-20)**

8.      Plaintiff refers to and incorporates as though fully set forth herein each of the foregoing paragraphs.

9.      On or about August 25, 2009, Defendants Stockton and Does 1-20 (the "Stockton Defendants") entered into a written agreement (the "Contract") with Plaintiff pursuant to which Plaintiff was to act as the general contractor for a public works construction project known as the Delta Water Supply Project Intake and Pump Station Facility (Project No. M09110).   A true and correct copy of the form of agreement for the Project is attached hereto and incorporated herein as Exhibit A. The general conditions, drawings and technical specifications for the Project are voluminous, and to avoid prolixity, are not attached; however, the terms thereof are incorporated

2

Complaint for Breach of Contract, Declaratory Relief, Interference with Contract,  Indemnity and Contribution

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

1  herein both expressly and by judicial reference.

2       10.    The funding for the project was provided through a Stockton Public Financing

3  Authority Variable Rate Demand Water Revenue Bond, Series 2010A, specifically issued to

4  fund the design and construction of the Project.

5       11.    The Contract provided that Plaintiff would be paid for its work, labor, materials,

6  and services.  The original contract amount for the Project, before adjustments for change orders,

7  was $16,156,000.

8       12.    Under applicable law and by statute, Defendants owed a duty to provide accurate

9  and complete plans, designs, information and specifications.  <u>See</u> <u>Warner Construction</u>

10 <u>Corporation v. City of Los Angeles</u>, 2 C.3d 285 (1970); <u>E.H. Morrill Co. v. State</u>, 65 C.2d 787,

11 792 (1967); <u>Souza & McCue Construction Co. v. Superior Court</u>, 57 C.2d 508 (1962); <u>Welch v.</u>

12 <u>State of California</u>, 139 C.A.3d 546 (1983); Public Contract Code §§ 1104 and 7104; Civ. Code

13 § 2782(a) & (b) (clause that seeks to shift risk to contractor of owner's defective designs or

14 public agency's affirmative negligence is void and unenforceable.

15      13.    Among the pertinent provisions of the contract for the Project were those that

16 required the Stockton Defendants to issue a change order when Plaintiff performed extra work,

17 encountered conditions that differed from those shown in the contract documents or that

18 reasonably could have been anticipated, was prevented in its performance, or when Plaintiff

19 otherwise incurred costs which otherwise were the responsibility of the Stockton Defendants.

20 During performance, the amount of the Contract was adjusted by written change orders issued by

21 the Stockton Defendants totaling $423,916.59.

22      14.    In addition to the work and costs described in change orders actually issued by the

23 Stockton Defendants, Plaintiff performed extra work and incurred costs for which it is entitled to

24 change orders, including extra work and change orders necessitated because of deficiencies in

25 the Stockton Defendants' plans, designs, information and specifications as well as differing site

26 conditions and changes in the Project Schedule. However, the Stockton Defendants have failed

27 and refused to issue all appropriate change orders increasing the Contract price and the time for

28

3

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

1    performance.

2    //

3         15.    The total amount of change orders and claims for which the Stockton Defendants

4    should have issued change orders and made payment is reasonably estimated at $1,178,008.80,

5    inclusive of amounts owed to Plaintiff for its own work, as well as for labor, equipment,

6    materials, and services furnished through Plaintiff by subcontractors and suppliers assuming all

7    subcontractor and supplier claims are hereafter determined to be valid, plus an additional

8    $1,255,392 for delay, inefficiencies, escalation, and similar damages.

9         16.    Plaintiff has satisfied all conditions and covenants required of it, save those which

10   have been excused or otherwise discharged or which Plaintiff has been prevented from

11   performing.  Specifically, and without limitation, Plaintiff has exhausted any and all contractual

12   remedies under the contract documents; to the extent that Plaintiff may have failed to do so in the

13   first instance, the Stockton Defendants have not been prejudiced, and Plaintiff would be entitled

14   to relief from forfeiture.

15        17.    The Stockton Defendants breached the contract by actively delaying, hindering

16   and obstructing Plaintiff's performance.  The Stockton Defendants further breached the implied

17   warranty of accuracy pertaining to the design, plans and/or specifications for the Project.

18   Illustrative and not exhaustive examples of these breaches include the Stockton Defendants' (1)

19   failure to timely obtain an encroachment period, (2) shifting Preston's work outside of

20   contractually mandated regulatory periods for the giant garter snakes, (3) forcing work that had

21   to be performed in the regulatory period from the calendar year 2010 to the calendar year 2012,

22   (4) issuing design clarifications that affected Preston's productivity and time of performance,  (5)

23   resequencing Preston's work, (6) accelerating Preston's work, (7) failing to acknowledge or

24   address significant changed conditions, including excessive pile movement, and (8) failing to

25   acknowledge or address inaccuracies and incompleteness in the plans and specifications.

26   Plaintiff incurred additional costs as a result.  Under the terms of the contract documents, and

27   applicable law, including Section 7102 of the Public Contract Code, Plaintiff was entitled to

28

4

Complaint for Breach of Contract, Declaratory Relief, Interference with Contract,  Indemnity and Contribution

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

receive a change order compensating it for these delays and the costs associated with them. In addition, under Section 1511 of the Civil Code and applicable law, the Stockton Defendants are

//

barred from seeking to withhold or assess damages for delay, and is required to provide time extensions.

18.    Despite its contractual and statutory obligations, Stockton has failed to pay Preston for the added costs and time it incurred due to the foregoing and other breaches of contract.

19.    In addition, the Stockton Defendants failed to, and continue to fail to, disburse payments in a timely manner. For example and without limitation, the Stockton Defendants failed to make progress payments of not less than $320,000 that are undisputed and other progress payments were delayed without any basis. The Stockton Defendants have also failed to allow retention of not less than $1,657,000 to be released from escrow.

20.    Although Plaintiff has been paid part of what it is owed by Stockton Defendants, it has not been paid all of the amounts to which it is entitled under the Contract. Stockton Defendants are therefore in breach of their obligations under the Contract and applicable law.

21.    Plaintiff has suffered damages from that breach, in an amount to be proven at trial, which are estimated at not less than $4,679,454, including, unpaid change orders and compensation for additional work, delay, and disruption owed to the Plaintiff, wrongfully withheld undisputed progress payments, wrongfully withheld retention balances, wrongfully withheld inspection fees, and interest thereon.

WHEREFORE, Plaintiff prays for judgment as set forth herein.

## SECOND CAUSE OF ACTION

**(Breach of Written Contract,  Declaratory Relief, Indemnity, and Contribution – Stockton Defendants)**

22.    Plaintiff refers to and incorporates as though fully set forth herein each of the foregoing paragraphs.

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

23.    A general contractor is legally entitled to present "pass-through" claims on behalf of subcontractors.  See Howard Contracting, Inc. v. G.A. MacDonald Construction Co., Inc., 71 C.A.4th 38, 60(1999) ("As a matter of law, a general contractor can present a subcontractor's claim on a pass-through basis."); D.A. Parrish & Sons v. County San. Dist., 174 C.A.2d 406, 415-16 (1959); see also C. Norman Peterson Co. v. Container Corp. of America, 172 C.A.3d 628 (1985) (affirming judgment that awarded general contractor damages for subcontractor pass-through claim); see, e.g., Maurice L. Bein, Inc. v. Housing Auth. of Los Angeles, 157 C.A.2d 670 (1958).  This principle is particularly applicable where, as here, the subcontractor or supplier cannot pursue a claim directly against the owner of a public construction project.

24.    Accordingly, without waiving defenses to claims asserted by its subcontractors and suppliers and without admitting liability thereon, Plaintiff hereby presents the claims of its subcontractors,  Big B Construction, Inc., Bockmon & Woody Electric Co., Inc., and Devcon Construction, Inc., in connection with the Project.  (Preston is also seeking contract balances various other subcontractors allege they are owed for which Preston has not been paid.)

25.    If the position of  Plaintiff's subcontractors and suppliers is correct, then certain of the sums sought by Plaintiff for its contract balance, change order requests, and delay and disruptions claims would be owed under provisions of the Contract and under applicable law.  In addition, Plaintiff would be entitled to a time extension through actual completion of the Project.

26.    There is an actual, existing, and justiciable controversy among the parties, in that:

a.    Plaintiff's subcontractors contend:  The Stockton Defendants' plans and specifications were deficient, they were required to perform additional work and incur additional costs as a result of actions and omissions of the Stockton Defendants and other circumstances for which the Stockton Defendants are responsible, and they were obstructed and delayed in their performance by actions and omissions of the Stockton Defendants and other circumstances for which the Stockton Defendants are responsible;

b.    As its subcontractors' claims in many instances may involve disputed issues or facts which cannot be known with certainty, Plaintiff cannot determine conclusively whether such claims

6

Complaint for Breach of Contract, Declaratory Relief, Interference with Contract,  Indemnity and Contribution

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

will be determined to be valid or not and whether Plaintiff will be subject to liability for such claims; in the event and to the extent that Plaintiff is subjected to such liability to its subcontractors, Plaintiff must be permitted to recover from the Stockton Defendants, which are the parties who ultimately would be responsible for any such claims.

//

c.     To the extent that the subcontractors' claims are valid, Plaintiff is entitled to recover under the Contract and is further entitled to indemnity and contribution from the Stockton Defendants in connection with such claims, both for the actual amounts owed and for the costs of investigating and defending against such claims; and

d.     Plaintiff is informed and believes that the Stockton Defendants deny the foregoing contentions.

27.     A declaration of rights is necessary in order to avoid a multiplicity of proceedings and the possibility of conflicting and inconsistent results.

WHEREFORE, Plaintiff prays for judgment as set forth herein.

## THIRD CAUSE OF ACTION

### (Interference with Contract – Carollo and Does 18 - 30)

28.     Plaintiff refers to and incorporates as though fully set forth herein each of the foregoing paragraphs.

29.     At all relevant times, Defendant Carollo and Does 18 through 30 (the "Carollo Defendants") were aware of the existence of the Contract between Preston and the Stockton Defendants.   Carollo was also aware that:

a.   The Carollo Defendants had failed to competently manage the project;

b.   The Stockton Defendants and/or the Carollo Defendants failed to take proper efforts to obtain an encroachment permit within the time frame depicted within the Contract Bid Documents;

c.   The Carollo Defendants failed to acknowledge the inaccurate schedule and impact of the encroachment permit delay and failed work with the Contractor to prepare a

7

Complaint for Breach of Contract, Declaratory Relief, Interference with Contract,  Indemnity and Contribution

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

schedule to mitigate this impact;

d.   The Carollo Defendants failed to acknowledge the schedule and efficiency impact additional design clarification caused; and

e.   The Carollo Defendants failed to acknowledge differing site conditions.

30.   Because the Carollo Defendants failed to properly address and manage the events referred to above, the cost to perform the project and delay to the project were much greater than they otherwise would have been (a) if the Carollo Defendants had properly addressed and responded to the above events and their own failures and shortcomings, and (b) if the Carollo Defendants had dealt in good faith with Plaintiff and the Stockton Defendants to mitigate the impacts of these events.  Realizing that they had made bad events substantially worse by denying their existence and impact, the Carollo Defendants began making intentionally false and misleading accusations about Plaintiff and its work, attempting to persuade the Stockton Defendants that the project cost and time overruns were the fault of Plaintiff when in fact the overruns were in large measure the fault of the Carollo Defendants.  Among the intentionally false, misleading, and knowingly inaccurate statements made by the Carollo Defendants were statements that Plaintiff was failing to perform in compliance with the Contract and causing project delay and project cost overruns.

31.   Plaintiff is informed and believes that Carollo was aware that if it were able to persuade  Stockton of the untrue and misleading statements regarding Plaintiff, Stockton would not administer the Contract as it otherwise would be required; for example, Stockton would not issue change orders and it would assess liquidated damages against Plaintiff rather than paying Plaintiff for time delays.  The City in fact stopped making contract payments to Preston, withheld liquidated damages, and refused to issue change orders due to the Carollo Defendants intentional false statements.

32.   The Carollo Defendants intended, for their own advantage, to induce the Stockton Defendants to breach the Contract with Plaintiff.  By persuading the Stockton Defendants to withhold  payments  improperly  from  Plaintiff,  Carollo  was  able  to  obtain  additional

8

Complaint for Breach of Contract, Declaratory Relief, Interference with Contract,  Indemnity and Contribution

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

compensation for itself from the Stockton Defendants from the funds wrongfully withheld from Plaintiff.

33.     As alleged above, Plaintiff is informed and believes that the Carollo Defendants have acted with willful and conscious disregard of the rights of others, fraudulently and with malice, and have subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.  Accordingly, the Carollo Defendants are guilty of outrageous conduct, malice, and oppression, and in addition to compensatory damages of at least the sum of $4,679,454.61, plus interest, punitive damages should be assessed for the sake of example and by way of punishing such defendants.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

1.     For damages, according to proof, in the principal amount not less than $4,679,454.61.

2.     As to Defendant Carollo Engineers, Inc. and Does 18 through 30, for punitive damages, according to proof.

3.     For a declaration of rights with regard to any and all subcontractor claims in connection with the Project, including without limitation, for a decree and order:

    a.     Determining Stockton Defendants' liability for pass-through and subcontractor and supplier claims;

    b.     Requiring the Stockton Defendants to pay for such claims, to the extent that they are valid, as damages as prayed for above; and

    c.     Requiring the Stockton Defendants to indemnify and defend Plaintiff against such claims.

4.     For costs; and

5.     For such other and further relief as the Court may deem just and proper.

Dated: July 16, 2013

                        LEONIDOU & ROSIN
                        Professional Corporation

9

Complaint for Breach of Contract, Declaratory Relief, Interference with Contract,  Indemnity and Contribution

C:\Users\awise\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\2PU07200\Revised complaint after discussion with clients (00150688-3).DOCX

By_____
Janette G. Leonidou
Attorneys for Plaintiff
PRESTON PIPELINES, INC.

10

Complaint for Breach of Contract, Declaratory Relief, Interference with Contract,  Indemnity and Contribution