14

MARC A. LEVINSON (STATE BAR NO. 57613)
malevinson@orrick.com
NORMAN C. HILE (STATE BAR NO. 57299)
nhile@orrick.com
PATRICK B. BOCASH (STATE BAR NO. 262763)
pbocash@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497
Telephone:   +1-916-447-9200
Facsimile:   +1-916-329-4900

Attorneys for Debtor
City of Stockton

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>CITY OF STOCKTON, CALIFORNIA,<br><br>Debtor. | Case No. 2012-32118<br><br>D.C. No. OHS-14<br><br>Chapter 9<br><br>**CITY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY SEVENTH INNING STRETCH, LLC PURSUANT TO RULE 2004 SUBPOENA**<br><br>Date:   October 28, 2013<br>Time:   10:00 a.m.<br>Dept:   Courtroom 35<br>Judge:  Hon. Christopher M. Klein |

**TABLE OF CONTENTS**

Page

I. JURISDICTION AND VENUE ................................................................................ 1
II. BACKGROUND ....................................................................................................... 1
    A. The City's License Agreement With SIS ..................................................... 1
    B. The City's Negotiations With SIS ................................................................ 2
    C. The City's Subpoena .................................................................................... 3
    D. SIS Files Late Objections And Fails To Produce The Subpoenaed Documents ................................................................................................... 4
III. DISCUSSION ........................................................................................................... 5
    A. SIS's Objections To The City's Subpoena Are Untimely And Are Therefore Waived......................................................................................... 5
    B. The City's Subpoena Requests Are Within The Scope Of A Rule 2004 Examination And Are Not Overbroad .......................................................... 7
    C. The City Is Entitled To The Requested Information.................................... 8
    D. Request For Costs ........................................................................................ 9
IV. PRAYER ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amer. Elec. Power Co. v. U.S.*,
   191 F.R.D. 132 (S.D. Ohio 1999) .................................................................................. 6

*Huene v. U.S. Dep't of Treasury*,
   2013 WL 417747 (E.D. Cal. Jan. 31, 2013) .................................................................. 6

*In re Continental Forge*,
   73 B.R. 1005 (Bankr. W.D. Pa.) ..................................................................................... 5

*In re Dinubilo*,
   177 B.R. 932 (E.D. Cal. 1993) ....................................................................................... 7

*In re Motorsports Merchandise Antitrust Litigation*,
   186 F.R.D 344 (W.D. Va. 1999). .................................................................................... 6

*In re Subpoena Duces Tecum & Ad Testificandum Pursuant to Fed. R. Bankr. P. 2004*,
   461 B.R. 823 (Bankr. C.D. Cal. 2011) ........................................................................... 7

*McCoy v. Southwest Airlines, Co.*,
   211 F.R.D. 381 (C.D.Cal.2002) ..................................................................................... 6

*Moon v. SCP Pool, Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) .................................................................................... 6

## STATUTES

28 U.S.C.

   § 157 ................................................................................................................................ 1

   § 1334 .............................................................................................................................. 1

   § 1408 .............................................................................................................................. 1

   § 1409 .............................................................................................................................. 1

California Government Code § 53760 *et seq.* ....................................................................... 2

## RULES

Fed. R. Bankr. P.

   2004 ............................................................................................................................ 7, 8

# **TABLE OF AUTHORITIES**
## (cont'd)

2004(b) ............................................................................................................................... 7

9014 .................................................................................................................................... 8

9016.................................................................................................................................. 1, 5

Fed. R. Civ. P.

45....................................................................................................................................... 1, 5

45(c)(2)(B) .............................................................................................................. 4, 5, 6, 7

45(c)(2)(B)(ii) ..................................................................................................................... 5

The City of Stockton, California (the "City"), the debtor in the above-captioned case, respectfully moves (by this "Motion") pursuant to Federal Rule of Civil Procedure 45, which is made applicable to this case by Federal Rule of Bankruptcy Procedure 9016, for entry of an order compelling the production of documents by Seventh Inning Stretch, LLC ("SIS").

## I.

## JURISDICTION AND VENUE

The Court has jurisdiction over this Motion and the relief requested pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157. Venue for the Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.

## BACKGROUND

**A.     The City's License Agreement With SIS.**

In 2004, the City financed and constructed an events center that included a 5,200 seat Class A baseball park (the "Stadium), a 10,000 seat arena ("Arena"), parking, and other amenities. Declaration Of Laurie Montes In Support Of City's Motion To Compel Production Of Documents By Seventh Inning Stretch, LLC Pursuant To Rule 2004 Subpoena ("Montes Decl."), ¶ 2. In 2005, the City entered into a long-term licensing agreement (the "License Agreement") for the use of the Stadium with SIS, which owns a minor league baseball team, the Stockton Ports (the "Ports"). *Id.* The License Agreement has an initial term of 25 years, with the option to extend for two additional seven year periods. *Id.*

Generally, the License Agreement concerns issues such as control of the calendar for the Stadium, control and operation of concessions, and related Stadium revenue streams (such as advertising). The terms of the License Agreement are generally favorable to SIS as compared to other California League license agreements, particularly given the age and quality of the Stadium. Montes Decl., ¶ 3. Moreover, the terms of the License Agreement, combined with the costs to operate the Stadium, require the City to subsidize the Stadium operations and maintenance. *Id.* The required subsidy for fiscal year 2013-2014 is approximately $547,578, including

1    approximately $65,000 of possessory interest tax that the City pays on behalf of SIS for the Ports'
2    use of the Stadium.  *Id.*  The structure of the License Agreement is such that the City cannot
3    reduce its subsidy to SIS during a fiscal emergency.  *Id.*  The License Agreement also requires the
4    City to pay Stadium expenditures and management costs for 70 Ports games and 20 non-game
5    events (which can last for multiple days) for the term of the License Agreement, plus extensions
6    (if exercised).  *Id.*  Finally, the License Agreement gives the Ports control of virtually all Stadium
7    revenues, requiring only that SIS pass through to the City a modest amount of revenue for facility
8    fees and premium seating.  *Id.*

B.    **The City's Negotiations With SIS.**

On June 28, 2012, the City filed its petition for chapter 9 relief (Dkt. No. 1), and on April 1, 2013, the Court entered its Order for Relief (Dkt. No. 843).  Both prior to and after the filing of its petition, the City engaged in negotiations with most of its largest creditors, with the goal of reaching agreements that could be incorporated into a plan of adjustment.[1]  As part of its ongoing negotiations despite the filing of the Plan, the City is evaluating all of its contracts, including the License Agreement, to determine whether each should be assumed or rejected.  Montes Decl., ¶ 4.  To this end, the City has negotiated (and continues to negotiate) with SIS in good faith regarding the terms of the License Agreement.  *Id*.

The City invited SIS to participate in the pre-petition mediation process required by California Government Code § 53760 *et seq.* (commonly referred to as the "AB 506 Process"), which ran from March 27, 2012 through June 25, 2012, and included a proposed treatment of the License Agreement in the 790-page "Ask" (Dkt. No. 454, at pp. 49, 56) that the City prepared for that mediation.  Montes Decl., ¶ 4.  SIS, however, declined to participate in the AB 506 Process.  *Id.*  Because SIS did not participate in the AB 506 Process, the City's negotiations with SIS did not begin until September 2012.  *Id.*

Despite continuing negotiations, the City has not been able to reach agreement with SIS.  Throughout these negotiations, the City has endeavored to understand SIS's business structure.

---

[1] The City filed the Plan For The Adjustment Of Debts Of City Of Stockton, California [Dkt. No. 1133] (the "Plan") on October 10, 2013.  The City continues to negotiate with its creditors, and any agreements reached as a result of those negotiations will be included in subsequent, amended versions of the Plan.

1  Montes Decl., ¶ 5. The City believes that in order to evaluate the License Agreement properly, it
2  needs certain basic financial information regarding the performance of the Ports and their use of
3  the Stadium to determine what concessions or modifications are reasonable given the City's
4  current financial condition and the ongoing Stadium operation and capital deficits. *Id.* The City
5  needs this information to decide how to treat the License Agreement in any amended plan of
6  adjustment, and to assess the long-term financial and operating viability of the Ports should the
7  License Agreement be amended. *Id.* The City has made multiple informal requests to SIS for
8  this information, including an informal written request that the City sent to Pat Filippone,
9  authorized agent for service of process for SIS, on August 1, 2013. Montes Decl., ¶ 6.

10       The requested information is necessary not only to allow the City to make an informed
11 evaluation of the License Agreement, but also to advance the City's negotiations with SIS.
12 Montes Decl., ¶ 7. Notably, the City recently renegotiated its license agreement with SC Hockey
13 Franchise Group ("SC Hockey"), which owns the City's minor-league hockey team, the Stockton
14 Thunder ("Thunder"), relating to the Thunder's use of the Arena. *Id.* During negotiations, SC
15 Hockey allowed the City access to financial information analogous to the information the City
16 seeks from SIS. *Id.* That information allowed the City to perform an accurate evaluation of how
17 to treat its license agreement with SC Hockey. *Id.* As a result, the City and SC Hockey were able
18 to enter into a modified license agreement that the City will assume in the Plan. *Id.* The
19 modifications include, among other things, a reduction in the City's subsidy to SC Hockey. *Id.*

20 **C.     The City's Subpoena.**
21       In light of SIS's continued denial of the City's requests for basic financial documents, the
22 City filed an Application For Order Under Federal Rule Of Bankruptcy Procedure 2004
23 Authorizing Examination Of 7th Inning Stretch, LLC ("Rule 2004 Application", Dkt. No. 1100)
24 on August 30, 2013, seeking the Court's authorization to subpoena relevant documents from SIS
25 pursuant to Federal Rule of Bankruptcy Procedure 2004 (hereinafter "Rule 2004"). The Court
26 issued an order granting the Rule 2004 Application (the "Rule 2004 Order") on September 12
27 (Dkt. No. 1106), and on September 13, the City served its Subpoena For Rule 2004 Examination
28 ("Subpoena") on SIS. *See* City's Notice Of Service Of Subpoena For Rule 2004 Examination On

7th Inning Stretch [Dkt. No. 1107] ("Rule 2004 Notice"). A true and correct copy of the Subpoena is attached as Exhibit 1 to the Declaration Of Marc A. Levinson In Support Of City's Motion To Compel Production Of Documents By Seventh Inning Stretch, LLC Pursuant To Rule 2004 Subpoena ("Levinson Decl."). The deadline for the production of documents requested by the Subpoena was October 14, 2013.

Shortly after serving the Subpoena on SIS, Marc Levinson ("Levinson"), lead bankruptcy counsel for the City, spoke by phone with counsel for SIS, Philip Rhodes ("Rhodes"), on September 17, 2013. Levinson Decl., ¶ 2. During that call, Levinson explained that the City needed the requested information in order to accurately evaluate the best treatment of SIS under a plan of adjustment, whether to assume or reject the License Agreement, and to avoid continuing a sizeable subsidy to an entity that might already be making a substantial profit. *Id.*

D. **SIS Files Late Objections And Fails To Produce The Subpoenaed Documents.**

On October 8, 2013, nearly four weeks after SIS was served with the Subpoena, SIS served a set of Objections To Subpoena For Rule 2004 Examination ("Objections") on counsel for the City. Declaration Of Patrick B. Bocash In Support Of City's Motion To Compel Production Of Documents By Seventh Inning Stretch, LLC Pursuant To Rule 2004 Subpoena ("Bocash Decl."), ¶ 2, Ex. 1; Levinson Decl., ¶ 3. The City received the Objections 11 days after the deadline for objections to the Subpoena had passed. *See* Fed. R. Civ. P. 45(c)(2)(B). On October 11, Levinson left a voicemail for Rhodes advising him that SIS's Objections were untimely and that SIS was therefore not excused from producing the requested documents by October 14. Levinson Decl., ¶ 3. Levinson's voicemail also requested that Rhodes contact him. *Id.* On the afternoon of October 14, Levinson left a second voicemail for Rhodes, stating that the City had not received any documents from SIS and informing Rhodes that the City would be required to file a motion to compel if SIS was not going to comply with the Subpoena. Levinson Decl., ¶ 4. Levinson also again asked Rhodes to contact him in order to discuss a potential resolution. *Id.* Shortly after leaving the second voicemail, Levinson sent Rhodes an email restating the City's position that SIS's Objections were late and that SIS was therefore required to produce the requested documents that day (October 14). Levinson Decl., ¶ 5. The email also

1  repeated that, while it would prefer not to do so, the City would be forced to pursue a motion to
2  compel if the documents were not produced. *Id.*

3  On October 15, one day after SIS's production was due, Rhodes responded to Levinson's
4  email of October 14. Levinson Decl., ¶ 6. The response asked for additional clarification
5  regarding the City's document request, and asked the City to review a case from the Bankruptcy
6  Court for the Western District of Pennsylvania.[2] *Id.* The response gave no indication that SIS
7  was prepared to comply with the Subpoena. *Id.* Patrick Bocash ("Bocash"), an attorney for the
8  City, called Rhodes on the afternoon of October 15 to discuss Rhodes' response email. Bocash
9  Decl., ¶ 3. During the call, Bocash reiterated the City's position that it required the documents
10 requested in the Subpoena in order to make an informed decision regarding how to treat SIS in a
11 plan of adjustment, and to ensure the City would not be providing a disproportionate subsidy. *Id.*
12 At the end of the call, Bocash advised Rhodes that because the deadline for production of the
13 documents had passed, the City would be forced to move forward with a motion to compel if SIS
14 was not going to produce the documents within the next two days (by October 17). *Id.* Rhodes
15 informed Bocash that he would speak to his client. *Id.*

16 On October 17, 2013, Rhodes emailed Levinson and plainly stated that SIS would not be
17 producing "any records under the subpoena." Levinson Decl., ¶ 8. The City then prepared this
18 Motion.

### III.

### DISCUSSION

21 **A.   SIS's Objections To The City's Subpoena Are Untimely And Are Therefore Waived.**

22 Federal Rule of Civil Procedure 45, which is made applicable to cases under chapter 9 by
23 Bankruptcy Rule 9016, allows a person commanded by subpoena to produce documents or
24 tangible things to serve written objections on the party serving the subpoena. Fed. R. Civ. P.
25 45(c)(2)(B). Such objections "*must be served* before the earlier of the time specified for
26 compliance or 14 days after the subpoena is served." *Id.* (emphasis added). While a *timely*
27 objection excuses compliance with a subpoena, Fed. R. Civ. P. 45(c)(2)(B)(ii), late objections

---

[2] *In re Continental Forge*, 73 B.R. 1005 (Bankr. W.D. Pa.).

have no such effect. Rather, "[t]he failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections." *Huene v. U.S. Dep't of Treasury,* 2013 WL 417747, at *5 (E.D. Cal. Jan. 31, 2013) (quoting *McCoy v. Southwest Airlines, Co.,* 211 F.R.D. 381, 385 (C.D.Cal.2002)).

While waiver is the general rule, courts have recognized limited exceptions in "unusual circumstances" where the "subpoena is overbroad *on its face* and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith." *See, e.g., Moon v. SCP Pool, Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (emphasis added). This exception applies only to cases where the subpoena at issue is plainly *facially* overbroad. For instance, the *Moon* court considered untimely objections where a subpoena requested information for a 10-year period of time, when the relevant agreement covered only three years. *Id.* at 637. In *In re Motorsports Merchandise Antitrust Litigation*, a subpoena was found overly broad where it requested *all* of the subpoenaed parties' financial records for the previous eight years in a suit relating only to the alleged price fixing of certain souvenirs. 186 F.R.D 344, 346, 349 (W.D. Va. 1999). By contrast, the City has requested only financial documents related to the Ports and their use of the Stadium, and only for a recent time period during which the License Agreement was in effect. The City has not requested any financial information from SIS that does not directly pertain to the License Agreement.

Courts have also recognized an exception to the waiver rule where the producing party has shown substantial compliance with the subpoena but disputes certain requests. For instance, one magistrate judge concluded that untimely objections were not waived where the subpoenaed party already had made "extensive production of documents" and had "ongoing communication" with the requesting party regarding the remaining contested materials. *Amer. Elec. Power Co. v. U.S.*, 191 F.R.D. 132, 137 (S.D. Ohio 1999). SIS, on the other hand, has refused to produce *any* of the documents requested by the Subpoena.

The City served the Subpoena on SIS on September 13, 2013. *See* Rule 2004 Notice. Any objection to the Subpoena was therefore required to be served on the City by September 27. However, SIS did not serve its Objections on the City until October 8, fully 11 days after the

MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY SEVENTH INNING STRETCH, LLC PURSUANT TO RULE 2004 SUBPOENA

deadline. Furthermore, the City expressly notified counsel for SIS that the Objections were untimely and that production would still be required on October 14, but did not receive a response to its communications until after the deadline had passed. SIS's Objections are therefore untimely, and have been waived.

Moreover, this is not an "unusual circumstance" calling for an exception to the normal rules for objecting to a subpoena, because the City's Subpoena is not overbroad (and certainly is not *facially* overbroad). To the contrary, the Subpoena requests specific financial documents from the relevant time period and limits its inquiry to a search for information that will help it make an informed decision in its formulation of a plan of adjustment. Moreover, SIS has shown no willingness to work with the City to produce any of the documents at issue.

Exceptions to the waiver of untimely objections are limited to those cases in which a subpoena is clearly excessive. Objecting parties cannot get around the deadlines imposed by the Federal Rules of Civil Procedure simply by claiming any overbreadth. The Subpoena is tailored to result in the production only of documents that the City believes will contain financial information necessary to the administration of its estate, and SIS cannot claim an exception to the deadline set by Fed. R. Civ. P. 45(c)(2)(B). The Objections are therefore untimely and waived. As a result, SIS can offer no defense to its failure to comply with the subpoena, and the Court should compel production of the requested documents.

**B.     The City's Subpoena Requests Are Within The Scope Of A Rule 2004 Examination And Are Not Overbroad.**

The scope of a Rule 2004 examination is, by necessity, expansive. Bankruptcy Rule 2004 allows for the examination of any entity with respect "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to *any matter* which may affect the administration of the debtor's estate . . . .". Fed. R. Bankr. Proc. 2004(b) (emphasis added). In fact, the range of permissible subject matter for a 2004 examination is "unfettered and broad," and is expected to be something of a "fishing expedition." *In re Dinubilo*, 177 B.R. 932 (E.D. Cal. 1993); *In re Subpoena Duces Tecum & Ad Testificandum Pursuant to Fed. R. Bankr. P. 2004*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011). Examinations under Rule 2004 are thus less

restricted than those made under the Federal Rules of Civil Procedure made applicable to discovery under Bankruptcy Rule 9014.  *Id.*

Information regarding the financial performance of the Ports and the Stadium under the License Agreement is directly relevant to the administration of the City's bankruptcy. Specifically, such information is necessary to aid the City's evaluation of how to treat the License Agreement and any other obligations pertaining to the Ports and the Stadium in a plan of adjustment.  The documents requested by the Subpoena therefore fall squarely within the scope of subject matter contemplated by Rule 2004.  The Subpoena is specifically tailored to request only documents that the City has reason to believe will assist its evaluation of the License Agreement and its determination as to the treatment of the License Agreement in a plan of adjustment.

**C.     The City Is Entitled To The Requested Information.**

In order to accurately evaluate the License Agreement, the City requires basic financial information from SIS.  The City needs this information to determine how to treat the License Agreement in a plan of adjustment and to determine what terms would be reasonable for a modified agreement considering the City's current financial condition.  Montes Decl., ¶ 5. Moreover, this information will help the City to assess the long-term financial and operating viability of the Ports under an amended agreement.  *Id.*  In addition to being able to make an informed decision regarding the License Agreement, the City will also ensure that it is not put in the position of continuing a sizeable subsidy to an entity that may not require it.  Such information is plainly within the intended scope of Rule 2004, as it will assist the City in the administration of its bankruptcy estate.

The City made multiple informal requests to SIS to provide this information and has explained, on several occasions, the reasons for its request.  Unfortunately, SIS has opted to stonewall the City.  It was only after SIS made clear that it would not produce these documents informally that the City decided to pursue formal discovery.  Montes Decl., ¶ 6.  The City submitted a Rule 2004 Application to the Court that specified exactly what documents it would seek from SIS.  After the Court approved the Rule 2004 Application, the City served the Subpoena on SIS.  The Subpoena was narrowly tailored, and sought only recent financial

1   documents related to the Ports and performance under the License Agreement. SIS then had 30
2   days to respond to the Subpoena. Instead, SIS filed Objections nearly two weeks late and, despite
3   being informed that its Objections were untimely, failed to contact the City until the deadline for
4   production had passed. When SIS did contact the City, it flatly stated that no documents would
5   be forthcoming.

6   Through its ongoing negotiations, the City has reached agreements with a number of its
7   major creditors, including the Thunder, which provided information to the City analogous to that
8   which the City has requested from SIS regarding the Ports. The City hopes that it will be able to
9   reach an agreement with SIS as well, and believes that the requested information will advance the
10  negotiations between the parties. Even if no bargain can be struck, however, the City needs this
11  information in order assess how it should treat the License Agreement in its plan of adjustment,
12  including whether it should assume, reject, or modify the License Agreement.

### D.     Request For Costs.

As a result of the delays described above, and SIS's refusal to comply with the Subpoena, the City has been forced to bring this Motion. In addition to several months of informal requests, SIS had 30 days to fulfill its obligations under the Subpoena. Levinson Decl., ¶ 9. Instead, SIS served untimely Objections on the City, and then failed to respond to the City's communications until the time for production had passed. *Id.* As of the date of the Motion, SIS has still not complied with the Subpoena, despite the City's repeated insistence that SIS is required to produce the documents. *Id.* This has caused the City to incur costs that would otherwise have been unnecessary. Levinson Decl., ¶ 10. These costs include attorneys fees for the drafting, service, and argument of the Motion, as well as costs related to involving the City Attorney's Office and other City personnel in the preparation of supporting declarations. *Id.* While the City has not calculated the exact amount of these costs, they are likely in excess of $5,000. *Id.* For the sake of expediency, the City is therefore limiting its request for costs, should it prevail on the Motion, to $5000.[3] *Id.*

---

[3] If the Court desires a more precise calculation of the costs incurred by the City due to the necessity of bringing this Motion, the City will provide one.

## IV.

## **PRAYER**

For the foregoing reasons, the City requests that the Court issue an Order: (1) compelling SIS to produce all documents requested by the Subpoena by no later than October 31, 2013, or such other time as the Court deems appropriate; (2) awarding costs to the City and against SIS; and (3) providing such other relief as the Court may deem proper.

Dated: October 18, 2013

MARC A. LEVINSON
NORMAN C. HILE
PATRICK B. BOCASH
Orrick, Herrington & Sutcliffe LLP


By: ____*/s/ Marc A. Levinson*____
MARC A. LEVINSON
Attorneys for Debtor
City of Stockton