**13**

William W. Kannel (*admitted pro hac vice*)
Michael Gardener (*admitted pro hac vice*)
Adrienne K. Walker (*admitted pro hac vice*)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
One Financial Center
Boston, MA 02111
Tel:   617-542-6000
Fax:   617-542-2241
wkannel@mintz.com
mgardener@mintz.com
akwalker@mintz.com

Jeffry A. Davis (SBN 103299)
Abigail O'Brient (SBN 265704)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Tel:   415-432-6000
Fax:   415-432-6001
jdavis@mintz.com
avobrient@mintz.com

*Attorneys for*
*Wells Fargo Bank, National Association, as Indenture Trustee*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Case No. 12-32118 (CMK) |
| CITY OF STOCKTON, CALIFORNIA, | D.C. No. OHS-11 |
| Debtor. | Chapter 9 |
| | **OBJECTION OF WELLS FARGO BANK, N. A., AS INDENTURE TRUSTEE TO MOTION FOR AN ORDER APPROVING DISCLOSURE STATEMENT WITH RESPECT TO PLAN FOR THE ADJUSTMENT OF DEBTS OF CITY OF STOCKTON, CALIFORNIA, DATED OCTOBER 10, 2013, AND SETTING CONFIRMATION PROCEDURES** |
| | **Date:   November 18, 2013**<br>**Time:   1:00 p.m.**<br>**Judge:  Hon. Christopher M. Klein** |

**Table of Contents**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

ARGUMENTS .................................................................................................................. 3

      i.      Uncertainties Regarding Who Will Vote Classes 2, 3, 4, 5 and 6 Claims ................. 4

      ii.     Failure to Adequately Disclose Nature of "Special Fund Payments" ........................ 4

      iii.    Failure to Quantify Impact of Settlements ................................................................ 5

      iv.    Failure to Include Definitive Settlement Document Relating to the NPFG
             Settlement and Assured Guaranty Settlement ............................................................ 6

      v.     Miscellaneous Changes Required to the Disclosure Statement ............................... 6

CONCLUSION .................................................................................................................. 6

SCHEDULE 1 .................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

Duff v. United States Trustee (In re California Fidelity, Inc.),
    198 B.R. 567, 571 (9th Cir. BAP 1996)................................................................................5

In re Applegate Prop., Ltd.,
    133 B.R. 827, 831 (W.D. Tex. 1991)..................................................................................5

In re Brotby,
    303 B.R. 177, 193 (B.A.P. 9th Cir. 2003) ...........................................................................4

In re Diversified Investors Fund XVII,
    91 B.R. 559, 561 (Bankr. C.D. Cal. 1988)..........................................................................4

In re MacGibbon,
    BAP WW-05-1422-PANK, 2006 WL 6810935 (B.A.P. 9th Cir. Aug. 14, 2006).....................4

In re Pierce Cnty. Hous. Auth.,
    414 B.R. 702, 715 (Bankr. W.D. Wash. 2009) ...................................................................4

STATUTES

11 U.S.C. § 901....................................................................................................................................4

11 U.S.C. § 1125 ........................................................................................................................4, 5, 7

NOW COMES, Wells Fargo Bank, National Association in its role as indenture trustee[1] (the "Indenture Trustee") and submits this objection (the "Objection") to the *Motion for an Order Approving Disclosure Statement with Respect to the Plan for the Adjustment Debts of City of Stockton, California, Dated October 10, 2013 and Setting Confirmation Procedures; Memorandum in Support Thereof* (the "Solicitation Motion") with respect to the *Disclosure Statement with Respect to Plan for the Adjustment of Debts of City of Stockton, California (October 10, 2013)* (the "Disclosure Statement").[2] The Indenture Trustee objects to the Disclosure Statement on the basis it fails to provide adequate and necessary information concerning the treatment of certain bonds and certificates under the proposed *Plan for the Adjustment of Debts of City of Stockton, California, October 10, 2013* (the "Plan").

Further, in light of the City's statement that it anticipates amending its Disclosure Statement and Plan in the future to provide for, among other things, definitive settlement documents with respect to the NPFG Settlement and the Assured Guaranty Settlement, the Indenture Trustee reserves all rights to supplement this Objection and raise additional objections to the Disclosure Statement at or prior to any hearing on the Disclosure Statement. In addition, all rights, claims and objections of the Indenture Trustee with respect to the Plan are expressly reserved.[3]

## INTRODUCTION

The Indenture Trustee submits this Objection to raise specific and limited objections to the Disclosure Statement. Upon information and belief, while the City has agreed to make numerous changes requested by the Indenture Trustee, the Solicitation Motion and Disclosure Statement remains deficient for, among other reasons, the following:

- The Solicitation Motion and Disclosure Statement fail to specify who will, and why such entities are entitled to, vote Classes 2, 3, 4, 5 and 6 Claims.

---

[1] Wells Fargo Bank, National Association serves as Indenture Trustee or fiscal agent and files this Objection solely with respect to the securities identified on Schedule 1 hereto.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement.
[3] For example, and without limitation, it is the Indenture Trustee's understanding that the City has agreed to supply customary and usual exculpation language with respect to the Indenture Trustee, Ambac, Assured Guaranty and NPFG. As of the date hereof, the form of such language has not yet been agreed to by the Indenture Trustee, Ambac, Assured Guaranty, NPFG and the City.

1

- The Disclosure Statement fails to adequately disclose and explain key provisions of the Assured Guaranty Settlement, including with respect to the nature of Special Fund Payments.

- The Disclosure Statement fails to specify the difference in amount of payments to be made by the City with respect to Classes 2, 3, 4, 5 and 6, and the amounts that will therefore be paid to holders of the respective bonds and certificates associated with Classes 2, 3, 4, 5 and 6 from the respective insurance policies securing those bonds and certificates.

- The Disclosure Statement fails to include the definitive settlement documentation relating to the NPFG Settlement and Assured Guaranty Settlement.

The City and Indenture Trustee continue to discuss modifications to the Disclosure Statement and the Plan that, if acceptable to the Indenture Trustee, would resolve many of the issues identified herein and obviate the necessity of a contested hearing on the Solicitation Motion and Disclosure Statement or any continued hearing thereon. In addition, the City acknowledges in its Solicitation Motion and Disclosure Statement that several factors may impact the City's ability to consummate the Plan and that the City is likely to file an amended Disclosure Statement and Plan before the Hearing (defined herein) but after the Objection Deadline (defined herein).  Accordingly, this Objection identifies the current issues in dispute between the parties and reserves all rights to raise different and additional issues at or prior to any hearing on the Disclosure Statement.

In addition, resolution of the Indenture Trustee's concerns with respect to the adequacy of the Disclosure Statement however, is not an endorsement of each of the terms and conditions of the Plan – the Indenture Trustee will independently evaluate the merits of the Plan within the context of the Plan confirmation process and the Indenture Trustee reserves all rights to raise any objection to confirmation of the Plan.  All rights, claims and objections of the Indenture Trustee with respect to the Plan are expressly reserved.

**Background**

1. On June 28, 2012 (the "Petition Date"), the City filed its voluntary petition for relief under Chapter 9 the Bankruptcy Code.  On April 1, 2013, the Bankruptcy Court entered an order for relief in the Chapter 9 Case.

2. On October 10, 2013, the City filed the Disclosure Statement and the Plan. Contemporaneous with filing the Disclosure Statement the City filed its Solicitation Motion. This Court scheduled a hearing on November 18, 2013 to consider the Solicitation Motion and approval of the Disclosure Statement (the "Hearing"). In addition, this Court established November 7, 2013 as the deadline to file objections to the Solicitation Motion and the Disclosure Statement (the "Objection Deadline").[4]

3. Under the proposed Plan, the City intends to, among other things, consummate a series of settlement agreements with various parties in interest, including the NPFG Settlement and the Assured Guaranty Settlement.

**Arguments**

4. The Solicitation Motion should not be allowed at this time because the Disclosure Statement currently fails to provide the necessary disclosures to enable stakeholders to make an informed decision regarding the merits of the City's Plan. Section 1125 of the Bankruptcy Code states that a plan proponent must provide holders of impaired claims with "adequate information" so that "a hypothetical investor" can make an informed decision on whether they should support a proposed plan.[5] "The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan." In re Diversified Investors Fund XVII, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988), citing In re Monnier Bros., 755 F.2d 1336, 1342 (8th Cir. 1985). The determination of what constitutes adequate information is subjective and made on a case-by-case basis. In re MacGibbon, BAP WW-05-1422-PANK, 2006 WL 6810935 (B.A.P. 9th Cir. Aug. 14, 2006); see also In re Brotby, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003).

5. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the

---

[4] The City agreed to extend the Indenture Trustee's deadline to respond to the Solicitation Motion to November 8, 2013.

[5] Section 1125 of the Bankruptcy Code is applicable in chapter 9 cases. See 11 U.S.C. § 901(a). See generally, In re Pierce Cnty. Hous. Auth., 414 B.R. 702, 715 (Bankr. W.D. Wash. 2009) (requirement that a disclosure statement contain adequate information in a chapter 9 case, made applicable by Bankruptcy Code section 901).

> debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1). In determining whether a plan proponent has provided "adequate information" to creditors and parties in interest, the standard is not whether the failure to disclose information would harm creditors but whether "hypothetical reasonable investors receive such information as will enable them to evaluate for themselves what impact the information might have on their claims and the outcome of the case, and to decide for themselves what course of action to take." In re Applegate Prop., Ltd., 133 B.R. 827, 831 (W.D. Tex. 1991); see also Duff v. United States Trustee (In re California Fidelity, Inc.), 198 B.R. 567, 571 (9th Cir. BAP 1996) (the purpose of the disclosure statement is "to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan").

        ***i.     Uncertainties Regarding who will Vote Classes 2, 3, 4, 5 and 6 Claims***.

        6.     The Solicitation Motion states that the City will serve the Solicitation Package, including ballots, to those entitled to vote on the Plan. However, it is not clear from the Solicitation Motion or the Disclosure Statement who will, and why such entity is so authorized to, vote Classes 2, 3, 4, 5 and 6 Claims. Although the Plan includes certain references to voting, more disclosure is needed in the Disclosure Statement with respect to each class of claims and why such entities are authorized to vote. Without a clear and definitive statement in the Disclosure Statement with respect to who may vote under the Plan, the Disclosure Statement is not adequate.

        ***ii.     Failure to Adequately Disclose Nature of "Special Fund Payments".***

        7.     One of the provisions in the Assured Guaranty Settlement is a stream of fixed payments defined as "Special Funds Payments" that will be used under the Plan to fund a portion of the payments on the Pension Obligation Bonds. The term "Special Fund Payments" is ambiguous and not yet clearly defined in the Assured Guaranty Settlement. The Indenture Trustee has been informed that those Special Fund Payments are made from certain restricted revenues transferred to the General Fund that are used "to pay costs which are incurred by the General Fund to provide the facility or enterprise related services and which are allocated to the enterprises on a

reasonable basis in accordance with the City's accounting and allocation policies." *See* Plan, Article IV(K) (describing treatment of Class 10 – Claims of Holders of Restricted Revenue Bond and Note Payable Obligations). The Indenture Trustee raised this concern with the City, given the Plan's clear intent that holders of Class 10 Claims are unimpaired. *See* Plan, Article IV(K). Through conversations with counsel to the City, the Indenture Trustee understands that the City has historically allocated a portion of its restricted revenues associated with the City's various systems and enterprises to the City's General Fund to pay enterprise-related services. The Indenture Trustee further understands from conversations with the City's counsel that the methodology historically applied by the City will be modified for the upcoming fiscal year and for all years while the Pension Obligation Bonds remain outstanding, which will result in the fixed payment allocations to the General Fund and enable the City to make the fixed stream of payments defined as Special Fund Payments under the Assured Guaranty Settlement.

8. Although the City correctly makes clear under the Disclosure Statement that the Plan <u>will not</u> impair Class 10 Claims, the City must make further disclosure regarding the source and use of Special Fund Payments, as well as the methodology to calculate them. The Indenture Trustee has requested further disclosure by the City as to why the transfer of any restricted revenues to the General Fund, which are the source of funds for the "Special Fund Payment," are made in accordance with any respective financing documents and do not impair holders of Class 10 claims.

   *iii.* ***Failure to Quantify Impact of Settlements.***

9. The Disclosure Statement fails to specify the difference in amount of reduction in payments to be made by the City with respect to Classes 2, 3, 4, 5 and 6 (collectively, the "<u>City Payments</u>"), and the amounts that will continue to be paid to holders of the respective certificates and bonds associated with Classes 2, 3, 4, 5 and 6 (collectively, the <u>Bond Payments</u>") solely from the respective bond insurers.[6]

---

[6] The City is capable of, and has made these disclosures previously. For example, with respect to the Ambac Settlement Agreement, the Ambac Settlement Agreement Motion stated that the City's obligations to make payment with respect to the underlying Fire/Police/Library Lease Back from the City's General Fund would be reduced by 19.5% beginning in fiscal year 2015.

5

    *iv.*    ***Failure to Include Definitive Settlement Document Relating to the NPFG Settlement and Assured Guaranty Settlement.***

10.    The Disclosure Statement fails to include the definitive settlement documents relating to the NPFG Settlement and Assured Guaranty Settlement. At present, the NPFG Settlement Term Sheet and the Assured Guaranty Settlement are not binding on any party. Both term sheets expressly provide that each are non-binding, subject to final documentation and that the definitive documentation may contain additional or substantially different terms from the agreements outlined in the term sheets. Further, the NPFG Settlement Term Sheet suggests that definitive documentation may not be completed until after the Hearing on the Disclosure Statement. It is not possible for stakeholders to vote on a Plan until the City discloses the material terms and conditions of the NPFG Settlement and Assured Guaranty Settlement in definitive documents filed in connection with an amended Plan and Disclosure Statement. Further, to the extent the definitive settlement documentation differs from the term sheets attached to the Plan, the Indenture Trustee reserves the right to raise objections with respect to such definitive settlement documents.

    *v.*    ***Miscellaneous Changes Required to the Disclosure Statement.***

11.    In addition to the foregoing disclosure issues, the Indenture Trustee identified several additional proposed changes to the Disclosure Statement that were circulated to the City. Counsel for the City represented that most of these additional changes were acceptable to the City and identified each of the proposed changes that will be incorporated into an anticipated amended Disclosure Statement. The Indenture Trustee reserves all rights to make further objection to any amended Disclosure Statement, including to the extent any of the comments represented to be acceptable to the City are not incorporated within the amended Disclosure Statement.

## Conclusion

12.    The Solicitation Motion must be denied. Based upon the foregoing, the current form of Disclosure Statement fails to provide the necessary disclosures that would enable stakeholders to make an informed judgment about the Plan as required by section 1125(a)(1) of the Bankruptcy Code.

**WHEREFORE**, the Indenture Trustee respectfully requests that the Court enter an order (a) denying the Solicitation Motion, (b) requiring the City to amend its Disclosure Statement as requested herein, and (c) granting the Indenture Trustee such other and further relief as is just and proper.

Dated:  November 8, 2013

/s/ William W. Kannel
William W. Kannel (*admitted pro hac vice*)
Michael Gardener (*admitted pro hac vice*)
Adrienne K. Walker (*admitted pro hac vice*)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C**.

and

Jeffry A. Davis
Abigail V. O'Brient
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C**.
Attorneys for Wells Fargo Bank, National Association, as Indenture Trustee

# SCHEDULE 1

1. City of Stockton Revenue Certificates of Participation 1998 Series A (Wastewater System Project)

2. Stockton Public Financing Authority Reassessment Revenue Bonds (Arch Road and Stockton Business Park Assessment Districts) Series 1998, including claims related to those certain:

    a. Stockton Airport Business Park Ltd. Obligation Refunding Improvement Bonds Project 84-1 Phase IV, Series 229 (Local Obligation Bonds)

    b. Stockton Airport Business Park Ltd. Obligation Refunding Improvement Bonds Project 84-1 Phase V, Series 230 (Local Obligation Bonds)

    c. Stockton Airport Business Park Ltd. Obligation Refunding Improvement Bonds Project 84-1 Phase I, Series 231 (Local Obligation Bonds)

3. City of Stockton Certificates of Participation (Redevelopment Housing Projects) Series 2003A and Taxable Series 2003B

4. City of Stockton Camera Estates Community Facilities District No. 2003-1 Special Tax Bonds, Series 2003

5. City of Stockton Certificates of Participation 2003 Series A (Wastewater System Project)

6. City of Stockton Limited Obligation Improvement Bonds March Lane/Holman Assessment District 2003-1

7. City of Stockton Limited Obligation Improvement Bonds Mosher Assessment District 2003-02

8. City of Stockton Limited Obligation Improvement Bonds Waterford Estates East Phase II Assessment District 2003-03

9. Stockton Public Financing Authority Refunding Revenue Bonds (West Eighth Street Reassessment District)

10. Redevelopment Agency of the City of Stockton Revenue Bonds, Series 2004 (Stockton Events Center –Arena Project)

11. Stockton Public Financing Authority Lease Revenue Bonds, Series 2004 (Parking and Capital Projects)

12. Stockton Public Financing Authority 2005 Water Revenue Bonds, Series A (Water System Capital Improvement Project)

13. City of Stockton South Stockton Community Facilities District No. 90-1 2005 Special Tax Refunding Bonds

14. Stockton Public Financing Authority Refunding Revenue Bonds (2005 Assessment Districts Refinancing) Series A Senior Lien Bonds and Series B Subordinate Lien Bonds, including claims related to those certain:

    a. City of Stockton Limited Obligation Refunding Bond Blossom Ranch Assessment District No. 93-1 (Reassessment and Refunding of 2005)

    b. City of Stockton Limited Obligation Refunding Bond La Morada Assessment District No. 96-4 (Reassessment and Refunding of 2005)

    c. City of Stockton Limited Obligation Refunding Bond Morada North Assessment District No. 2002-01 (Reassessment and Refunding of 2005)

    d. City of Stockton Limited Obligation Refunding Bond Morada Ranch Assessment District No. 2000-01 (Reassessment and Refunding of 2005)

    e. City of Stockton Limited Obligation Refunding Bond Waterford Estates East Assessment District No. 2002-03 (Reassessment and Refunding of 2005)

15. City of Stockton Community Facilities District No. 90-2 (Brookside Estates) 2005 Special Tax Refunding Bonds

16. Stockton Public Financing Authority Revenue Bonds (Redevelopment Projects) 2006 Series A, Taxable Revenue Bonds (Redevelopment Projects) 2006 Series B, and Taxable Revenue Bonds (Housing Projects) 2006 Series C

17. Stockton Public Financing Authority 2006 Lease Revenue Refunding Bonds, Series A

18. City of Stockton Community Facilities District No. 1 (Weston Ranch) Special Tax Refunding Bonds, Series 2006

19. City of Stockton Spanos Park West Community Facilities District No. 2001-1 Special Tax Refunding Bonds, Series 2006

20. City of Stockton Community Facilities District No. 2006-1 (Riverbend) Special Tax Bonds, Series 2006

21. City of Stockton Community Facilities District No. 2006-3 (Northbrook) Woodside Improvement Area 1 Special Tax Bonds, Series 2007

22. City of Stockton Arch Road East Community Facilities District No. 99-02 2007 Special Tax Bonds

23. Stockton Public Financing Authority Variable Rate Demand Lease Revenue Bonds, 2007 Series A and 2007 Series B (Taxable) (Building Acquisition Financing Project)

24. City of Stockton 2007 Taxable Pension Obligations Bonds, Series A and Series B

25. Stockton Public Financing Authority 2008 Refunding Revenue Bonds, including claims related to those certain:

    a. City of Stockton Limited Obligation Refunding Bonds, Reassessment District No. 91-1R (Local Obligation Bonds)

    b. Stockton Public Financing Authority Communities Facilities District No. 90-4 (Spanos Park) Special Tax Refunding Bonds (Local Obligation Bonds)

26. Stockton Public Financing Authority Water Revenue Bonds, Series 2009A (Tax Exempt) (Delta Water Supply Project) & Series 2009 B (Taxable Build America Bonds)

27. Stockton Public Financing Authority Variable Rate Demand Water Revenue Bonds, Series 2010A (Delta Water Supply Project)

28. $12,500,000 Financial Custodian Agreement for HUD Section 108 Loan Guarantee Assistance Program – 2005

29. $12,500,000 Financial Custodian Agreement for HUD Section 108 Loan Guarantee Assistance Program – 2006