**14**

James O. Johnston (SBN 167330)
Charlotte S. Wasserstein (SBN 279442)
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:   (213) 489-3939
Facsimile:   (213) 243-2539
Email: jjohnston@jonesday.com
        cswasserstein@jonesday.com

Joshua D. Morse (SBN 211050)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:   (415) 626-3939
Facsimile:   (415) 875-5700
Email: jmorse@jonesday.com

*Attorneys for Franklin High Yield Tax-Free Income Fund and Franklin California High Yield Municipal Fund*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>CITY OF STOCKTON, CALIFORNIA,<br><br>Debtor. | Case No. 12-32118 (CMK)<br><br>D.C. No. OHS-15<br><br>Chapter 9<br><br>Adv. Proceeding No. 13-02315-C |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, FRANKLIN HIGH YIELD TAX-FREE INCOME FUND, AND FRANKLIN CALIFORNIA HIGH YIELD MUNICIPAL FUND,<br><br>Plaintiffs.<br><br>v.<br><br>CITY OF STOCKTON, CALIFORNIA,<br><br>Defendant. | **MOTION OF FRANKLIN HIGH YIELD TAX-FREE INCOME FUND AND FRANKLIN CALIFORNIA HIGH YIELD MUNICIPAL FUND TO EXCLUDE PORTIONS OF TESTIMONY OF VAL TOPPENBERG**<br><br>Date:   May 12, 2014<br>Time:   9:30 a.m.<br>Dept:   C, Courtroom 35<br>Judge:  Hon. Christopher M. Klein |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................ 1

RELEVANT BACKGROUND ....................................................................................... 2

ARGUMENT .................................................................................................................... 4

    1.    Mr. Toppenberg Is Not An Expert. ............................................................ 5

    2.    Mr. Toppenberg's Testimony Is Not Reliable. .......................................... 6

        a.    Mr. Toppenberg's Opinion Regarding Swenson And Van Buskirk Is Severely Flawed ................................. 9

        b.    Mr. Toppenberg's Opinion Regarding Oak Park Is Severely Flawed ................................................................. 10

CONCLUSION ............................................................................................................... 11

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ............................................................4, 7

*Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995) ................................................7

*Dura Auto. Sys. of Ind., Inc.*, 285 F.3d 609 (7th Cir. 2002) ......................................................... 7-8, 10

*Gen. Elec. Co. v. Joiner,* 522 U.S. 136 (1997) ................................................................................4, 7

*In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005 (C.D. Cal. 2003) ......................7, 8

*In re James Wilson Assocs.*, 965 F.2d 160 (7th Cir. 1992) ................................................................7

*Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993 (9th Cir. 2001) ....................................................5

*Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802 (3d Cir. 1997) .......................................................7

*In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717 (3d Cir. 1994) ...........................................................7

*Shirley Carroll v. Otis Elevator Co.*, 896 F.2d 210 (7th Cir. 1990) ....................................................5

*United States v. Boyajian*, 2013 U.S. Dist. LEXIS 116492 (C.D. Cal. Aug. 14, 2013) .......................5

*United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) ...........................................................5

*Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999) .................................................................................5

**Statutes and Legislative History**

Fed. R. Civ. P. 26 .................................................................................................................................2

Fed. R. Evid. 701 ........................................................................................................................1, 2, 4

Fed. R. Evid. 702 .....................................................................................................................1, 2, 4, 7

1   Pursuant to the Scheduling Order[1] and Rules 701 and 702 of the Federal Rules of Evidence,
2   Franklin High Yield Tax-Free Income Fund and Franklin California High Yield Municipal Fund
3   (collectively, "Franklin") hereby move to exclude the portions of testimony of Val Toppenberg set
4   forth in the *Declaration Of Val Toppenberg In Support Of City's Supplemental Memorandum Of*
5   *Law In Support Of Confirmation Of First Amended Plan For The Adjustment Of Debts Of City Of*
6   *Stockton, California (November 15, 2013)* [Docket No. 1318] (the "Toppenberg Declaration") and
7   the *Direct Testimony Declaration Of Val Toppenberg In Support Of Confirmation Of First Amended*
8   *Plan For The Adjustment Of Debts Of City Of Stockton, California (November 15 2013)* [Docket
9   No. 1367 / Adv. Pro. Docket No. 62] (the "Toppenberg Direct Testimony") that relates to Mr.
10  Toppenberg's opinion that Franklin's collateral "has virtually no value."[2]  In support of this Motion,
11  Franklin states as follows:

### INTRODUCTION

Mr. Toppenberg serves as the City's "Economic Development Advisor," a position that the City appears to have created solely for the purpose of employing Mr. Toppenberg in March 2013. He is not an appraiser, a real estate broker or an attorney. Mr. Toppenberg has never been qualified or offered as an expert witness prior to his involvement in this case. At deposition, he confirmed that he lacks any "formal training in real estate appraisals or real estate valuation."[3]

---

[1] For purposes of these Objections, the term "Scheduling Order" means the *Order Governing The Disclosure And Use Of Discovery Information And Scheduling Dates Related To The Trial In The Adversary Proceeding And Any Evidentiary Hearing Regarding Confirmation Of Proposed Plan Of Adjustment* [Docket No. 1224 / Adv. Pro. Docket No. 16], as amended by the *Order Modifying Order Governing The Disclosure And Use Of Discovery Information And Scheduling Dates Related To The Trial In The Adversary Proceeding And Any Evidentiary Hearing Regarding Confirmation Of Proposed Plan Of Adjustment* [Docket No. 1242 / Adv. Pro. Docket No. 18]. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Scheduling Order, the *Complaint For Declaratory Relief* [Adv. Pro. Docket No. 1] (the "Complaint"), or the Pretrial Reply Brief Of Franklin High Yield Tax-Free Income Fund and Franklin California High Yield Municipal Fund [Adv. Pro. Docket No. 91], as applicable. Proposed trial exhibits are cited as "Ex. ___."

[2] Toppenberg Declaration ¶ 5; Toppenberg Direct Testimony ¶ 5.

[3] Transcript of first Deposition of Val Toppenberg ("Toppenberg I") 32:18-20 ("Q. Do you have any formal training in real estate appraisals or real estate valuation?  A. No."). Relevant passages from Toppenberg I are attached to the accompanying *Declaration Of Joshua D. Morse In Support Of Motion Of Franklin High Yield Tax-Free Income Fund and Franklin California High Yield Municipal Fund To Exclude Portions Of Testimony Of K. Dieker, V. Toppenberg, R. Smith and R. Leland, And Motions To Exclude Testimony Of M. Cera And T. Nelson* (the "Morse Decl."), as Exhibit I.

1    Nonetheless, the City identified Mr. Toppenberg as a "non-retained" expert who will provide

2 alleged expert testimony pursuant Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

3 Specifically, Mr. Toppenberg has opined that "a lease on Oak Park, Swenson Golf Course, and Van

4 Buskirk Golf Course has virtually no value."

5    This testimony is inadmissible under Rule 702 of the Federal Rules of Evidence because Mr.

6 Toppenberg is not qualified to testify as an expert and his opinions are not based on any reliable or

7 sound methodology. Similarly, notwithstanding its prior disclosures, should the City take the

8 position that the testimony is offered in Mr. Toppenberg's capacity as a percipient witness rather

9 than an expert, the testimony is unhelpful opinion testimony of a lay witness inadmissible under

10 Rule 701 of the Federal Rules of Evidence.

11    As contemplated by the Scheduling Order, Franklin will submit objections to the Toppenberg

12 Direct Testimony on or before April 25, 2014. The points raised in this Motion are in addition to the

13 other issues raised with respect to the Toppenberg Direct Testimony contained in such objections.

## RELEVANT BACKGROUND

16    When the City disclosed its initial slate of witnesses on January 31, 2014, it identified Mr.

17 Toppenberg as one of its "expert" witnesses, indicating that the City "expected [Mr. Toppenberg] to

18 address the valuation of City properties."[4] However, because Mr. Toppenberg was "not being

19 retained especially to provide expert testimony," the City took the position that Mr. Toppenberg

20 "will provide expert testimony under Federal Rule of Civil Procedure 26(a)(2)(C) and will not

21 prepare [a] written report[]."[5] On February 20, 2014, the City served Franklin with the *City Of*

22 *Stockton, California's Disclosure Of Non-Retained Expert Testimony Pursuant To Federal Rule Of*

23 *Civil Procedure 26(a)(2)(C)*,[6] which stated as follows:

24    Mr. Toppenberg may testify that a lease on Oak Park, Swenson Golf
   Course, and Van Buskirk Golf Course has virtually no value. Mr.

---

[4] See correspondence from P. Bocash, dated January 31, 2014, at 4, a copy of which is attached to the Morse Decl. as Exhibit B.

[5] *Id*.

[6] The City amended its Rule 26(a)(2)(C) disclosure on February 22, February 27, and March 18. A copy of the March 18 version of the Disclosure is attached to the Morse Decl. at Exhibit A.

1  |  Toppenberg's testimony on this issue will be based on his professional
2  |  experience in the property market, the historical performance of these
   |  properties, the yearly subsidies paid by the City to cover operational
3  |  deficits run by the courses, conversations Mr. Toppenberg has had with
   |  appraisers who have stated that the golf courses have no value, and past,
   |  current, and projected economic conditions in the City.[7]

4  On March 31, 2014, the City filed the Toppenberg Declaration. Thereafter, on

5  April 21, 2014, the City filed the Toppenberg Direct Testimony, which is materially identical to the

6  Toppenberg Declaration.

7  Having now conceded that Franklin is entitled to a secured claim to the extent of the value of

8  its collateral (the right to possess, use, and re-let the Property, either indefinitely or for a specified

9  period of time),[8] valuation is one of the central issues to be determined at Trial. The City's valuation

10  evidence is scant, at best. It decided long ago to forego having qualified appraisers complete

11  appraisals of the collateral. Instead, it relies on the uninformed opinion of its employee Mr.

12  Toppenberg (who has no valuation experience) and the "rebuttal opinion" of Raymond Smith (who

13  has no experience valuing golf courses or properties similar to the collateral)[9] to attempt to rebut

14  portions of the expert valuation opinion of Franklin's expert, Mr. Frederick Chin.

15  The City's basic thesis is that "it is difficult to imagine that any rational third party would be

16  willing to pay *anything* to take over the operation of" the Property because the City historically has

17  lost money operating the Property, the Property requires various capital improvements, and the

18  Property is subject to various zoning and other restrictions.[10] In support, the City relies on Mr.

19  Toppenberg, who opines that "the prospect of ever operating the three properties at a profit are

20  extremely remote and, as a result, a lease of Oak Park, Swenson Golf Course, and Van Buskirk Golf

21  Course would have virtually no value to a third party."[11]

---

[7] Rule 26(a)(2)(C) disclosure at 4.

[8] *Partial Judgment In Favor Of Plaintiffs* [Adv. Pro. Docket No. 56].

[9] Mr. Smith's opinion is the subject of a separate motion to exclude filed concurrently herewith.

[10] *City Of Stockton's Pre-Trial Opening Brief* [Adv. Pro. Docket No. 49] ("City Pre-Trial Br.") at 13 (emphasis in original).

[11] Toppenberg Declaration ¶ 5; Toppenberg Direct Testimony ¶ 5.

## ARGUMENT

Rule 702 of the Federal Rules of Evidence authorizes expert testimony that "will help the trier of fact to understand the evidence or to determine a fact in issue," but only if the testimony is "based on sufficient facts or data" and "is the product of reliable principles and methods," and only if "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 701 in turn prohibits a lay witness from providing opinion testimony unless it is "(a) rationally based on the witnesses's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

As "gatekeeper," the Court must ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Reliable expert testimony is grounded "in the methods and procedures of science," not "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. While the focus is on the expert's underlying methodology, "conclusions and methodology are not entirely distinct from one another," and "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In determining the admissibility of expert testimony, a court must undertake "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

Here, Mr. Toppenberg, the City's "Economic Development Advisor," blithely opines that "the prospect of ever operating the three properties at a profit are extremely remote and as a result, a lease of Oak Park, Swenson Golf Course, and Van Buskirk Golf Course would have virtually no value to a third party."[12] As shown below, Mr. Toppenberg is not qualified to render that or any other opinion relevant to resolution of this case. Moreover, his valuation opinion is not based on any reliable or sound methodology, but instead largely regurgitates the incomplete alleged oral opinions of other appraisers retained by the City in anticipation of this litigation.

---

[12] Toppenberg Declaration ¶ 15; Toppenberg Direct Testimony ¶ 15.

1.    **Mr. Toppenberg Is Not An Expert.**

In order for a witness to be qualified as an expert, consideration must be given to "whether the expert has appropriate qualifications—*i.e.*, some special knowledge, skill, experience, training or education on that subject matter." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). Accordingly, the first inquiry into the admissibility of proposed expert testimony is whether the proffered witness "truly qualifies as an expert" in the particular field that is the subject matter of the proposed testimony. *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Shirley Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). The mere fact that "an expert is qualified in a particular field or discipline does not automatically qualify that expert in related disciplines." *United States v. Boyajian*, No. CR-933(A) CAS, 2013 U.S. Dist. LEXIS 116492, at *39 (C.D. Cal. Aug. 14, 2013) (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

The City has not met and cannot meet its burden to show that Mr. Toppenberg is an expert qualified to render an opinion of value of Franklin's collateral. Indeed, during his deposition, Mr. Toppenberg himself essentially conceded that he is not qualified to testify as an expert regarding valuation issues. Mr. Toppenberg testified that he has never been offered, yet alone, qualified as an expert witness in any court.[13] Mr. Toppenberg confirmed that he has no specialized knowledge or training in how to perform an appraisal or otherwise value real property interests,[14] and he testified that he is not MAI certified[15] and has no certification of any kind that might qualify him to speak to valuation issues.

Indeed, during deposition it became readily apparent that Mr. Toppenberg does not have a grasp of basic valuation concepts. For example, when asked to define the term "market value," Mr. Toppenberg was unable to provide a coherent response. When pressed further, he admitted: "I'm

---

[13]   Toppenberg I 46:22-24.
[14]   *Id*. 32:18-20.
[15]   *Id*. 30:19-24.

1  not a broker, I'm not an appraiser, and I'm not an attorney.  I'm using [market value] in the most

2  generic sense of the terms."[16]  Mr. Toppenberg also was unaware of the fact that the discounted cash

3  flow method of valuation was referred to as "DCF," and admitted that he had never performed a

4  DCF analysis.[17]

5        A cursory review of the Toppenberg Declaration and the Toppenberg Direct Testimony

6  confirms that Mr. Toppenberg is not even competent to understand the opinions of Franklin's expert

7  on valuation (Frederick Chin), much less offer an "expert" opinion of his own.  For example, Mr.

8  Toppenberg appears to believe that Mr. Chin's report advanced an opinion regarding the value of the

9  collateral to the City.[18]  Mr. Chin did no such thing, as value to the City is irrelevant in the context of

10  determining the value of the Franklin's collateral and the amount of its secured claim.  Mr.

11  Toppenberg also criticizes Mr. Chin for relying exclusively on the cost approach, to the exclusion of

12  all other valuation methodologies.[19]  As explained in Franklin's briefs, Mr. Chin actually employed

13  the cost approach in just one component of his valuation (for the Van Buskirk community center)

14  while using the income and sales approaches in the other components of his appraisal.  Mr.

15  Toppenberg's failure to grasp Mr. Chin's basic methodology illustrates his utter lack of qualification

16  to provide helpful opinion testimony as to any issue in this case.

17        Ultimately, there is no basis whatsoever for the City's claim that Mr. Toppenberg is an

18  "expert" regarding valuation and appraisals.  Because Mr. Toppenberg is not qualified to render an

19  expert opinion, the testimony of Mr. Toppenberg in paragraphs 2 through 5 and 15 of the

20  Toppenberg Declaration and paragraphs 2 through 5 and 15 of the Toppenberg Direct Testimony is

21  inadmissible and should be excluded.

---

[16] *Id*. 55:12-14.

[17] *Id*. 63:22-64:15.

[18] Toppenberg Declaration ¶ 15 ("The appraisal submitted by Franklin displays a clear lack of understanding of how cities value their assets."); Toppenberg Direct Testimony ¶ 15 (same).

[19] Toppenberg Declaration ¶ 15 ("Because there are no comparable sales and no income to assess, the appraiser reverts to the cost approach."); Toppenberg Direct Testimony ¶ 15 (same).

### 2. Mr. Toppenberg's Testimony Is Not Reliable.

Even if Mr. Toppenberg was qualified to render an opinion, his testimony here nevertheless must be excluded because it is not reliable. Qualified experts may offer an opinion only where "based on sufficient facts or data" and resulting from the "product of reliable principles and methods" that have been "reliably applied . . . to the facts of the case." Fed. R. Evid. 702. Thus, before accepting expert testimony the Court "must ensure that any and all [such] testimony or evidence admitted is not only relevant, but reliable." *Daubert,* 509 U.S. at 589. Ultimately, "the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc,* 43 F.3d 1311, 1318 (9th Cir. 1995); *see, e.g.*, *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir. 1997) ("In order for the expert testimony to be 'reliable,' we have required that the testimony be based on the 'methods and procedures of science,' rather than on 'subjective belief or unsupported speculation.'") (quoting *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 744 (3d Cir. 1994)).

Accordingly, even where a witness is a qualified "expert," an opinion of the witness is inadmissible if it "is connected to existing data only by the *ipse dixit* of the expert," or where there is "simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec.,* 522 U.S. at 146; *accord* Fed. R. Evid. 702 advisory committee's note (2000 amendments) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'") (quoting *Daubert,* 43 F.3d at 1319).

Under this standard, an expert opinion is inadmissible if it is not based on appropriate "facts and data" but instead on the opinions of other expert witnesses prepared in anticipation of litigation. *See, e.g.*, *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003) (expert opinion inadmissible where opinion relied "upon excerpts from opinions developed by another expert for the purposes of litigation"); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) ("The case would be governed by our decision in *In re James Wilson Associates*, 965 F.2d 160, 172-73 (7th Cir. 1992), where the issue was the state of repair of a building and 'the expert who had evaluated that state – the consulting engineer – was the one who should have testified. The architect [the expert who did testify] could use what the engineer told him

to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him – of becoming in short the engineer's spokesman.'").

As explained in *Imperial*, such "mouthpiece" testimony is prohibited because it is entirely lacking in trustworthiness:

> [T]here is no circumstantial guarantee of trustworthiness here. Moore [the testifying expert] relies on excerpts from an opinion prepared entirely for litigation, not facts, data or opinions generated in the ordinary course of discharging a professional responsibility owed to SPFC. Unlike the persons who prepared valuations of SPFC's residual assets for purposes of financial reporting, Davidson [the non-testifying expert] had no business duty to report accurately. Moreover, Federal Rule of Evidence 703 contemplates that Moore would be able to "validate" the facts, data and opinions he relied upon during his testimony and be subject to cross-examination on them. Because Moore himself is not qualified to perform residual valuation, he cannot "validate" Davidson's opinions and, therefore, those opinions cannot be subjected to meaningful adversarial testing through cross-examination of Moore. As already noted, Davidson himself will not be a witness and therefore there will be no opportunity in this case for meaningful adversarial testing of Davidson's opinions."

*Imperial*, 252 F. Supp. 2d at 1012 n.5.

Here, Mr. Toppenberg's opinion regarding valuation must be excluded because it is not based on any reliable or sound methodology and is based in large part on the opinions of appraisers retained by the City for litigation purposes, neither of whom has been offered as an expert witness in this case.[20] Indeed, at deposition, Mr. Toppenberg admitted that he did not "prepare any actual calculations" in formulating his opinion.[21] Instead, Mr. Toppenberg relied on hearsay statements from two appraisers that the City allegedly retained at some point during the bankruptcy case for litigation purposes, but conspicuously did not designate as experts to provide any opinion in connection with this litigation. Mr. Toppenberg states that "no appraisal was ever completed," but then adopts without question and without qualification the alleged statement of the appraisers –

---

[20] Toppenberg Declaration ¶ 4 (describing alleged "conversations" with appraisers retained "to appraise the leasehold interest of properties" who never actually performed "a full appraisal" or prepared "a formal appraisal report"); Toppenberg Direct Testimony ¶ 4 (same).

[21] Toppenberg I 13:10-16, 13:23-14:4, 32:18-20; Transcript of second Deposition of Val Toppenberg ("Toppenberg II") 169:8-16, 182:25-183:7. Relevant passages from Toppenberg II are attached to the Morse Decl. as Exhibit J.

1  purportedly relayed "during their conversations with me and other representatives of the City" – that,

2  had the appraisers actually completed their work, they "would likely [produce] a formal appraisal

3  report showing that the leases have no value."[22]  Although the appraisers therefore would have

4  provided the City with exactly the "zero value" opinion it desired, Mr. Toppenberg states that the

5  City then determined "that there was no point to continuing with a full appraisal."[23]  Yet now Mr.

6  Toppenberg uncritically adopts the appraisers' alleged hearsay statements – which are not the

7  product of any written report (much less one that complies with the Federal Rules of Civil

8  Procedure) – as his own opinion.

9        This backdoor attempt to introduce alleged oral opinions of alleged experts who have not

10  written reports, been deposed, or otherwise made a part of this case is patently inappropriate.  Mr.

11  Toppenberg's testimony therefore is useless and unhelpful to the City and must be excluded from

12  consideration.

### a. Mr. Toppenberg's Opinion Regarding Swenson And Van Buskirk Is Severely Flawed.

15        For example, Mr. Toppenberg admits that he formed his opinion based in large part on

16  informal conversations with Kenneth Hopper, an appraiser hired by the City for this litigation to

17  produce an appraisal of the golf courses.[24]

18        Mr. Hopper, however, never completed his task – no appraisal report was ever issued to the

19  City.  According to Mr. Toppenberg, Mr. Hopper's work came to an abrupt halt when the City

20  informed Mr. Hopper that there was no need to prepare a formal appraisal in light of Mr. Hopper's

21  alleged preliminary oral conclusion that the value of the appraised property would be zero if an

22  appraisal was completed.[25]  Why the City would instruct Mr. Hopper not to complete his appraisal

23  remains a mystery, as is the reason why the City chose to rely on Mr. Toppenberg to repeat Mr.

---

[22] Toppenberg Declaration ¶ 4; Toppenberg Direct Testimony ¶ 4.

[23] *Id.*

[24] Mr. Hopper was retained "[t]o assist client and intended users in making planning and litigation decision." Ex. 2663 (CTY257992). A copy of Ex. 2663 is attached to the Morse Decl. as <u>Exhibit K</u>.

[25] Toppenberg Declaration at ¶ 5; Toppenberg Direct Testimony ¶ 5.

Hopper's alleged (and incomplete) appraisal rather than having Mr. Hopper himself provide his oral opinion of value.

Given that Mr. Hopper is the only person who appears to have done any real analysis of the valuation of the golf courses (if in fact he did so), it would be inappropriate to allow Mr. Toppenberg to "vouch[] for the truth of what [Mr. Hopper] had told him." *Dura*, 285 F.3d at 613. Indeed, given his utter lack of expertise on valuation and appraisal issues, Mr. Toppenberg's endorsement of Mr. Hopper's alleged opinion is meaningless. Moreover, Franklin has had no way to test Mr. Hopper's alleged opinions (which, to repeat, were not the subject of any appraisal or other writing).

If Mr. Toppenberg's testimony were allowed, there would be no way for the Court to determine whether or not Mr. Hopper's statements to Mr. Toppenberg were based on sufficient data, methodology, and facts. Mr. Toppenberg doesn't know. At deposition, he was unable to confirm even the basic valuation methodology Mr. Hopper used to derive his incomplete alleged valuation conclusion.[26] As a result, Mr. Toppenberg's reliance on any opinion of value received from Mr. Hopper, combined with Mr. Toppenberg's lack of any personal expertise, is fatal to his ability to offer a helpful opinion of value here. Mr. Toppenberg's opinion regarding the golf courses must therefore be excluded.

      **b.**      **Mr. Toppenberg's Opinion Regarding Oak Park Is Severely Flawed.**

Mr. Toppenberg's opinion regarding the value of Oak Park is similarly flawed. Here, Mr. Toppenberg relied on "conversations" that he had with yet another appraiser, Kevin Ziegenmeyer,[27] retained by the City to appraise the leasehold interest of Oak Park in connection with this litigation.[28] Like Mr. Hopper, Mr. Ziegenmeyer was inexplicably instructed by the City not to complete a formal appraisal after he allegedly told Mr. Toppenberg that Oak Park had no value.[29]

---

[26] Toppenberg I 70:3-7.

[27] Toppenberg Declaration ¶ 5; Toppenberg Direct Testimony ¶ 5.

[28] Mr. Ziegenmeyer was retained for "[p]ossible [l]itigation." Ex. 2530 (CTY258198). A copy of Ex. 2530 is attached to the Morse Decl. as Exhibit L.

[29] Toppenberg Declaration ¶ 5; Toppenberg Direct Testimony ¶ 5.

Mr. Toppenberg stated that the formal appraisal was deemed unnecessary because the Ziegenmeyer appraisal would have been "based on the same information" as his own valuation. But, Mr. Toppenberg does not really know what information Mr. Ziegenmeyer allegedly relied on. For example, according to Mr. Toppenberg, Mr. Ziegenmeyer allegedly evaluated revenues and income related to the park, but Mr. Toppenberg was unable to identify such basic information as the time period Mr. Ziegenmeyer allegedly considered.[30]

As with his reliance on Mr. Hopper's alleged oral opinions, Mr. Toppenberg's reliance on Mr. Ziegenmeyer's alleged oral opinions is inappropriate and requires the exclusion of his valuation testimony. Unable to fashion his own expert opinion, Mr. Toppenberg simply piggy-backed on the alleged "expert" opinion of Mr. Ziegenmeyer. He conducted little independent analysis and did nothing to verify the conclusions provided to him by the appraisers. Far from producing a reliable expert opinion, Mr. Toppenberg is merely parroting what he was told, depriving Franklin of any opportunity to ascertain and explore the actual bases and grounds for the alleged opinion. Mr. Toppenberg's opinion regarding the value of Oak Park therefore also must be excluded.

## **CONCLUSION**

Mr. Toppenberg is not qualified to render any helpful opinion regarding the value of Franklin's collateral. Further, his testimony and opinion is unreliable and merely the product of impermissible reliance on the alleged oral conclusions of other appraisers. Franklin therefore requests that the Court exclude Paragraphs 2 through 5 and 15 of the Toppenberg Declaration and Paragraphs 2 through 5 and 15 of the Toppenberg Direct Testimony.

Dated: April 25, 2014                                JONES DAY

By:   */s/ Joshua D. Morse*
James O. Johnston
Joshua D. Morse
Charlotte S. Wasserstein

*Attorneys for Franklin High Yield Tax-Free Income Fund and Franklin California High Yield Municipal Fund*

---

[30] Toppenberg II 198:5-8.