T. Scott Belden, State Bar No. 184387
Kaleb L. Judy, State Bar No. 266909
BELDEN BLAINE, LLP
5100 California Avenue, Suite 101
Bakersfield, California 93309
P.O. Box 9129
Bakersfield, California 93389
Telephone: (661) 864-7827
Facsimile: (661) 878-9797
Email: sbelden@beldenblaine.com
       kjudy@beldenblaine.com

Attorneys for Movants

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>CITY OF STOCKTON, CALIFORNIA,<br><br>Debtor.<br><br>---<br><br>COALITION FOR A SUSTAINABLE DELTA, BELRIDGE WATER STORAGE DISTRICT, BERRENDA MESA WATER DISTRICT, CAWELO WATER DISTRICT, NORTH OF THE RIVER MUNICIPAL WATER DISTRICT, WHEELER RIDGE-MARICOPA WATER STORAGE DISTRICT, AND DEE DILLON,<br><br>Movants,<br><br>v.<br><br>CITY OF STOCKTON, CALIFORNIA,<br><br>Respondent. | Case No.  2012-32118<br><br>Chapter 9<br><br>DC No. BB-001<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION OF THE COALITION FOR A SUSTAINABLE DELTA AND OTHER PARTIES FOR LIMITED RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)**<br><br>Date:     July 1, 2014<br>Time:     9:30 a.m.<br>Location: U.S. Bankruptcy Court<br>          Sacramento Division<br>          501 I Street, 6th Floor<br>          Courtroom 35<br>Judge:    Christopher M. Klein |

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The CITY OF STOCKTON, CALIFORNIA ("City") jointly holds a Municipal Separate Storm Sewer System permit ("MS4 Permit") with the County of San Joaquin ("County"). The Coalition for a Sustainable Delta (the "Coalition"), Belridge Water Storage District, Berrenda Mesa Water District, Cawelo Water District, North of the River Municipal Water District, Wheeler Ridge-Maricopa Water Storage District and Dee Dillon (collectively, the "Movants") filed a complaint in the United States District Court for the Eastern District of California against the City and the County of San Joaquin asserting claims for declaratory relief, injunctive relief, and civil penalties for violations of the federal Clean Water Act ("CWA") and Endangered Species Act ("ESA"). The gravamen of the Complaint is that the City and the County have been discharging storm water in violation of the City and County's joint MS4 Permit, and that these activities have negatively impacted the quality and aesthetics of the Sacramento-San Joaquin Delta ("Delta"), resulting in the "take" of certain species protected by the ESA native to the Delta, and has caused economic harm to Coalition members and the water districts. A copy of the complaint is filed concurrently as Exhibit A to the Declaration of Joshua A. Bloom.

Based upon discovery that has been conducted in the action, the Movants believe they have an evidentiary foundation to seek partial summary judgment on components of their CWA claim that address continuing violations of the MS4 permit, and which violations have caused, and are continuing to cause, impacts to the detriment of the Delta, native species, and the users that rely on the Delta.

In February 2011, the parties agreed to a stay of the action and to refrain from further discovery while they engaged in substantive settlement discussions in an effort to resolve the litigation. Those discussions and settlement efforts continued through April of 2012. In the course of those settlement efforts, the parties made some progress, including entering into an Interim Agreement in May 2011 that provided for an assessment of the City's and the County's stormwater programs by an independent third party confidential expert, who then developed recommendations that provided a basis of subsequent settlement negotiations. Settlement

discussions continued subsequent to the independent report without resolution of certain significant issues.

The District Court entered an order on April 3, 2012, stating that no further stay would be granted and setting a status conference for August 22, 2012. Prior to the August 22, 2012 status conference, the City filed for protection under Chapter 9 of the Bankruptcy Code (11 U.S.C. § 101, et seq.) on June 28, 2012. A Notice of Automatic Stay was filed by the City on July 10, 2012, and the District Court vacated the August 22, 2012 status conference on July 24, 2012. Although the County is not a debtor in bankruptcy, the District Court's docket reflects the entire action as "Stayed."

At the beginning of August 2, 2012, the Coalition requested that the City stipulate to limited relief from the stay to bring the District Court case to final judgment, but not enforcement of any monetary judgment. Additionally, the Coalition has continued to confirm to the City its willingness to participate in a good faith mediation as a predicate to continued discovery and litigation, but did not receive any definitive response from the City. The Coalition again pressed the City for a response by letter dated November 14, 2012, giving the City a deadline of November 30, 2012 to respond before the Coalition sought relief from the automatic stay to pursue the District Court case. The City's counsel engaged in written correspondence with the Coalition's counsel on and after November 30, 2012, confirming that although the City is unwilling to stipulate to relief from the automatic stay at the outset, the City is willing to participate in a mediation as soon as reasonably practicable. Then, if the mediation is unsuccessful, the City would stipulate for relief from the automatic stay. To that end, the Coalition proposed a three month timeline to select a mediator and complete the mediation by March 31, 2013.

The mediation, however, never took place as a result of the City's decision not to share in the costs of a private mediator, and due to the restrictive schedule of the Magistrate Judge of the Northern District's Sacramento Division that prevented the opportunity to have the Magistrate serve as a mediator. The parties' discussions transitioned to trying to schedule a

3
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOVANTS' MOTION FOR RELIEF FROM AUTOMATIC STAY

meeting with the parties' principals in an attempt to resolve the matter. A meeting was scheduled for December 2, 2013. However, meaningful progress was not made in resolving the issues between the parties.

As more fully set forth in the Declaration of Joshua Bloom filed with this Motion, further discussions took place between the Coalition and the City between December 2, 2013 and now. However, progress toward a global resolution was minimal notwithstanding the efforts of the Coalition towards progress. Therefore, Movants are moving forward with this Motion so that the issues involved in the lawsuit—issues that include the City's continued pollution of the Delta—can be efficiently resolved without further delay.

## II. DISCUSSION

### A. Cause Exists for Limited Relief From the Automatic Stay.

It should be noted that the allegations in the Coalition's complaint relate to the City's ongoing violations and continued pollution of the Delta. Thus, the pending action concerns both pre-petition and post-petition violations. Nonetheless, since the lawsuit was commenced pre-petition and seeks monetary relief as well as injunctive as well as other relief, the lawsuit is subject to the automatic stay, necessitating this Motion. Since cause exists for relief from the stay, the Coalition requests that the Motion be granted.

Pursuant to Section 362, subdivision (d) of the Bankruptcy Code, "[O]n request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay-(1) for cause." Cause is not defined by the Bankruptcy Code, but utilization of the so-called "Curtis Factors" is helpful in determining whether relief from the automatic stay should be granted to allow pending litigation to continue in a forum outside of the bankruptcy court. See, *In re Plumberex Specialities Products, Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004) (citing *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)). The following are the factors from *In re Curtis*, which have been adopted by a number of circuits:

4
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOVANTS' MOTION FOR RELIEF FROM AUTOMATIC STAY

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and
12. The impact of the stay on the parties and the "balance of hurt."

*In re Plumberex Specialities Products, Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004) (citing *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)). Not all of the Curtis Factors are relevant in this case and the Court is not required to give each factor equal weight in determining cause. *Id.* Here, the factors enumerated as 1, 2, 4, 7, 10, 11 and 12 are applicable. The consideration of these factors to this matter as discussed below overwhelmingly support cause for relief from stay.

    **1. Granting Relief From the Automatic Stay Allowing the District Court Case to Continue Will Result in Complete Resolution of the Serious Issues.**

The historical and the continued violations of the MS4 Permit by the City and the County are of grave concern to the Movants. As discussed above, the City's and the County's continued practice of discharging storm water into the Delta is impacting water quality, water

supply, and the Delta's wildlife. Thus, the District Court case should proceed against all parties to bring this matter to judgment so that the Movants may obtain appropriate injunctive measures. Not granting relief will leave one defendant (the County) subject to the proceedings, and the other defendant (the City) continuing its violations of federal law.

### 2. There Is No Connection Between the District Court Case And the Bankruptcy Case, And Allowing the District Court Case Will Have Little Impact on the Bankruptcy Case.

The claims and issues of the District Court case are not connected to this bankruptcy case, and, other than the cost of the City defending the lawsuit and the potential costs of coming into compliance with the City's regulatory and statutory obligations, there will be no impact on the City. Conversely, the City's failure to comply with its continuing obligations will have a negative impact on the estate. If the District Court ultimately orders injunctive measures, the District Court can take the City's financial situation into account if appropriate and tailor those measures accordingly.

### 3. The District Court Is The Appropriate Forum.

The District Court is the appropriate forum to determine issues involving the CWA and the ESA, not the bankruptcy court. The bankruptcy court lacks constitutional authority to hear this matter as it is not a core proceeding. See, *Stern v. Marshall*, 131 S. Ct. 2594, 2616 (2011). Further, although the action does not completely involve third parties, non-debtor third parties are present, and, without the involvement of the City, complete and effective relief cannot be afforded to the plaintiffs.

### 4. The District Court Case Progressed Substantially From 2009 Until This Bankruptcy Case Was Filed In 2012.

The District Court case has been pending for over four years and certain discovery has been conducted on the claims. Also, substantial settlement discussions took place prior to the filing of this bankruptcy case. As noted above, the Movants believe that one of their primary CWA claims is ripe for partial summary judgment. The progress in the case, therefore, also weighs in favor of relief.

### 5. In the Interest of Judicial Economy And Due to the Nature of the Claims and Issues, the District Court Case Should Not Proceed Piecemeal, Against the County Now and the City Later.

Most importantly, the factors of judicial economy and balance of hardships tip sharply in favor of relief from the automatic stay. The nature of the claims and issues involved in the Complaint must be resolved in the District Court, and given the nature of many of the activities undertaken by the City and the County in furtherance of permit obligations, the District Court case should be litigated against both defendants jointly. The violations are ongoing and, therefore, the stay does not even apply to post-petition violations.

The ongoing nature of the violations, and the resulting environmental harm also go to the balance of hardships. Contaminants associated with urban runoff in the Delta impair wildlife and aquatic life, agricultural beneficial uses, and drinking water. The City's permit violations are, among other things, impacting the water quality of the Delta, including impacts to federally endangered and threatened species (e.g., the delta smelt, Sacramento River winter-run Chinook salmon, Central Valley spring-run Chinook Salmon, and the Central Valley steelhead), and agricultural and recreational water use. The costs of litigation that the City will have to incur are far less significant than the environmental impacts that are continuing to accrue during this case.

### B. The Movants Request Limited Relief From the Automatic Stay to Bring the District Court Action to Judgment to Allow Liquidation of These Claims, But Allow Payment of Any Penalties and Fees Through the Bankruptcy Process.

On balance, the facts weigh heavily in favor of relief from the automatic stay. As they have done throughout the litigation, the Movants intend to work toward narrowing the issues and exploring options to resolve the litigation with as little expense and delay as possible. To that end, the Movants seek an order modifying the automatic stay in a limited fashion. Thus, the Movants seek an order as follows:

1.  That relief be granted to the Movants to pursue the matter to judgment, but not enforcement of any pre-petition monetary penalties or attorney's fees. This would allow the liquidation of these claims in the appropriate forum, but allow the payment of these elements of their claims through the bankruptcy process.

2. As noted, the Movants believe they have an evidentiary foundation to seek partial summary judgment on a key component of their CWA claim. The Movants will file a partial summary judgment motion before engaging in other discovery with respect to the remainder of the CWA and ESA claims. The Movants believe that the ruling on its partial summary judgment motion will advance negotiations for a complete resolution.

3. Except for the above partial summary judgment motion, the Movants will agree to a reasonable period for mediation following the partial summary judgment ruling before engaging in extensive additional discovery. This, of course, would be subject to the approval of the District Court Judge.

**C. Conclusion.**

In light of the foregoing, and for cause having been shown, the Movants respectfully request that the Court grant the Movants' motion for an order modifying the automatic stay as set forth above.

Date: June 12, 2014

BELDEN BLAINE, LLP

By: _____
T. SCOTT BELDEN
Attorneys for Moving Parties