MARC A. LEVINSON (STATE BAR NO. 57613)
malevinson@orrick.com
NORMAN C. HILE (STATE BAR NO. 57299)
nhile@orrick.com
PATRICK B. BOCASH (STATE BAR NO. 262763)
pbocash@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California 95814-4497
Telephone: +1-916-447-9200
Facsimile: +1-916-329-4900

Attorneys for Debtor
City of Stockton

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>CITY OF STOCKTON, CALIFORNIA,<br><br>Debtor. | Case No. 2012-32118<br><br>D.C. No. OHS-26<br><br>Chapter 9<br><br>**CITY OF STOCKTON'S REPLY IN SUPPORT OF MOTION PURSUANT TO BANKRUPTCY RULE 7052 TO AMEND FINDINGS OF FACT IN OPINION REGARDING CONFIRMATION AND STATUS OF CALPERS**<br><br>Date: February 25, 2015<br>Time: 10:00 a.m.<br>Dept.: Courtroom 35<br>Judge: Hon. Christopher M. Klein |

Case 12-32118    Filed 02/24/15    Doc 1896

The City of Stockton, California ("City") submits this Reply in support of its Motion Pursuant To Rule Of Bankruptcy Procedure 7052 To Amend Findings Of Fact In Opinion Regarding Confirmation And Status Of CalPERS [Dkt. No. 1889] (the "Rule 7052 Motion" requesting amendments to the "Opinion") and in response to Franklin's Response To City Of Stockton's Motion To Amend Findings Of Fact In Confirmation Opinion [Dkt. No. 1894] (the "Response").

The Response misstates the nature of the reserve funds and attempts to suggest that the approximately $2.1 million in funds (after payment of the Trustee's fees) somehow belonged to Franklin all along. This is clearly not the case. If it were, there would have been no need for the Trustee to enter into a stipulation with the City for relief from the automatic stay to apply a portion of the reserve funds to the lease payments.[1] Moreover, the plain language of the Indenture of Trust[2] relating to the relevant bonds makes clear that the reserve funds were established as *collateral* in the event the bond payments were not made. As such, those funds are properly treated as collateral for secured claims.

The Revenue Fund is defined and established by section 5.01(c) of the Indenture of Trust, and is split into three accounts: an Interest Account, a Principal Account, and a Reserve Account, the last of which is at issue here. *See* Ex. 1, at 20. The funding of the Reserve Account is addressed in section 3.01 of the Indenture of Trust, which explains that the Reserve Account would be funded by a portion of the proceeds of sale of the bonds. *See* Ex. 1, at 15. Franklin purchased bonds; the City received the proceeds of the sale of those bonds, less the amount deposited into the various reserves. Contrary to Franklin's assertion, the fact that the Reserve Account was funded by a portion of the bond proceeds does not mean that it was funded "by Franklin" or in any way change the nature of these funds as property of the City pledged to the

---

[1] *See* Exhibit A to Exhibit 1 of the Rule 7052 Motion.

[2] Indenture of Trust By And Between The Stockton Public Financing Authority and Wells Fargo Bank, National Association, As Trustee, dated September 1, 2009 (hereinafter the "Indenture of Trust"), relating to the Stockton Public Financing Authority Lease Revenue Bonds, 2009 Series A (Capital Improvement Projects). The Indenture of Trust was attached as Exhibits A-1 and A-2 to the Direct Testimony Declaration of Kenneth Dieker In Support Of Confirmation Of First Amended Plan For The Adjustment Of Debts Of City Of Stockton, California (November 15, 2013) [Dkt Nos. 1369 & 1370]. Attached hereto as **Exhibit 1** is a highlighted excerpt of the Indenture of Trust containing the sections relevant to the Rule 7052 Motion.

Trustee as collateral. *See* Response, at 2 (emphasis removed). Section 5.05 of the Indenture of Trust makes this clear:

> Amounts in the Reserve Account shall be used and withdrawn by the Trustee solely for the purpose of making transfers to the Interest Account and the Principal Account in such order of priority, **in the event of any deficiency at any time in any of such accounts or for the retirement of all the Bonds then Outstanding**, except that so long as the Authority is not in default hereunder, any amount in the Reserve Account in excess of the Reserve Requirement (as determined by the Trustee based upon a valuation of investments held in such account) shall be withdrawn from the Reserve Account semiannually on or before the Business Day preceding each February 1 and August 1 by the Trustee and deposited in the Interest Account. **All amounts in the Reserve Account on the Business Day preceding the final Interest Payment Date shall be withdrawn from the Reserve Account and shall be transferred either (i) to the Interest Account and the Principal Account, in such order, to the extent required to make the deposits then required to be made pursuant to this Section 5.05 or,** (ii) if the Authority shall have caused to be transferred to the Trustee an amount sufficient to make the deposits required by this Section 5.05, then, at the Written Request of the Authority, to the Authority for deposit by the Authority into the Revenue Fund. The Trustee may conclusively presume that there has been no change in the Reserve Requirement unless notified in writing by the Authority.

Ex. 1, at 21 (emphasis added). Put simply, the Reserve Account serves as security against a failure to make the bond payments. Had all of the other payments on the bonds been made, the funds in the Reserve Account would have been used to make the final payment. Thus, by the express terms of the Indenture of Trust, the Trustee had a security interest in the funds in the Reserve Account. That interest is properly treated as a secured claim in the amount of the funds in the account as of the Petition Date, and was treated as such in the August 2012 stipulation for relief from the stay.

Franklin's assertion that the additional approximately $2.1 million it has received or will receive from the Reserve Accounts did not impact its secured claim, but rather "merely reduce[d] the City's total obligation to Franklin," is therefore not accurate. Response, at 2. The Response contends that Franklin's claims amount to $34,532,190; however, that Franklin's claims have totaled over $36 million has been essentially undisputed throughout the case. The June 2, 2014

version of the Plan[3] was the first to precisely define the Golf Course/Park Claims and set the allowed amount of those claims at $36,603,625.93. The confirmed version of the Plan,[4] dated August 8, 2014, contains the same definition – a calculation that Franklin did not contest. For example, at the June 4, 2014, continued confirmation hearing, counsel for the City informed the Court that the parties had agreed that Franklin's total claim was "36,600,000 and change." Transcript of Proceedings, June 4, 2014, at 117:6-9. The City again stated at the July 8, 2014 hearing that it had agreed that Franklin's claim would be allowed in an amount over $36 million, and the Court itself referenced that there was "no quarrel over the total amount" of Franklin's claim for "approximately $36 million." Transcript of Proceedings, July 8, 2014, at 7:9-11, 8:8-10.

The total amount of Franklin's claim, which has never been contested, has not changed. Rather, Franklin has received or will receive a total of approximately $2.1 million in collateral (the funds in the Reserve Account) that is not accounted for in the Opinion. As calculated in the Rule 7052 Motion, Franklin has or will have received $6,123,435.15 on its secured claims ($4,052,000 for its interest in the Golf Course/Park Collateral, plus $2,071,435.15 for its interest in the funds in the Reserve Account) and $285,227.52 on its unsecured claim ($30,480,190 multiplied by the .93578% discount applied to Class 12 claims). Franklin therefore has or will have received a total of $6,408,662.67, or approximately 17.5%, of its $36.6 million total claim.

In order to reflect this, the Opinion could be revised in the following ways:[5]

- Page 50 at 27-28: "In contrast, Franklin loses about $32 $30 million."

- Page 53 at 8-11: "It turned out that its collateral in two golf courses and a park was worth only about $4 million, which sum is being paid in full by the City. In addition, Franklin will have been paid an additional $2.1 million on account of its security interest in certain

---

[3] First Amended Plan For The Adjustment Of Debts Of City Of Stockton, California, As Modified (June 2, 2014), at 15, definition no. 96 [Dkt. No. 1535].
[4] First Amended Plan For The Adjustment Of Debts Of City Of Stockton, California, As Modified (August 8, 2014), at 13, definition no. 94 [Dkt. No. 1645].
[5] Additions identified with double underlining and deletions identified with strikethrough text.

- 4 -

CITY'S REPLY IN SUPPORT OF
MOTION TO AMEND FINDINGS OF FACT

reserve funds under the 2009 Golf Course/Park Bonds Indenture. The rest is unsecured debt, to be paid the same 1 percent as all other unsecured creditors . . ."

- Page 54 at 3: "Franklin is receiving about ~~$4.35~~ $6.41 million on its $36 million in bonds . . ."

- Page 54 at 6: "Its ~~12~~ 17.5 percent overall return . . ."

For the foregoing reasons, the City respectfully requests that the Court amend the Order to reflect the additional $2.1 million Franklin has or will have received on its security interest in the reserve funds.

Dated: February 24, 2015

MARC A. LEVINSON
NORMAN C. HILE
PATRICK B. BOCASH
Orrick, Herrington & Sutcliffe LLP

By: _____/s/ *Marc A. Levinson*_____
MARC A. LEVINSON
Attorneys for Debtor
City of Stockton

# Exhibit 1

Case 12-32118    Filed 02/24/15    Doc 1896

Quint & Thimmig LLP

03/04/08
07/07/08
08/11/08
12/04/08
02/19/09
07/10/09
FINAL   08/20/09

# INDENTURE OF TRUST

by and between the

## STOCKTON PUBLIC FINANCING AUTHORITY

and

## WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee

Dated as of September 1, 2009

Relating to
$35,080,000
Stockton Public Financing Authority
Lease Revenue Bonds, 2009 Series A
(Capital Improvement Projects)

19066.05

ARTICLE III

APPLICATION OF PROCEEDS

Section 3.01. <u>Application of Proceeds of Sale of Bonds</u>.

(a) Upon the receipt of payment for the Bonds on the Closing Date of $34,010,178.20, being the principal amount of the Bonds of $35,080,000.00, less an underwriter's discount of $294,672.00, less an original issue discount of $775,149.80, the Trustee shall apply the proceeds of sale thereof as follows:

(i) The Trustee shall deposit the amount of $351,959.70 in the Costs of Issuance Fund;

(ii) The Trustee shall deposit the amount of $2,945,462.50 in the Reserve Account; and

(iii) The Trustee shall deposit the amount of $30,712,756.00 in the Project Fund.

(b) The Trustee may, in its sole discretion, establish such funds or accounts in its records to facilitate the foregoing transfers and deposits.

Section 3.02. <u>Establishment and Application of Costs of Issuance Fund</u>. The Trustee shall establish, maintain and hold in trust a separate fund designated as the "Costs of Issuance Fund." The moneys in the Costs of Issuance Fund shall be used and withdrawn by the Trustee to pay the Costs of Issuance upon submission of Written Requisitions of the Authority stating the person to whom payment is to be made, the amount to be paid, the purpose for which the obligation was incurred and that such payment is a proper charge against said fund. Each such Written Requisition shall be sufficient evidence to the Trustee of the facts stated therein and the Trustee shall have no duty to confirm the accuracy of such facts. On February 20, 2010, or upon the earlier Written Request of the Authority, all amounts remaining in the Costs of Issuance Fund shall be transferred by the Trustee to the Project Fund.

Section 3.03. <u>Establishment and Application of Project Fund</u>. The Trustee shall establish, maintain and hold in trust a separate fund designated as the "Project Fund." Amounts on deposit in the Project Fund shall be used and withdrawn by the Trustee to pay the costs of the Project, upon the receipt from time to time of Written Requisitions of the City seeking payment of costs of the Project. Each such Written Requisition shall state (a) the person to whom payment is to be made, (b) the amount to be paid, and (c) the purpose for which the obligation was incurred. At the Written Request of the City filed at any time with the Trustee, the Trustee shall close the Project Fund and shall transfer all amounts therein to the Revenue Fund to be used for the payment of interest on the Bonds.

Section 3.04. <u>Validity of Bonds</u>. The validity of the authorization and issuance of the Bonds is not dependent on and shall not be affected in any way by any proceedings taken by the Authority or the Trustee with respect to or in connection with the Lease Agreement. The recital contained in the Bonds that the same are issued pursuant to the Constitution and laws of the State shall be conclusive evidence of their validity and of compliance with the provisions of law in their issuance.

ARTICLE V

REVENUES; FUNDS AND ACCOUNTS; PAYMENT OF
PRINCIPAL AND INTEREST

Section 5.01. Pledge and Assignment; Revenue Fund.

(a) Subject only to the provisions of this Indenture permitting the application thereof for the purposes and on the terms and conditions set forth herein, all of the Revenues and any other amounts (including proceeds of the sale of the Bonds) held in any fund or account established pursuant to this Indenture are hereby pledged to secure the payment of the principal of, premium, if any, and interest on the Bonds in accordance with their terms and the provisions of this Indenture. Said pledge shall constitute a first lien on and security interest in such assets and shall attach, be perfected and be valid and binding from and after the Closing Date, without any physical delivery thereof or further act.

(b) The Authority hereby transfers in trust, grants a security interest in and assigns to the Trustee, for the benefit of the Owners from time to time of the Bonds, all of the Revenues and all of the rights of the Authority in the Lease Agreement (except for certain rights to indemnification set forth therein), and in the Site and Facility Lease, (except for certain rights to indemnification set forth therein). The Trustee shall be entitled to and shall collect and receive all of the Revenues, and any Revenues collected or received by the Authority shall be deemed to be held, and to have been collected or received, by the Authority as the agent of the Trustee and shall forthwith be paid by the Authority to the Trustee. The Trustee also shall be entitled to and shall, subject to the provisions of Article VIII, take all steps, actions and proceedings which the Trustee determines to be reasonably necessary in its judgment to enforce, either jointly with the Authority or separately, all of the rights of the Authority, all of the obligations of the City under the Lease Agreement.

The assignment of the Lease Agreement and the Site and Facility Lease to the Trustee is solely in its capacity as Trustee under this Indenture and the duties, powers and liabilities of the Trustee in acting thereunder shall be subject to the provisions of this Indenture, including, without limitation, the provisions of Article VIII hereof. The Trustee shall not be responsible for any representations, warranties, covenants or obligations of the Authority.

(c) The Trustee agrees to provide written notice to the City at least five Business Days prior to each Lease Payment Date of the amount, if any, on deposit in the Revenue Fund which shall serve as a credit against, and shall relieve the City of making, the Lease Payments due from the City on such Lease Payment Date. Subject to Section 5.08, all Revenues shall be promptly deposited by the Trustee upon receipt thereof in a special fund designated as the "Revenue Fund" which the Trustee shall establish, maintain and hold in trust; except that all moneys received by the Trustee and required hereunder or under the Lease Agreement to be deposited in the Redemption Fund or the Insurance and Condemnation Fund shall be promptly deposited in such Funds. Within the Revenue Fund there shall be established an Interest Account, a Principal Account and a Reserve Account. All Revenues deposited with the Trustee shall be held, disbursed, allocated and applied by the Trustee only as provided in this Indenture.

Section 5.02. Allocation of Revenues. Not later than the Business Day preceding each Interest Payment Date, the Trustee shall transfer from the Revenue Fund and deposit into the following respective accounts (each of which the Trustee shall establish and maintain within the Revenue Fund), the following amounts in the following order of priority, the requirements of each such account (including the making up of any deficiencies in any such account

resulting from lack of Revenues sufficient to make any earlier required deposit) at the time of deposit to be satisfied before any transfer is made to any account subsequent in priority:

(a) The Trustee shall deposit in the Interest Account an amount required to cause the aggregate amount on deposit in the Interest Account to be at least equal to the amount of interest becoming due and payable on such Interest Payment Date on all Bonds then Outstanding.

(b) The Trustee shall deposit in the Principal Account an amount, if any, required to cause the aggregate amount on deposit in the Principal Account to equal the principal amount of the Bonds coming due at maturity or upon sinking fund redemption and payable on such Interest Payment Date.

(c) The Trustee shall deposit in the Reserve Account an amount, if any, required to cause the amount on deposit in the Reserve Account to be equal to the Reserve Requirement.

(d) If the then applicable Interest Payment Date is March 1, all remaining moneys shall be held by the Trustee in the Revenue Fund and applied for the next succeeding September 1 Interest Payment Date deposits. If the then applicable Interest Payment Date is September 1, all remaining moneys shall be transferred to the City for deposit to the General Fund of the City.

Section 5.03. *Application of Interest Account*. All amounts in the Interest Account shall be used and withdrawn by the Trustee solely for the purpose of paying interest on the Bonds as it shall become due and payable (including accrued interest on any Bonds purchased or redeemed prior to maturity pursuant to this Indenture).

Section 5.04. *Application of Principal Account*. All amounts in the Principal Account shall be used and withdrawn by the Trustee solely to pay the principal amount of the Bonds at their respective maturity dates or for the payment of a required sinking fund installment.

Section 5.05. *Application of Reserve Account*. Amounts in the Reserve Account shall be used and withdrawn by the Trustee solely for the purpose of making transfers to the Interest Account and the Principal Account in such order of priority, in the event of any deficiency at any time in any of such accounts or for the retirement of all the Bonds then Outstanding, except that so long as the Authority is not in default hereunder, any amount in the Reserve Account in excess of the Reserve Requirement (as determined by the Trustee based upon a valuation of investments held in such account) shall be withdrawn from the Reserve Account semiannually on or before the Business Day preceding each February 1 and August 1 by the Trustee and deposited in the Interest Account. All amounts in the Reserve Account on the Business Day preceding the final Interest Payment Date shall be withdrawn from the Reserve Account and shall be transferred either (i) to the Interest Account and the Principal Account, in such order, to the extent required to make the deposits then required to be made pursuant to this Section 5.05 or, (ii) if the Authority shall have caused to be transferred to the Trustee an amount sufficient to make the deposits required by this Section 5.05, then, at the Written Request of the Authority, to the Authority for deposit by the Authority into the Revenue Fund. The Trustee may conclusively presume that there has been no change in the Reserve Requirement unless notified in writing by the Authority.

Section 5.06. *Application of Redemption Fund*. The Trustee shall establish and maintain the Redemption Fund, amounts in which shall be used and withdrawn by the Trustee solely for the purpose of paying the principal of and premium on the Bonds to be redeemed pursuant to Sections 4.01(a) or (b); *provided, however*, that at any time prior to the selection of